UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 18-150(1) (DWF/HB) |
| | ) | |
| v.                    Plaintiff, | ) | **DEFENDANT'S MOTION TO** |
| | ) | **DISMISS WITH** |
| MICHAEL HARI, | ) | **SUPPORTING MEMORANDUM** |
| | ) | |
| Defendant. | ) | |

## I.    Introduction

Defendant Michael Hari submits this motion to dismiss under Fed. R. Crim. P. 12.

Briefly stated, the grounds are these:

(a).    *Commerce Clause—Ultra Vires:* The principal statute at issue here—18 U.S.C. § 247(a)—is a facially invalid *ultra vires* law, as its enactment exceeded the authority conferred upon Congress under the Commerce Clause of the United States Constitution.

(b).    *Inadequate Certification:* Under § 247 the government is required to make a pre-prosecution certification demonstrating that a federal (as opposed to state or local) prosecution is especially "in the public interest and necessary to secure substantial justice." § 247(e). But the certification here fails to meet this statutory and jurisdictional standard.

(c).    *Due Process/Void for Vagueness:* The indictment charges the compound offense of carrying and using a destructive device in relation to a "crime of violence." 18 U.S.C. § 924(c). Here, the government alleges the § 924(c) predicate "crime[s] of violence" are the aforementioned § 247(a) counts. But a § 247(a) violation can only qualify under the § 924(c) "residual clause," which the Supreme Court has recently deemed unconstitutional under the Due Process Clause void-for-vagueness doctrine. Accordingly, the § 924(c) count is must be dismissed.

(d).    *Double Jeopardy/Multiplicity:* The indictment charges two violations of § 247(a) (different subdivisions, § 247(a)(1) & § 247(a)(2)) based upon the very same set of alleged acts. But the elements of the charged statutes are identical or lesser-included subsets in the essentials. Hence, the indictment effectively charges the same crime in two separate counts—a situation known as "multiplicity" which violates the Double Jeopardy Clause of the United States Constitution.

## II.    Background

For its factual allegations to support all of the charges at issue here, the government claims that Mr. Hari committed a number of acts along with co-defendants Michael McWhorter and Joe Morris. (ECF 14). The most important of these involve the assertion that in 2017, the defendants purchased diesel fuel and gasoline, which was then placed inside a plastic container to fashion a "pipe bomb." (ECF 14 at 4). It is alleged that on August 5, 2017, the defendants brought the device to the Dar al Farooq Islamic Center, which is located in Bloomington, Minnesota. (ECF 14 at 4-6). According to the government, Defendant Morris broke a window and tossed the device into the building after having lit the fuse, causing damage to the building. (ECF 14 at 4-6). The government claims the motive for doing so was "because of the religious character of the Dar al Farooq Islamic Center." (ECF 14 at 1).

Based upon the above allegations, the government has charged Mr. Hari with a number of federal offenses:

| Ct. # | Description | Statute(s) |
|---|---|---|
| 1 | Damaging religious real property because of religious character of that property | 18 U.S.C. § 247(a)(1) |
| 2 | Obstructing free exercise of religious beliefs by force or threat | 18 U.S.C. § 247(a)(2) |
| 3 | Conspiracy to commit federal felonies via fire/explosives | 18 U.S.C. § 844(h) & (m) |
| 4 | Carrying or using destructive device in relation to crimes of violence | 18 U.S.C. § 924(c)(1)(B)(ii) |
| 5 | Possession of unregistered destructive device | 26 U.S.C. §§ 5845(a) & 5861(d) |
| **Source: (ECF 14)** | | |

As explained below, Counts 1-4 contain fatal legal defects and must be dismissed.

### III.   Legal standard

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). This includes legal defects with respect to the alleged offenses set forth in the charging document. *Id.,* Rule 12(b)(3).

"Typically, constitutional challenges to the charging statute can be raised during pretrial motions," and in particular "a motion to dismiss the indictment." *United States v. Louper-Morris*, 672 F.3d 539, 562 (8th Cir. 2012). This includes any challenge to the authority of Congress to enact the charged statute at issue. *See, e.g., United States v. Lopez*, 514 U.S. 549, 551 (1995).

### IV.   Argument

Here, the government's legal theory as stated in the indictment exhibits at least these legal defects, all subject to a Rule 12 motion to dismiss:

(A).   Charged § 247(a) is legally invalid, having been enacted *ultra vires* with respect to congressional authority under the Commerce Clause.

(B).   Charged § 247 contains a pre-prosecution certification requirement, which requires a substantive rationale for federal prosecution rather that the conclusory and *pro forma* document offered by the government here.

(C).   Charged § 924(c) requires a predicate "crime of violence," which the government asserts to be the aforementioned § 247(a) charges. But § 247(a) fails to qualify as a "crime of violence" under the § 924(c) "force clause," and hence can only qualify under the "residual clause." But the latter provision has been deemed unconstitutional, and hence this entire charge fails as a matter of law.

(D).   Charged standalone violations of § 247(a)(1) and § 247(a)(2) contain elements that are the same in all essentials, and the government has based both counts upon the same alleged set of facts. This means that these charges are "multiplicious" (*i.e.,*

3

charging the same offense in two separate counts), which is a violation of the Double Jeopardy Clause. Hence, at least one of these counts must be dismissed.

A.   **The charged provisions of § 247 are facially invalid, having exceeded legislative enactment authority under the Commerce Clause.**

The principal charged offense in this case—the essential thread running through Counts 1 through 4—is 18 U.S.C. § 247(a).[1] The statute purports to provide the federal government power to bring a criminal prosecution against anyone who damages "religious real property"[2] when that action is motivated by "the religious character of that property." *Id.* § 247(a)(1). Alternatively, the statute permits a federal criminal action against anyone who uses force or threats so as to "obstruct[] . . . any person in the enjoyment of that person's free exercise of religious beliefs" by means of force or threat of force, "including by threat of force against religious real property." *Id.* § 247(a)(2).

By this motion, Mr. Hari challenges the facial validity of § 247(a), in the sense that it exceeds the lawmaking authority of Congress. "Every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution." *United States v. Morrison,* 529 U.S. 598, 607 (2000). In the case of § 247(a) at issue here, Congress limited the statutory reach to circumstances under which "the offense is in or affects interstate or

---

[1] Standalone violations of the statute are charged in Count 1 (§ 247(a)(1)) and Count 2 (§ 247(a)(2)). (ECF 14 at 1-2). Count 3 is a conspiracy charge, with an essential object being these identical alleged § 247(a) violations. (ECF 14 at 2-6). Count 4 is a compound § 924(c) offense, with its essential predicate offense(s) being the very same alleged standalone violations of § 247(a) as stated in Counts 1 and 2. (ECF 14 at 6-7).

[2] Under § 247(f), the term "religious real property" is defined as "any church, synagogue, mosque, religious cemetery, or other religious real property, including fixtures or religious objects contained within a place of religious worship."

foreign commerce." *Id.* § 247(b). This phrase evokes the Commerce Clause of the United States Constitution,[3] and Congress expressly cited that provision as its authority for enacting § 247(a). Pub. L. 104-155, § 2(5) (July 3, 1996). As explained below, however, § 247(a) fails to pass muster under the Supreme Court's tests for facial validity of a criminal statute enacted under authority of the Commerce Clause.

### 1.      Valid-rule/facial challenge

This motion presents a "facial challenge" to § 247(a), which means "an attack on a statute itself as opposed to a particular application." *City of Los Angeles v. Patel,* 135 S. Ct. 2443, 2449 (2015). The Supreme Court has authorized such facial challenges in numerous constitutional contexts, including the Commerce Clause. *Id.*

The Supreme Court's leading modern decisions which define the scope and limits of Commerce Clause authorization—*United States v. Lopez*, 514 U.S. 549 (1995) and *United States v. Morrison,* 529 U.S. 598 (2000)—are properly categorized as facial challenges as defined above. *See, e.g., Gonzales v. Raich,* 545 U.S. 1, 71-72 (2005) (Thomas, J., dissenting) (noting that *Lopez* and *Morrison* were facial challenges asserting that the statutes at issue "fell outside Congress's commerce power in its entirety"); *United States v. Croxford*, 170 Fed. Appx. 31, 34-36 (10th Cir. 2006) (discussing difference between facial *ultra vires* challenge and as-applied challenge with reference to *Lopez, Morrison,* and *Raich*). Both *Lopez* and *Morrison* turned upon whether the statutes at issue

---

[3] "The Congress shall have [p]ower . . . [t]o regulate [c]ommerce with foreign Nations, and among the several States . . . ." U.S. Const., art. I, § 8, cl. 3.

were properly enacted by the federal legislative branch, *i.e.*, whether the statutes exceeded the legislature's enactment authority under the Commerce Clause. *See id.*

This is sometimes referred to as a "valid-rule" facial challenge to a statute. *See, e.g., Ezell v. City of Chicago*, 651 F.3d 684, 697-98 (7th Cir. 2011). Such challenges permit a citizen (who is clothed with legal standing) to a challenge the legal validity of a particular statute itself, not its application in some particular instance. *Id.* at 698-99.

For example, a defendant is permitted to make a valid-rule/facial challenge to a charged statute on grounds that the statute's enactment violated constitutional principles of federalism. *See, e.g., Bond v. United States,* 564 U.S. 211, 220-24 (2011). Such a litigant is entitled to do so because he or she has a clear and present interest in ensuring "that laws enacted in excess of delegated governmental power cannot direct or control [the challenger's] actions." *Bond,* 564 U.S. at 222.

The proper mode of inquiry under such a challenge is therefore not hypotheticals, nor facts as alleged in the case at bar.[4] *See Lopez & Morrison, supra.* Rather, the proper focus of a valid-rule/facial inquiry is the *legislative process* employed to enact the statute

---

[4] Some courts have attempted to circumvent the valid-rule/facial inquiry found in *Lopez-Morrison* by citing the Supreme Court's words to the effect that a facial challenge requires the proponent to "establish that no set of circumstances exist under which the Act would be valid," and then imagining scenarios under which the statute would pass muster. *See, e.g., United States v. Roof,* 225 F.Supp.3d 438, 453 (D.S.C. 2016) (quoting *United States v. Salerno,* 481 U.S. 739, 745 (1987)). But if a federal statute was enacted *ultra vires* with respect to the federal legislature's authority, then it is "no law at all" and hence can *never* be validly used to support a criminal conviction. *Bond,* 564 U.S. at 227-28 (Ginsburg, J., concurring). Thus, a successful valid-rule/facial challenge means the statute is an invalid rule in all its applications and must necessarily meet the "no set of circumstances" test. *See, e.g., Ezell,* 651 F.3d at 698-99 ("Chicago's law, if unconstitutional, is unconstitutional *without regard* to its application—or in all its applications, as *Salerno* requires.").

at issue. *See id.* Accordingly, a valid-rule/facial inquiry generally must begin with a statute's legislative history, the topic explored next with respect to § 247(a).

### 2.    Legislative history

The initial version of § 247 was enacted in 1988, and proscribed the very same acts as set forth in the current version of § 247(a), *i.e.,* damaging religious real property "because of the religious character of that property" and forcible obstruction of the "free exercise of religious beliefs" by specified means. Pub. L. 100-346 (June 24, 1988). But as originally conceived, the statute was only to apply in situations where the defendant traveled in interstate commerce to commit the proscribed act, or used a facility or instrumentality of interstate commerce to commit the act. *Id.*

The accompanying congressional documents indicate that § 247 was enacted for the purpose of making "violence motivated by hostility to religion a Federal offense." S. Rep. 100-324 at 2 (1988). The Senate Report cited a perceived "growing number of incidents of religiously motivated violence," particularly anti-Semitic actions and criminal activity directed at "black churches" (though incidents involving Catholics, Buddhists, Unitarians, and Islam are also mentioned). *Id.* at 3. The report further noted that the above travel-instrumentality provisions limit the offense to those where "circumstances of the crime demonstrate interstate (as opposed to purely local) activity." *Id.* at 5.

The statute was amended in 1996 via the Church Arson Prevention Act, Pub. L. 104-155 (July 3, 1996). This Act makes these relevant congressional findings: (a) incidents of arson, destruction, and/or vandalism at places of worship "pose a national serious problem"; (b) incidence of such acts "has recently increased," especially at African-

American churches; (c) local jurisdictions have attempted to respond, but "the problem is sufficiently serious, widespread, and interstate in scope to warrant Federal intervention to assist State and local jurisdictions"; (d) hence, Congress claims authority under the Commerce Clause to "make acts of destruction or damage to religious property a violation of Federal law." *Id.* § 2.

Of particular note, Congress removed the interstate travel-instrumentality requirement entirely, and replaced it with the requirement that "the offense is in or affects interstate or foreign commerce." Pub. L. 104-155, § 3. The accompanying congressional report explains that this "jurisdictional element" was changed because the Justice Department was finding the interstate-travel/instrumentality requirement a difficult hurdle, thus making § 247 "relatively useless." H.R. Rep. 104-621 at 2 & 4 (1996).

Beyond that, the report does nothing more than document a number of church-arson incidents occurring in the 1990s. *Id.* at 3. No attempt is made to link these incidents to any effect upon interstate or national commerce. Or to suggest the proscribed act constitutes economic-commercial activity. Instead, the report makes clear that its new "in or affects interstate commerce" element was inserted upon a reading of the Supreme Court's *Lopez* decision cited earlier, under the theory the provision alone would automatically "limit[] its reach to conduct which can be shown to be in or to affect interstate commerce." *Id.* at 7.

With this legislative background in mind, the analysis can shift to the Supreme Court's methodology used to evaluate Commerce Clause enactment-authority challenges.

### 3.    Categories of authorized Commerce Clause legislation

In *Lopez*, the Supreme Court explained the importance of placing meaningful limits upon congressional authority under the Commerce Clause, lest our system of cooperative federalism be replaced with "completely centralized government" in contradiction to founding principles of American government. 514 U.S. at 557. The decision goes on to explain that Congress is authorized to regulate "three broad categories of activity" under the Commerce Clause:

(a).    ***Use/Channels:*** Congress may regulate the use and channels of interstate commerce.

(b).    ***Instrumentalities/Persons:*** Congress may regulate the instrumentalities of interstate commerce, or persons moving in interstate commerce.

(c).    ***"Substantially Affects":*** Congress may regulate any activity that "substantially affects interstate commerce."

*Lopez*, 514 U.S. at 558-59.

As the above legislative history indicates, the 1988 version of § 247 fits under category (a) and (b). But with its 1996 replacement and the new "in or affects interstate commerce" element, category (c)—activity that purportedly "substantially affects interstate commerce"—is implicated.[5] And this last category, according to the Supreme

---

[5] The Eleventh Circuit has upheld the constitutional validity of § 247 under prongs (a) and (b) based upon the stipulated facts of a particular case, while avoiding the issue with respect to category (c)—the "substantially affects" test. *United States v. Ballinger,* 395 F.3d 1218, 1227 & n.4 (11th Cir. 2005). In doing so, the Eleventh Circuit employed as-applied analysis, and declined to engage in a valid-rule/facial inquiry as described earlier. The Eleventh Circuit suggested as much in its opinion: "Although Ballinger purports to be making a facial as well as an as-applied challenge . . . we read him as making the latter more than the former." *Id.* at 1224 n.2. Thus, *Ballinger* and cases employing similar logic are not helpful precedents with respect to the valid-rule/facial challenge at issue here.

Court, threatens a radical enlargement of federal authority, such that Congress may be granted "a plenary police power that would authorized enactment of every type of legislation." *Id.* at 566.

To avoid this outcome, the Supreme Court announced a multi-factor analysis applicable to category (c) "substantially affects" invocations of Commerce Clause authority. For this test, the Supreme Court's post-*Lopez* decision in *United States v. Morrison,* 529 U.S. 598 (2000) is instructive, as discussed in more detail next.

### 4.    Scope and limits of "substantially affects" category of Commerce Clause enactment authority

In considering a "substantially affects" invocation of Commerce Clause authority to enact a federal statute, the Supreme Court has announced a multi-factor test of facial/valid-rule validity which includes the following considerations:

(a).    Whether the statute at issue is accompanied by "express congressional finding regarding the effects upon interstate commerce," such that a court of law can evaluate the legislative judgment that the activity in question substantially affects interstate commerce.

(b).    Whether the activity at issue truly constitutes "commerce" or some sort of "economic enterprise," as opposed to non-economic activity.

(c).    Whether the proffered link between proscribed activity and interstate commerce is direct and straightforward, or alternatively whether the proffered nexus is so "attenuated" as to signify an overbroad invocation

(d).    Whether the statute at issue contains an "express jurisdictional element" which will limit the statute's reach to those activities which have "an explicit connection with or effect on interstate commerce."

*Morrison,* 529 U.S. 610-13. Each of these can be examined in turn, to see whether § 247 passes muster under the Commerce Clause.

### (a).    Express congressional findings

Mr. Hari has found no record of "express congressional findings"—formal findings in the text of a public law or accompanying legislative report—suggesting any substantial effect of the proscribed activity upon interstate commerce. Rather, the legislative record indicates only a generalized desire to "assist State and local jurisdictions" with the business of criminal prosecution for religion-motivated "hate crimes." Pub. L. 104-155, § 2.

But whatever can be said about such motivations, it is quite clear that expression of a generalized desire to "assist" has no bearing upon the crucial question of whether the proscribed activity has a "substantial affect" upon interstate commerce. *See, e.g., Morrison*, 529 U.S. at 614-15. In any event, § 247(a) does not "assist" states in the slightest, but instead places very specific prosecutorial authority within the sole power and discretion of the federal government. The states have no say in the matter at all. This factor cuts strongly against the statute's validity under Commerce Clause authority.

### (b).    *Bona fide* commercial activity

As shown above, § 247(a) proscribes the acts of intentionally damaging religious property due to its religious character, or using force or threats (including threats against the religious property itself) to interfere with a person's free exercise of religion. Nothing about these proscribed acts inherently implicates "commerce" or an "economic enterprise." To the contrary, the above legislative history shows that Congress was trying to regulate threats, vandalism, and property damage motivated by religious bias. Whatever can be said about these proscribed activities, they certainly are not "economic" in nature. *See, e.g., Morrison,* 529 U.S. at 613 ("Gender-motivated crimes of violence are not, in any sense of

the phrase, economic activity") & *Lopez,* 514 U.S. at 561 (firearm possession in school "has nothing to do with commerce or any sort of economic enterprise"). This factor also cuts strongly against the statute's validity under Commerce Clause enactment authority.

### (c).    Regulated-activity/interstate-commerce linkage

As already shown, there is no demonstrated or even speculated link between the proscribed activity (*i.e.,* religion-motivated property damage and threats) and interstate commerce. And, it should be noted, the Supreme Court has roundly rejected any speculative inferential chain leading to a potential interstate-commerce impact, or claim of "aggregated impact" of a particular criminal activity. *Morrison*, 529 U.S. at 615.

With regard to criminal laws like the one at issue here (*i.e.,* "hate crime" laws), the Supreme Court has worried that such reasoning will lead to the dreaded federal "police power," wherein the federal government will soon be legislating about all manner of crimes, family law, and so on. *Id.* So too here. This factor cuts strongly against the statute's validity.

### (d).    Jurisdictional element

So far, there are three factors that cut strongly against the viability of § 247(a) under the federal legislature's Commerce Clause enactment authority. But as noted above, the current version of the statute was enacted after *Lopez*, and it appears that members of congress initially read that decision to permit federal criminal laws such as § 247 so long as a "jurisdictional element" is inserted, *i.e.,* an essential offense element which is meant to "ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce" to satisfy the Commerce Clause. *Lopez,* 514 U.S. at 561.

Accordingly, the statute requires the government to prove that the proscribed act in question was "in or affect[ed] interstate commerce." § 247(b). And it is true that the Eighth Circuit has sometimes cited a criminal statute's jurisdictional element to uphold enactment validity under the Commerce Clause. *See, e.g., United States v. House*, 825 F.3d 381, 386 (8th Cir. 2016).

But courts have correctly said the presence of "a jurisdictional element is not alone sufficient to render a challenged statute constitutional" since such a simple one-factor consideration "has no principled limit." *United States v. Ho,* 311 F.3d 589, 600 (5th Cir. 2002) (citations and internal punctuation omitted); *accord, e.g., United States v. Rodia,* 194 F.3d 465, 472 (3d Cir. 1999) (collecting cases and holding that mere presence of jurisdictional element does not insulate statute from judicial scrutiny under Commerce Clause, particularly in light of *Lopez* language suggesting that a valid jurisdictional element must ensure an adequate and non-attenuated nexus between regulated activity and interstate commerce). In *Lopez* and *Morrison,* the Supreme Court didn't say or imply that the presence of a jurisdictional element would be dispositive of the Commerce Clause analysis. *See, e.g., Morrison,* 529 U.S. at 612. Rather, the court cited this as but one factor amongst four. *Id.* Surely if the Supreme Court had intended this as the overriding and dispositive factor, it would have said so.

Hence, assuming for the moment that this factor favors the validity of § 247(a) under the Commerce Clause, that factor must be balanced against all the rest. This multi-factor balancing is the topic of the next section.

13

### 5.   Section 247(a) exceeds federal legislative authority under the Commerce Clause, and is thus is a facially invalid rule

As demonstrated above, at least three of the four "substantially affects" Commerce Clause factors strongly cut against the statute's validity. The proscribed activity is traditionally one of exclusive state and local regulation, not an arena for the federal government to intrude upon. Thus, if Congress wishes to enter this non-traditional and novel arena, it is incumbent upon that body to clearly demonstrate some linkage between the regulated activity and interstate commerce. Congress did not do so, nor did it even attempt to do so.

The only way to generate the requisite linkage is to engage in *post hoc* rationalization, and to "pile inference upon inference" in an effort to conjure some imaginary statute-commerce linkage that Congress never supplied. *Lopez,* 514 U.S. at 567. Or to consider the total impact of the proscribed conduct upon interstate commerce. But the Supreme Court has "reject[ed] the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." *Id.* at 617.

In enacting § 247(a) Congress cited some instances of religious-bias-motivated property crimes, and expressed a desire to "assist" the states in addressing the perceived problem. *Supra* § IV.A.2. But a claimed desire to "assist" is certainly no linkage to interstate commerce. And assumption of a traditional state function at the sole discretion of the federal government is less about assistance, much more about the reach of federal jurisdiction in areas where it cannot be validly imposed. These aspects of § 247(a) are on

all fours with a very similar bias-motivated-violence statute at issue in *Morrison*. In that case, the Supreme Court held the statute was invalid as exceeding the federal legislature's Commerce Clause authorization.

The main difference with *Morrison* is that § 247(a) includes a jurisdictional element. But as already shown, the mere presence of the jurisdictional element cannot save § 247(a). Certainly not when all the other factors cut so heavily against the statute's validity. The statute does not regulate inherent economic activity at all; rather, as in *Morrison*, the statute seeks to proscribe non-economic "bias crime" conduct more generally. There are no congressional findings suggesting an attempt to regulate some sphere of interstate commerce, but rather the legislative record indicates the opposite is true. And for these same reasons, the linkage between proscribed act and interstate commerce is non-existent.

Doubtless the government will say the jurisdictional element suffices to ensure that each and every § 247(a) prosecution hews to valid federal interests under the Commerce Clause. But such a claim proves far too much.

For example, can Congress enact a national code of family law—regulating marriage, dissolution, spousal-child support, visitation, and the like—which is to apply only in those cases in which the familial transaction at issue somehow "affects" interstate commerce? If so, such a law will cover virtually every citizen of this nation, as familial relationships are lengthy in duration and broad in scope; and thus are bound to "affect" interstate commerce in some way or other. Certainly the relationship will be bound to "affect" commerce at the points most relevant to family law practice—the aforementioned marital dissolution and spousal-child support situations, for example. And yet there can be

little doubt that such a law would fail to survive the Supreme Court's facial/valid-rule scrutiny under Commerce Clause. *See Lopez*, 514 U.S. at 564 (expressing incredulity about implications of government's rationale for Commerce Clause authority to enact federal firearm criminal statute, as such reasoning would lead to pervasive federal regulation of family law, criminal enforcement, education, and other spheres "where States historically have been sovereign"). This is for the very obvious reason that family law is principally a state and local concern, with only a tenuous and transitory linkage to interstate commerce. *See id.* The Commerce Clause requires a *substantial* connection between the regulated activity and interstate commerce; not an attenuated connection that is nonetheless bound to trigger a jurisdictional element at one point or another. *See id.*

So too with § 247(a). There can be little question that religious-bias-motivated damage or threats to property is primarily a matter of local concern to be addressed by state police powers, not interstate economic activity of federal concern. *See, e.g., Morrison,* 529 U.S. at 613 ("Gender-motivated crimes of violence are not, in any sense of the phrase, economic activity."). Thus, should the federal government wish to regulate such activity under the auspices of its Commerce Clause authority, it is incumbent upon Congress to demonstrate a sufficient linkage with interstate commerce. *See id.* It will not do to simply graft on jurisdictional-element language designed to circumvent this essential requirement. For that would spell the end of any meaningful limits to federal assertions of power over areas of traditional state concern—whether it be bias-motivated crimes, family law statutes, zoning codes, or what have you.

For its rejoinder, the government will doubtless cite *United States v. Ballinger,* 395 F.3d 1218 (11th Cir. 2005) and *United States v. Roof,* 225 F.Supp.3d 438 (D.S.C. 2016), both of which rejected challenges to the validity of § 247 under the Commerce Clause. But these decisions are inapposite, and also contain fundamental analytical errors.

In *Ballinger*, the Eleventh Circuit considered the case of a defendant who traveled through different states, acquiring supplies and setting fires to churches along the way. 395 F.3d at 1222-24. The Eleventh Circuit used these stipulated facts to analyze the Commerce Clause challenge presented—explicitly considering the question under the "channels" and "instrumentalities" categories of the *Lopez* formulation, not the "substantial affects" prong. *Id.* at 1227 & n.4. And consistent with this approach, the *Ballinger* court deemed the defendant's legal thesis more along the lines of an as-applied challenge—not a true facial one. *Id.* at 1224 n.2. Thus, *Ballinger* must be read to be an as-applied challenge to § 247, which failed under the stipulated facts at issue there. But as discussed earlier, Mr. Hari presents this challenge as a pure facial/valid-rule challenge to § 247, in which the alleged facts at hand have no bearing upon the legal analysis at all, and the "substantial affects" prong of the *Lopez* formulation takes center stage.

Similarly, the *Roof* court made the error of treating the § 247 jurisdictional element as a dispositive factor which wholly insulates the statute from any facial/valid-rule challenge. 225 F.Supp.3d at 453-54. As already shown earlier, this would be a principle without limit, and hence cannot be the correct rule. *See, e.g., Ho,* 311 F.3d at 600 & *Rodia,* 194 F.3d at 472. Then, the *Roof* court proceeded to claim that the applicable question in a facial/valid-rule challenge is whether "it is *possible* for an attack on a church to be in or

17

affect interstate commerce." *Id.* at 455. The court's theory being that the mere possibility of such a factual scenario dooms any facial challenge, under the Supreme Court's formulation that a facial challenge requires a showing that there exists "no set of circumstances" under which the challenged statute would be valid. *Id.* at 453 & 455 (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Unfortunately, the *Roof* court misapprehended this test in the context of a facial/valid-rule challenge. As discussed above, if a statute was enacted *ultra vires* it is invalid in *all its applications*, and cannot lawfully be used *in any case or against any person. See, e.g., Ezell,* 651 F.3d at 698-99. Hence, a successful facial/valid-rule challenge necessarily meets the "no set of circumstances" test. *See id.*

In short, the cases which have reached a contrary conclusion have either analyzed a different legal issue than the one presented here, or have misapprehended the relevant legal principles of a facial/valid-rule challenge. Hence, these decisions are of no help to this Court, and cannot be relied upon.

Rather, when all the above pertinent factors are considered together, it becomes clear that § 247(a) is a facially invalid statute, its enactment having exceeded the authority of the federal legislature under the Commerce Clause. Accordingly, Counts 1 and 2 must be dismissed, since these allege standalone violations of § 247(a) which has now been shown to be constitutionally invalid. And Counts 3 and 4 must be dismissed as well, since these are alleged compound offenses with essential predicates/objects being claimed violations of invalid § 247(a). *See supra* n.1. In short, § 247(a) is a constitutionally and facially invalid rule, and thus Counts 1-4 must be dismissed.

## B.   The § 247(e) pre-federal-prosecution certification fails to meet the statutory requirements and thus the prosecution is invalid.

As already shown, in enacting § 247 Congress was well aware that it was treading upon ground that is traditionally reserved to the states. The original legislative documents and statutory text reflect a conscious attempt to sharply limit any prosecutions under the original version of § 247 to situations which bears some distinctive indicia of interstate commerce. S. Rep. 100-324 at 5 (1988). Congress even took it a step further, adding an official pre-prosecution certification requirement:

> No prosecution of any offense described in this section shall be undertaken by the United States except upon the certification in writing of the Attorney General or his designee that in his judgment a prosecution by the United States is in the public interest and necessary to secure substantial justice.

18 U.S.C. § 247(e). The legislative history shows this additional requirement was added at the request of the Justice Department, to "ensure appropriate deference to state or local prosecution in most cases, while allowing Federal prosecution where state or local officials will not assume jurisdiction or for any reason are unable to secure a conviction." S. Rep. 100-324 at 6 (1988).

In this case, the government has supplied the defense with its § 247(e) certification document. It is comprised of a single page, and bears the signature of a Justice Department official. There is no need to supply a copy of the document, for its body runs a mere two sentences:

> I, John M. Gore, hereby certify that prosecution by the United States of Michael Hari, Michael McWhorter, and Joseph Morris for violating Title 18, United States Code, § 247(a)(1) and § 247(a)(2) is in the public interest and necessary to secure substantial justice. This certificate is made pursuant to Title 18, United States Code, § 247(e).

(Cert. of Asst. Atty. Gen., June 18, 2018). Quite plainly, the required certification document does nothing more than parrot the relevant statutory language, without attempting to make any substantive presentation at all. (*E.g.,* Did state officials decline prosecution? Is there some reason why state officials might be unsuccessful in instituting a prosecution and/or securing a conviction? What particular federal interests are implicated?).

It is not permissible for the government to proceed as though § 247(e) were some empty formality. To show why this is so, it is helpful to consider an analogous provision of the federal juvenile law, 18 U.S.C., Ch. 403. That act includes an analogous certification mandate:

> A juvenile alleged to have committed an act of juvenile delinquency . . . shall not be proceeded against in any court of the United States unless the Attorney General, after investigation, certifies to the appropriate district court of the United States that (1) the juvenile court or other appropriate court of a State does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, (2) the State does not have available programs and services adequate for the needs of juveniles, or (3) the offense charged is a crime of violence that is a felony or an offense described in [certain federal drug commerce and firearms statutes], and that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction.

18 U.S.C. § 5032.

Note the similarities to the text and legislative history of § 247(e), *i.e.,* the question of whether state officials are willing and able to handle the matter, whether the alleged offense is one of special federal concern, and so on. In the context of § 5032, courts have long held that the certification requirement is substantive and jurisdictional, not *pro forma*.

*E.g., United States v. Juvenile Male,* 923 F.2d 614, 616-20 (8th Cir. 1991). It is also subject to judicial review, to determine whether the certification dictates have been adequately addressed. *E.g., id.*

The § 247(e) certification should be treated in the same manner. *See, e.g., Roof,* 225 F.Supp.3d at 450-51 (substantive review of 18 U.S.C. § 249 certification requirement). That is to say, the certification must be evaluated for substance, to determine whether the key federal-interest questions have been addressed. *See id.*

From the above-quoted text, it is quite plain to see that *no* substantive showing has been made, nor attempted. There is no discussion as to whether state prosecution officials have at their disposal laws which proscribe the same alleged acts, though a cursory investigation shows that such state statutes do exist. *See, e.g.,* Minn. Stat. §§ 609.561 to .5632 (arson offenses) & §§ 609.221 to .2233 (assault offenses, including bias-motivated enhancement). There is no discussion as to whether state officials are reluctant to bring a criminal action. There is no unique concern that the local jury pool might comprised of citizens reluctant to return a guilty verdict owing to some pervasive community bias. There is no discussion as to why a federal prosecution—as opposed to a state criminal action—is particularly in the "public interest and necessary to secure substantial justice." § 247(e).

In sum, the § 247(e) certification here is entirely devoid of any substantive justification. Under these circumstances, the certification must be deemed insufficient, and all § 247-dependent charges must be dismissed. Thus, Counts 1-4 must be dismissed for this additional reason.

C.   **The § 924(c) charge is constitutionally invalid under the Due Process Clause void-for-vagueness doctrine.**

Count 4 of the indictment claims alleges that Mr. Hari carried and used a destructive device "during and in relation to crimes of violence" in violation of § 924(c). (ECF 14 at 6-7). The term "crime of violence" is statutorily defined at § 924(c)(3), and here the cited "crimes of violence" are alleged violations of § 247(a)(1) and § 247(a)(2) described above. (ECF 14 at 6-7). But the alleged § 247(a) predicate offenses fit only under a statutory "crime of violence" category that has been deemed unconstitutional under the Due Process Clause void-for-vagueness doctrine. Accordingly, the § 924(c) charge of Count 4 must be dismissed for this additional reason.

1.   **Section 924(c) "crime of violence"**

As relevant here, § 924(c) seeks to penalize anyone who "uses or carries a firearm,"[6] and does so "during and in relation to any crime of violence." § 924(c)(1)(A). Whether the defendant committed the alleged "crime of violence" constitutes an essential element of a § 924(c) charge. *Eighth Circuit Manual of Model Criminal Jury Instructions* § 6.18.924C (Westlaw 2018). The jury must decide whether the defendant actually committed the "crime of violence." *Id.* But before that, the district court must resolve a purely legal question: whether the alleged § 924(c) predicate qualifies as a "crime of violence" under

---

[6] The term "firearm" includes a "destructive device." 18 U.S.C. § 921(a)(3) & (4). And § 924(c) calls for a 30-year minimum term of imprisonment upon a charge and conviction that the "firearm" at issue constituted a "destructive device." § 924(c)(1)(B)(ii). The government has charged that Mr. Hari "did knowingly carry and use" a "destructive device" under this provision. (ECF 14 at 6-7).

the applicable statutory definition. *United States v. Moore,* 38 F.3d 977, 978-79 (8th Cir. 1994). This is accomplished by means of the "categorical approach."

## 2. Categorical approach

The term "crime of violence" is statutorily defined as a felony offense which falls under one of two definitional categories:

> *[§ 924(c)(3)(A) Force Clause:]* has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> *[§ 924(c)(3)(B) Residual Clause:]* that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

§ 924(c)(3) (paragraph headings added).

To determine the purely legal question as to whether a charged § 924(c) predicate fits under one of these "crime of violence" definitional categories follow what is known as the "categorical approach." *See Diaz v. United States,* 863 F.3d 781, 783-84 (8th Cir. 2017) (using categorical approach with respect to § 924(c)(3)(A) Force Clause) & *Moore,* 38 F.3d at 979 (same with respect to § 924(c)(3)(B) Residual Clause). Under the categorical approach, a court is to examine the "statutory definition of a particular offense" and not the "underlying facts" of that offense. *Moore,* 38 F.3d at 979. The Supreme Court recently confirmed that this is the correct mode of analysis in the context of § 924(c) predicates. *See United States v. Davis,* 139 S. Ct. 2319, 2327-33 (2019).

In *Davis,* the Supreme Court observed that the § 924(c)(3) "crime of violence" defined categories bear a striking resemblance to other statutes which have long been deemed to require categorical analysis when considering applicability of predicate

convictions offered by the government, *i.e.,* the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e) and the general definitional statute found at 18 U.S.C. § 16. *See* 139 S. Ct. at 2325-26. The *Davis* decision goes on to cite with approval numerous ACCA and § 16 cases, many of which instruct how the courts are to conduct the categorical approach. *See id.* at 2327-33.[7]

Hence, *Davis* stands as a confirmation of the above circuit rule, *i.e.,* that categorical analysis is to be used when considering the viability of § 924(c)(3) predicates offered by the government—under either the § 924(c)(3)(A) Force Clause or § 924(c)(3)(B) Residual Clause. *See Diaz,* 863 F.3d at 783-83 & *Moore,* 38 F.3d at 979. And further, *Davis* indicates that the same principles which apply to categorical analysis of ACCA and (more particularly) § 16, also apply to § 924(c)(3). *See Davis,* 139 S. Ct. at 2325-33. The core principles that shape the categorical approach are these:

(a). *Determine elements of proposed predicate:* As the name implies, the categorical approach seeks to place statutes of conviction into defined categories. That is to say, identify those criminal statutes which *always necessarily* result in a conviction that fits under a defined category. To accomplish this, first and foremost the categorical

---

[7] This is not unusual, as the Supreme Court frequently decides questions concerning the categorical approach with reference to any statute that calls for the same mode of analysis. *See, e.g., Descamps v. United States,* 570 U.S. 254 (2013) (resolving a question regarding the categorical approach in the context of one provision of ACCA, using case law concerning the categorical approach applicable to other ACCA provisions and immigration statutes). As does the Eighth Circuit. *See, e.g., United States v. Pettis,* 888 F.3d 962, 963-64 (8th Cir. 2018). In line with *Davis* and these other authorities, Mr. Hari will cite to categorical approach cases involving other statutes—*e.g.,* ACCA, § 16, the Immigration and Nationality Act (INA), Pub. L. 82-414 (June 27, 1952), *codified as amended at* 8 U.S.C. §§ 1101-1537.

approach requires a court to determine *the essential elements* of the predicate conviction or offense on offer. *See, e.g., Mathis v. United States,* 136 S. Ct. 2243, 2248 (2016). The idea is that if the essential elements of a given statutory crime meet a categorical definition, then every single conviction under that statute must *always necessarily* fit under the category as well. *See id.*

   *(b). Compare predicate's elements to defined category:* Having determined the elements of the proposed predicate, the categorical approach calls for a comparison of those elements with the statutory category or categories at issue. *See id.* So, for example, a court might seek to determine whether a given conviction of offense fits under a "force clause" such as § 924(c)(3)(A). In such a case, the court would first determine the essential elements of the statute of conviction or statute of offense as above. Next, those elements must be examined to see whether they require a showing of "force" which is equal to or greater than the minimum threshold described in the force clause category. *See Curtis Johnson v. United States,* 559 U.S. 133, 136-37 & 144-45 (2010) (ACCA force clause) & *Leocal v. Ashcroft*, 543 U.S. 1, 7-10 (2004) (§ 16(a) force clause).[8]

---

[8] As for a "residual clause" like § 924(c)(3)(B), courts have employed a complex and specialized version of the categorical approach. *See Samuel Johnson v. United States,* 135 S. Ct. 2551, 2257 (2015) (ACCA residual clause) & *Sessions v. Dimaya,* 138 S. Ct. 1204, 1211 (2018) (§ 16(b) residual clause). This discussion need not delve into the complexities of this, however, as *Davis* has declared the § 924(c)(3)(B) residual clause to be constitutionally invalid under the Due Process Clause void-for-vagueness doctrine—a decision which followed from the same results with respect to the residual clause of both ACCA and § 16(b). 139 S. Ct. at 2326-27. This point will be discussed in greater detail below.

*(c). Ignore underlying facts:* The entire point of this exercise is to avoid judicial fact-finding about the circumstances surrounding any predicate conviction or alleged offense on offer. *See, e.g., Taylor v. United States,* 495 U.S. 575, 600-01 (1990). Hence, the categorical approach requires a court to completely ignore any facts or circumstances underlying the predicate conviction or offense being examined. *See, e.g., Moncrieffe v. Holder,* 569 U.S. 184, 190-91 (2013). The inquiry must be limited to the above comparison of offense elements with category description. *See id.*

*(d). Assume the least-culpable conduct that will support a conviction:* Because a categorical inquiry seeks to include only those statutes which produce convictions that *always necessarily* fit within the category, it is a useful exercise for courts to determine the least-culpable conduct that can result in a conviction, *i.e.,* "presume that the conviction rested upon nothing more than the least of the acts criminalized" by the predicate statute. *Moncrieffe,* 569 U.S. at 190-91 (internal punctuation and citation omitted). That being said, there must be a "realistic probability" (as opposed to a "theoretical possibility") that any given least-culpable conduct would be proscribed by the statute. *Id.*

The next step, then, is to apply these principles with respect to the proposed predicate offense at issue here—§ 247(a). That is to say, determine whether any conviction under § 274(a) *always necessarily* fits under the Force Clause of § 924(c)(3)(A) (or the Residual Clause of § 924(c)(3)(B), but as discussed later on that route is now legally unavailable). As above, the first step is to determine the elements of § 247(a), discussed next.

### 3.    Elements of § 247(a)

Here, the government alleges dual § 924(c) predicates: (i) a claimed violation of § 247(a)(1); and (ii) a claimed violation of § 247(a)(2). (ECF 14 at 7). As just mentioned the "crime of violence" inquiry requires a recitation of the predicate's elements, and with respect to § 247(a)(1) these are:

(1).    The defendant intentionally damaged religious property;

(2).    The defendant did so because of the religious character of the property;

(3).    The crime was in or affecting interstate commerce.

1 *Modern Fed. Jury Instructions—Criminal* § 17-19 (Lexis 2018).

As for § 247(a)(2), so far Mr. Hari has not unearthed an approved jury instruction or listing of essential elements. But by transferring the statutory language of § 247(a)(2) into a list as above, the result looks something like this:

(1).    The defendant intentionally obstructed a person in the enjoyment of that person's free exercise of religious beliefs.

(2).    The defendant did so intentionally, by force or threat of force, including by threat of force against religious property as alleged in the indictment.

(3).    The crime was in or affecting interstate commerce.

With this in mind, the next step is ascertain whether these elements fit within the Force Clause of § 924(c)(3)(A).

### 4.    Force clause—§ 924(c)(3)(A)

As observed earlier, an offense will qualify as a "crime of violence" under the § 924(c) force clause only so long as the statutory offense "has as an element the use, attempted use, or threatened use of physical force against the person or property *__of another__*." § 924(c)(3)(A) (emphasis added).

The emphasized language makes clear that the proffered statutory predicate must require a showing of force directed at *__the property of someone other than the actor__*, not the property *__owned or otherwise held by the actor himself__*. This is a crucial distinction, as multiple courts have held statutes which permit a conviction owing to force directed at one's own property will not qualify under categorical analysis. *See, e.g., United States v. Salas,* 889 F.3d 681, 683-84 (10th Cir. 2018) (federal arson statute does not categorically qualify under § 924(c)(3)(A) Force Clause, since statute "does not require, as an element, the use of force against the property 'of another'" as it "may apply to a person who destroys his or her own property"); *United States v. Whaley,* 552 F.3d 904, 907 (8th Cir. 2009) (for ACCA purposes, generic definition of arson offense is "malicious burning of real or personal property *of another*") (emphasis added); *Tran v. Gonzales,* 414 F.3d 464, 469 (3d Cir. 2005) (state reckless burning/exploding statute does not categorically fit under § 16(a) force clause, since one element permits "intentionally starting a fire on one's own property

or that of another" with the former possibility failing to qualify under the § 16(a) "property of another" criterion).[9]

But as the prior section demonstrates, the elements of § 247(a) do not categorically or necessarily require force against property *of another*. Rather, § 247(a)(1) requires a showing of damage to *any* religious property, motivated by the religious character of that property. *See* 1 *Modern Fed. Jury Instructions—Criminal* § 17-19 (Lexis 2018). And § 247(a)(2) requires a showing of obstructing a person's free practice of religious belief, including by threatening force against *any* religious property. *See, e.g., United States v. Corum*, 362 F.3d 489 (8th Cir. 2004).

Neither alleged offense requires that that requisite damage or threats be directed at the property "of another." Rather, under either statute, a conviction may lie where the defendant damages or makes threats against his or her own property.

For example, religious leaders might damage or destroy their own property to unite followers or garner public sympathy—either of which would constitute religious-motivated damage to property under § 247(a)(1) and threats to property which interfere with religious practice under § 247(a)(2). *See, e.g., Andrade v. United States*, 116

---

[9] When using categorical approach, courts have uniformly demanded that the predicate statute on offer fit every word and phrase contained in the definitional category. For example, ACCA permits a juvenile adjudication to count as a predicate only when the adjudication involves "the use or carrying of a firearm, knife, or destructive device." § 924(e)(2)(B). Under this provision, the Eighth Circuit has rejected use of a juvenile adjudication for "assault with a dangerous weapon," where the "dangerous weapon" might include items other than a "firearm, knife or destructive device." *United States v. Headbird*, 832 F.3d 844, 848-49 (8th Cir. 2016). Hence, the "property of another" aspect of the § 924(c)(3)(A) force clause is an essential requirement for purposes of categorical analysis, as the above-cited cases indicate.

F.Supp.2d 778, 785 (W.D. Tex. 2000) (finding that members of Branch Davidian religious sect set fire to their own compound), *aff'd*, 338 F.3d 448 (5th Cir. 2003). Or one religious subgroup could damage its own property to falsely accuse, punish, or eliminate another subgroup. This is no speculative or far-flung notion, as intra-sect religious disputes occur with some frequency, and have even been prosecuted under federal statutes. *See, e.g., United States v. Miller,* 767 F.3d 585, 589-91 (6th Cir. 2014) (prosecution under 18 U.S.C. § 249(a)(2) for assault based upon religion of victims, where dispute within Amish community led to multiple intra-sect assaults).

Although Mr. Hari has yet to find an exemplar case in which such a scenario was successfully prosecuted under § 247(a), the absence is hardly surprising given the paucity of cases in which the federal government has brought a § 247(a) charge. What's important is that the statutory language of § 247(a) fully embraces such a legal theory. § 247(a)(1) (statutory crime applies to anyone who "defaces, damages, or destroys any religious real property," regardless of ownership status of said property) & § 247(a)(2) (applies to anyone who uses "force or threat of force, including [] threat of force against religious real property," again regardless of ownership status of said property).

An analogue may be found at 18 U.S.C. § 844(i), a federal arson statute which applies to anyone who "maliciously damages or destroys . . . by means of fire or explosive, any building, vehicle, or other real or personal property." Note that § 844(i) says nothing about ownership status of the "building, vehicle, or other real or personal property" at issue. And courts have taken this omission to mean that § 844(i) reaches acts in which the defendant is accused of damaging *his or her own property* by means of fire or explosive.

*See, e.g., United States v. Anderson,* 783 F.3d 727, 733-37 & 750 (8th Cir. 2015) (upholding § 844(i) conviction of business owner who arranged to burn down his own restaurant). And for this same reason, courts have recognized that a § 844(i) conviction does not categorically fit under the § 924(c)(3)(A) Force Clause, as it does not require use of force against the "property of another." *See, e.g., Salas,* 889 F.3d at 683.

So too with § 247(a). The statutory language fully embraces situations in which the defendant damages or otherwise uses force against his or her own "religious real property," a scenario that finds historical example as shown above. *See, e.g., Andrade,* 116 F.Supp.2d at 785. Accordingly, using categorical analysis, § 247(a) does not fit within the § 924(c)(3)(A) force clause, and the only remaining possibility is § 924(c)(3)(B) residual clause. But that second option is unconstitutional and no longer available after the Supreme Court's recent decision in *Davis*, as discussed next.

### 5.     Residual clause—§ 924(c)(3)(B)

In the past, a statute would qualify as a "crime of violence" under the § 924(c)(3)(B) residual clause, when the alleged offense "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Moore,* 38 F.3d at 979. As explained in the Supreme Court's recent *Davis* decision, this type of statute would generally require courts to engage in a rather amorphous form of the categorical approach, asking courts to imagine an idealized "ordinary case" of the statute at issue, and "guess whether a serious potential risk of physical injury to another would attend its commission." 139 S. Ct. at 2326.

Over the last several years, schemes of this ilk have come under scrutiny, beginning with an analogous provision of ACCA which was at issue in *Samuel Johnson v. United States,* 135 S. Ct. 2551 (2015). In *Samuel Johnson,* the Supreme Court found the sentence-enhancing ACCA residual clause to be constitutionally invalid under the Due Process Clause void-for-vagueness doctrine, as the above test was deemed so indeterminate as to preclude fair notice and "invite arbitrary enforcement." *Id.* at 2557. The Supreme Court later reached the same holding with respect to § 16(b) in the context of immigration removal proceedings. *Sessions v. Dimaya,* 138 S. Ct. 1204, 1216 (2018). And § 16(b) is word-for-word with applicable portions of the § 924(c)(3)(B) residual clause, above.

Now—and very recently—the Supreme Court has held that the § 924(c)(3)(B) residual clause is unconstitutional under the same Due Process Clause void-for-vagueness doctrine. *United States v. Davis,* 139 S. Ct. 2319, 2326-27 (2019). Thus, we need not (and cannot) engage in the specialized "residual clause" version of the categorical approach described above. The law now precludes use of the § 924(c)(3)(B) residual clause to classify charged § 247(a) as the essential predicate offense. *See id.*

As already noted, under the applicable categorical approach, § 247(a) fails to qualify under the § 924(c)(3)(A) force clause. Hence, if § 247(a) is to qualify as the requisite "crime of violence," it must do so under the § 924(c)(3)(B) residual clause. But the § 924(c)(3)(B) residual clause is unconstitutional, so that route is unavailable. *Davis,* 139 S. Ct. at 2326-27. In short, the § 924(c) charge of Count 4 contains no legally valid predicate offense, an essential element of a § 924(c) charge. Thus, Count 4 is legally infirm and must be dismissed.

**D.     The § 247(a)(1) and § 247(a)(2) charges are multiplicious with respect to one another, in violation of the Double Jeopardy Clause.**

As noted earlier, the government alleges that Mr. Hari and others committed the alleged acts at issue here on August 5, 2017, at the Dar al Farooq Islamic Center in Bloomington. (ECF 14). The government theorizes the same set of acts constitutes a violation of multiple criminal statutes, including § 247(a)(1) (damaging religious property because of religious character) and § 247(a)(2) (obstructing person's exercise of religious beliefs by means of force or threats).

Bringing multiple criminal charges based upon a single set of alleged acts implicates the Double Jeopardy Clause of the United States Constitution. *See, e.g., United States v. Mann,* 701 F.3d 274, 285-87 (8th Cir. 2012). One concern is that the charges may be "multiplicious," *i.e.,* effectively "charging the same offense in more than one count," and therefore raising "the possibility that the defendant will receive more than one sentence for a single offense." *Id.* at 285 (citations and internal punctuation omitted).

In determining whether a defendant "may be charged with violating multiple statutes on the basis of a single criminal act," courts examine the statutes at issue to decide whether each statute "requires proof of a fact which the other does not." *Id.* (quoting *Blockburger v. United States,* 284 U.S. 299, 304 (1932)).

Here, as formulated above, the side-by-side comparison of elements yields this result:

| § 247(a)(1) | § 247(a)(2) |
|---|---|
| (1). The defendant intentionally damaged religious property, as alleged in the indictment. | (1). The defendant intentionally obstructed a person in the enjoyment of that person's free exercise of religious beliefs. |
| (2). The defendant did so because of the religious character of the property. | (2). The defendant did so intentionally, by force or threat of force, including by threat of force against religious property as alleged in the indictment. |
| (3). The crime was in or affecting interstate commerce. | (3). The crime was in or affecting interstate commerce. |

So do these two sets of elements "require[] proof of a fact which the other does not"? Though they look slightly different, further examination indicates they are the same in essentials, or otherwise the one fits within the other.

For example, Element 1 of § 247(a)(1) requires a showing that the defendant intentionally damaged religious property. Element 2 of § 247(a)(2) requires a showing that the defendant used "force or threat of force" including "threat of force against religious property." Plainly, then, the "force" showing needed for a § 247(a)(2) charge fully encompasses the damage to religious real property showing for a § 247(a)(1) charge. That is to say, Element 1 of a § 247(a)(1) charge is a subset of Element 2 of a § 247(a)(2) charge.

In like manner, Element 2 of § 247(a)(1) requires a showing that the defendant acted "because of the religious character" of the property at issue. Whereas Element 1 of § 247(a)(2) requires a showing that the defendant "intentionally" obstructed a person's "free exercise of religious beliefs." This last item is a subset of the first. That is to say, using force against property in order to obstruct someone's religious beliefs, is a mere specific

subset of the more general scenario of damaging religious property because of that property's religious characteristics.

Viewed in this way, it becomes apparent that these elements are functionally the same or subsets of one another. The defense is not aware of any authority suggesting that Congress wished for the same act to constitute a violation of both statutes. Hence, the government may proceed with only one of these charges, not both.

## V.    Conclusion

For all these reasons, Counts 1-4 of the indictment are legally infirm and must be dismissed prior to trial.

Dated:  July 18, 2019                    Respectfully submitted,

                                         s/ Reynaldo A. Aligada, Jr.
                                         _____
                                         REYNALDO  A.  ALIGADA,  Jr.
                                         Attorney ID No. 319776

                                         s/ Shannon Elkins
                                         _____
                                         SHANNON  ELKINS
                                         Attorney ID No. 332161

                                         Attorneys for Defendant
                                         107 U.S. Courthouse
                                         300 South Fourth Street
                                         Minneapolis, MN 55415