UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 18-150(1) (DWF/HB)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v.                    Plaintiff, | ) | **DEFENDANT'S MEMORANDUM IN** |
| | ) | **SUPPORT OF HEARING PURSUANT** |
| MICHAEL HARI, | ) | **TO *FRANKS v. DELAWARE*** |
| | ) | |
| Defendant. | ) | |

Michael Hari, through undersigned counsel, submits this memorandum in support of his Motion for a *Franks* Hearing. This Memorandum will show that although *Franks* sets a high standard for reviewing a search warrant beyond its "four corners," the standard is clearly met in this case.

**I.      *Franks v. Delaware***

A properly informed, neutral and detached magistrate serves to protect against unjustifiable privacy invasions by interposing judicial impartiality into the critical probable cause decision. This is an especially important safeguard to protect against the otherwise unrestricted, ex parte process that may be subject to abuse or overreaching by investigators and prosecutors. *See, e.g., Johnson v. U.S*., 333 U.S. 10, 14, 68 S. Ct. 367, 92 L. Ed. 436 (1948) (probable cause must be determined by a neutral and detached magistrate, and not by the officer engaged in the often competitive enterprise of ferreting out crime).

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court considered the question of whether a reviewing court could, under certain circumstances, delve into the

contents of an affidavit presented in support of a search warrant to examine its veracity. The Court ultimately decided that such an examination should be permitted under certain circumstances.

> Because it is the magistrate who must determine independently whether there is probable cause, it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement, were to stand beyond impeachment.

*Id*. at 165. internal citations omitted).

In order to obtain a hearing in which a reviewing court looks beyond the four corners of the affidavit, "the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.* at 171. To obtain a hearing, the *Franks* Court determined that a defendant must meet three requirements:

1) the defendant must make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit;

2) the allegation must be accompanied by an offer of proof; and

3) the defendant must establish that the allegedly false statement is necessary to the finding of probable cause.

If the defendant can meet all three requirements, the Fourth Amendment requires that a hearing be held at the defendant's request. *Franks,* 438 U.S. at 155, 171.

The Eighth Circuit holds that "[t]o prevail on a *Franks* challenge, a defendant must show the following: (1) the affiant officer knowingly and intentionally, or with reckless disregard for the truth, included a false or misleading statement in, or omitted information from, the affidavit in support of the warrant; and (2) the affidavit would not establish probable cause if the allegedly false information is ignored or the omitted

information is supplemented." *United States v. Smith*, 715 F.3d 1110, 1118 (8th Cir.

2013)(quoting *United States v. Cowling*, 648 F.3d 690, 695 (8th Cir. 2011). *See also*

*United States v. Reivich*, 793 F.2d 957, 960 (8th Cir. 1986)(extending *Franks* to deliberate

omissions.)

      Adapting *Franks* to the situation involving omissions from affidavits, a defendant

must show:

> (1) that the police omitted facts with the intent to make, or in reckless
> disregard to whether they thereby made, the affidavit misleading, … and
>
> (2) that the affidavit if supplemented by the omitted information would not
> have been sufficient to support a finding of probable cause.

*Reivich*, 793 F.2d at 961 (citing *United States v. Melvin*, 596 F.2d 492, 499 (1st Cir.

1979); *United States v. Strini*, 658 F.2d 593 (8th Cir. 1981); *United States v. Stanert*, 762

F.2d 775, 782 (9th Cir. 1985); *United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980).

In making the assessment, "recklessness may be inferred from the fact of omission of

information from an affidavit … when the material omitted would have been 'clearly

critical' to the finding of probable cause." *Id*. at 961 (citing *Martin*, 615 F.2d at 329). But

other circumstances have also supported a finding of recklessness. *See e.g. United States

v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993)(stating that officers act with reckless

disregard if they knowingly withhold facts that are "highly relevant," e.g. the drug dog

failed to alert on the package).

      There are three similar search warrants with significant omissions in the case at

hand: (1) for the home of Mr. Hari's parents, 1** North 1900E Rd., Paxton, Illinois on

March 13, 2018, (2) for Mr. Hari's business office, 1** S. Main Rd., Clarence, Illinois,

and (3) for Mr. Hari's home, 2** West First Street North, Clarence, Illinois. These warrants and supporting affidavits comprise of Exhibit A, B, and C to this Memorandum.[1]

At the beginning of each search warrant affidavit, the Affiant, Detective Sergeant Barbara Robbins of University of Illinois Police Department (hereinafter Affiant), establishes her credentials and a description of the property to be searched. The Affiant next explains that a crime was committed in Bloomington, Minnesota: an explosive device was thrown into the window of the Dar Al Farooq Islamic Center (DAF) and it exploded. The remainder of the affidavits attempt to establish probable cause connecting Michael Hari to the crime and why each of the locations to be searched might have evidence of the bombing.

Unfortunately, the affidavits fail to include some of the exculpatory details of the investigation thus far (as of the date of the affidavits) and fail to include Confidential Source One's (hereinafter CS1) lengthy antagonistic relationship with Mr. Hari and his motives for fabrication. These facts were intentionally omitted with the intent to make, or in reckless disregard of whether they made, the affidavits misleading and a *Franks* hearing is warranted.

---

[1] **Exhibit A**: the home of Mr. Hari's parents, 1** North 1900E Rd., Paxton, Illinois (March 13, 2018); **Exhibit B**: Mr. Hari's business office, 1** S. Main Rd., Clarence, Illinois, and; **Exhibit C**: Mr. Hari's home, 2** West First Street North, Clarence, Illinois.

## II.      Omissions of Exculpatory Investigative Details

### A. The Eyewitness[2]

On August 5, 2017, law enforcement spoke to individuals present at the Dar Al Farooq Islamic Center (hereinafter DAF) when an explosive device was thrown in one of the mosque's windows. The affidavit for the above-mentioned search warrants cite an eyewitness, who heard the noise of glass breaking and "observed a man run from the exterior of DAF to a dark-colored truck" that departed the parking lot at a high rate of speed. *See* Exhibit A, B, C, ¶ 3. This statement, in the affidavits, is offered to corroborate information found later in the affidavits that Mr. Hari rented a black Nissan Frontier crew cab from July 27, 2017 – August 6, 2017. Exhibit A, B, C, ¶ 10. Or to bolster one informant who claimed that he, Mr. Hari and Mr. Morris drove to Minnesota in a charcoal gray Nissan Frontier to commit the DAF bombing. Exhibit A, B, C, ¶ 28.

Unfortunately, the Affiant failed to include the eyewitness description of a "full-sized dark, possibly black or dark blue truck," despite the fact that this description of the getaway car was included in two earlier search warrants when the target of the investigation was another man from Minnesota.[3] The earlier search warrants also noted surveillance video from multiple locations in the area where "a dark-colored, full-sized

---

[2] *See attached* **Exhibit D**: FBI 302 Report, B. Kane, R. Westby, August 5, 2017 Interview of Jama.

[3] *See* **Exhibit E**: *In the Matter of the Search of: Cellular Telephone Call Numbers 9\*\*-\*\*\*-\*\*\*6 and 9\*\*-\*\*\*-\*\*\*1*, 17-MJ-619 (HB), August 6, 2017 (mentioning a "full-sized truck" seven times to obtain location data); see also **Exhibit F**: *In the Matter of the Search of Information Regarding Accounts Associated With Certain Location and Date Information, Maintained on Computer Servers Controlled by Google, Inc.*, 17-MJ-619 (FLN), August 7, 2017 (mentioning a "full-sized truck" seven times to obtain Google location information).

truck" is seen driving through the streets near the DAF mosque around the time of the bombing.[4] This is significant, because a Nissan Frontier, like the one rented by Mr. Hari, is not a full-sized truck. Thus, it appears that a full description of the suspect vehicle was omitted in order to bolster probable cause to search Mr. Hari's home, office, and parents' residence when the man from Minnesota was no longer a suspect.

Similarly, the only eyewitness to the DAF bombing could not identify the race of the man who ran to the truck was or if he was the driver or passenger. And there is no mention regarding the single suspect being with others. This information would have been useful to the reviewing magistrate, because it contradicts the allegations made by Mr. McWhorter in the affidavits. *See* Exhibit A, B, C, ¶ 28. The only eyewitness to the bombing mentions one man of an unknown race in a full-sized, dark-colored pickup truck, not three Caucasian men in a mid-sized or smaller pick-up truck.

### B. The Video

Similarly, in the search warrants at issue, the Affiant states, "FBI Minneapolis collected video from DAF, which captured the exterior parking lot. Shortly before the explosion, a dark truck is seen departing the parking lot." Exhibit A, B, C, ¶ 3. But this information is not accurate. No video was collected from the DAF parking lot.

According to the affidavits submitted to a federal court earlier in the investigation, when the Minnesota man was the lead suspect,

> Law enforcement was able to obtain video surveillance footage from local businesses. The time stamps on these videos vary slightly, however, all the videos show a few minutes after the explosion, a dark-colored, *full-sized*

---

[4] *See* Exhibit E, ¶ 14; Exhibit F, ¶ 6.

truck driving through the intersection of Portland Avenue and American Boulevard, the intersection immediately northwest of DAFIC.[5] Law enforcement then obtained further video surveillance, showing the truck as it continued traveling. A *full-sized*, dark truck, similar in appearance to the truck seen near DAFIC's parking lot[6], was seen on video traveling over the Interstate 494 overpass near Portland Avenue and then entering I-494 from Portland Avenue, traveling west. A similar-appearing truck then was seen on video exiting 35W South onto the 82nd Avenue South exit ramp. The timing of the truck's appearance on these later videos coincides with the time it would take to travel from DAFIC to the point of observation. The conclusion that the truck seen in all of the videos is the same truck, over and above the similar appearance of the truck in all of the video footage, is also buttressed by the fact that the events recorded on the videos took place very early on a Saturday morning, when there was almost no traffic on the roads. In reviewing video footage of the 82nd Avenue South exit ramp from Interstate 35W, for example, law enforcement reviewed 40 minutes' worth of video footage, and in all that footage saw only one other vehicle (besides the dark, *full-sized* truck) use that exit ramp.

*See* Exhibit E, ¶ 6; Exhibit F, ¶ 14 (emphasis added). Thus, it appears that when law enforcement wanted to obtain the cellular telephone GPS coordinates of the Minnesota suspect, law enforcement emphasized the similar-appearing truck, a dark, *full-sized* truck, with that of the truck belonging to the Minnesota suspect. But when the Affiant submitted search warrant affidavits to search Mr. Hari's property, these contradicting details were omitted.

The omissions regarding the video footage, like the omissions regarding the eyewitness's description of the suspect and truck, were intentional. Their purpose was to make the signing magistrate believe that there was more evidence tying Mr. Hari to the

---

[5] The two earlier search warrant refer to the DAF as the Dar al Farooq Islamic Center and therefore use the acronym DAFIC.

[6] This statement refers to the eyewitness's account of what he saw leaving the mosque parking lot.

crime than what actually existed. The omissions created an inference that the truck rented by Mr. Hari was seen by an eyewitness to the crime and on video surveillance footage at the DAF mosque. However, the evidence, known by the Affiant, distinguished Mr. Hari's rental truck from the truck seen by the eyewitness and in the video surveillance footage. For these reasons, a *Franks* hearing is warranted.

### III.   Omissions Regarding the History Between the Informant and Suspect

"When an affidavit is based in substantial part on information from an informant, the informant's reliability, veracity, and basis of knowledge are relevant considerations-but not independent, essential elements-in finding probable cause." *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir. 1986)(citing *Illinois v. Gates*, 462 U.S. 213, 230 (1983). "The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable." *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993) (citing *Draper v. United States*, 358 U.S. 307, 313 (1959).

While the Eighth Circuit has "repeatedly rejected any blanket conclusion that an informant's drug use, pending charges, or cooperation is so suspect that it necessarily vitiates probable cause" the omission of other information that goes to an informant's reliability, veracity, and basis of knowledge  is "highly relevant" to the probable cause determination. *United States v. Ketzeback,* 358 F.3d 987, 991 (8th Cir. 2004) (referencing *United States v. Allen,* 297 F.3d 790, 795-96 (8th Cir. 2002); *United States v. Tyler,* 238 F.3d 1036, 1038-39 (8th Cir. 2001); *United States v. Gladney,* 48 F.3d 309, 315 (8th Cir.1995); *United States v. Wold,* 979 F.2d 632, 634-35 (8th Cir.1995); *United States v. Flagg,* 919 F.2d 499, 501 (8th Cir.1992) (per curiam).

In the case at hand, the Affiant's omissions were reckless at best. CS1 is Michael Hari's estranged brother, J.H., and the two men have had a well-documented antagonistic past. The Affiant was well aware of their history and J.H.'s motive to lie, but omitted these facts, relevant to J.H.'s credibility, from the affidavits. This is particularly troublesome because CS1 provided information and ten photographs included in the search warrant affidavits when his reliability and veracity would have otherwise been in doubt.

### A. Prior Accusations Against One Another

In two January 22, 2018 FBI Reports, seven weeks prior to drafting the search warrant affidavits, the Affiant explained she searched for any law enforcement contacts Michael Hari or his brother, J.H., had in the past.[7] In doing so, the Affiant came upon a Rantoul Police report from December 13, 2016 regarding a call-in bomb threat at Rural King, a business in Rantoul, Illinois.[8] The reports noted that J.H. (CS1) called local law enforcement and told them his brother, Michael Hari, is a felon in possession of numerous firearms and he thought calling in a bomb threat is something he (Michael Hari) would do.[9] He also made other irrelevant accusations against Mr. Hari. And Mr. Hari was never questioned, investigated nor charged with anything in Rantoul.

In another FBI report from January 22, 2018, the Affiant noted that Michael Hari's name was ran by the ATF Fairview Heights Office in St. Louis, Missouri on December

---

[7] FBI Report, Case ID# 266S-SI-2476026, B. Robbins, January 22, 2018. (BATES 10108, 10145).
[8] FBI Report, Case ID# 266S-SI-2476026, B. Robbins, January 22, 2018. (BATES 10151).
[9] *Id.*

29, 2016.[10] When she called the office, she spoke to an agent who advised, "a complaint came in by a family member," but was transferred to the Springfield Division of the ATF.[11]  And the Affiant contacted the Springfield office.

The same FBI Report discloses that the Affiant learned of another incident on March 7, 2016 at the Department of Veterans Affairs Medical Center wherein J.H. (CS1) called the police because Michael Hari was trying to get information on him through legal paperwork.[12]  Regardless of the reasoning or the truth, the incident is another example of the antagonistic relationship between the two men and another instance where CS1 called police trying to incriminate Michael Hari.

**B.  The Emergency Order For Protection Filed Against J.H.**

In a January 2018 FBI report, the Affiant noted, "Following the police report on the [Rantoul] bomb threat Michael Hari, Jr. got an order of protection on [J.H.] for the time period of 02/22/2016 – 03/14/2016."[13] But even this misstates the timing of events.

Well before J.H. called the Rantoul Police Department to implicate Michael Hari in the call-in bomb threat (12/13/2016) and before the ATF tip from a "family member" (12/29/2016) and before the incident with the Department of Veterans Affairs (03/07/2016), Michael Hari filed an Emergency Petition for Order of Protection (hereinafter EOFP) against J.H. on February 22, 2016. *See* Exhibit G.

---

[10] FBI Report, Case ID# 266S-SI-2476026, B. Robbins, January 22, 2018. (BATES 9952).
[11] *Id.*
[12] *Id.*
[13] FBI Report, Case ID# 266S-SI-2476026, B. Robbins, January 22, 2018. (BATES 10145-10146).

In his Petition, Mr. Hari alleged that J.H. entered his home and property at 2** W. 1st Street North, Clarence, IL a number of times between January 14, 2016 and January 23, 2016 without Mr. Hari's permission. *Id*. at p. 3. Mr. Hari claimed that when he called his brother to ask him, his brother admitted to trespassing but denied stealing his trail cameras. Mr. Hari notes that he called the Ford County Sheriff's Office to report the theft of his trail cameras and J.H.'s admission to trespassing and the police thereafter collected evidence. *Id*. Mr. Hari alleged that after filing the report, the trail cameras reappeared on a tree on January 23, 2016. *Id*. When the two men met face-to-face at their parents' home, an argument ensued and Michael Hari felt physically threatened. *Id*. at p. 4. He knew his brother regularly carried a firearm and was aware of past incidents where J.H. shot at other individuals following an argument and Mr. Hari wished to avoid harm. *Id*.

In the "Miscellaneous Remedies" portion of the EOFP Petition, Michael Hari asked, "That Respondent be further ordered and enjoined as follows: Respondent is enjoined from making any harassing complaints against Petitioner." *Id*. at p. 11. The EOFP was granted and served upon J.H. the same day. *Id*. at pp. 12, 21.

Thus, it is clear from the number of FBI reports authored by the Affiant, that she was working very closely with J.H. (CS1) and Ford County Sheriff Mark Doran during her investigation of Michael Hari from January – March 2018 and was therefore aware of all of the incidents wherein J.H. called different agencies trying to implicate his brother in wrongdoing and the EOFP filed by Mr. Hari to stop his brother from harassing him. Thus, it is troubling that the Affiant did not disclose any of this information in her Affidavits but rather explained, "CS1's motivation for cooperation is that he/she does not

want anyone to get hurt. The FBI has paid CS1 approximately $1,000 to date for information provided."[14]

These omissions – if added to the Affidavit – would have called CS1's credibility and the ten photos he took into serious question. And a *Franks* hearing must be held to ferret out the reasons for the exclusions and any other omissions and misstatements in the Affidavits.

### IV.     The Omitted Information Affected the Finding of Probable Cause

Probable cause is "a fluid concept turning on the assessment of probabilities in particular factual concepts" and as such is "not readily, or even usefully, reduced to a neat set of rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983); *see also Ornealas v. United States*, 517 U.S. 690, 697 (1996). To determine whether probable cause exists to support a search warrant, we must look at the "totality of the circumstances." *Id.*

Here, in order to assess probable cause, the Court must:

1) correct the misstated information regarding the eyewitness' account,

2) correct the description of the vehicle seen at the DAF mosque and the description of the vehicle found in the video footage around the time of the bombing, and

3) add the omitted information undercutting the credibility of CS1 and the ten photographs he took - or – strike all information provided by CS1 because he was an unreliable, tainted source from the beginning.

---

[14] Exhibit A, p. 4; Exhibit B, p. 4;

After doing so, the affidavits should be reviewed anew to determine if probable cause existed to believe that evidence of criminal activity would be found in each of the specific places to be searched.

The remaining probable cause statement consists of information from CS2, Michael McWhorter (a co-defendant), EJ Mack, and Mr. McWhorter's brother.

(1) CS2 implicates Mr. Hari, Joseph Morris, and Michael McWhorter in the DAF bombing as well as an attempted bombing at the Women's Health Practice in Champaign, Illinois and alleges that there are illegal firearms, M4s, jammers, and tannerite inside a safe in Mr. Hari's office. *See* Exhibit A, ¶¶ 8-9. During a recorded conversation, however, Mr. Hari allegedly said, "we moved that stuff already … there's nothing illegal in our vault." *Id*. at ¶ 17.

(2) Michael McWhorter told law enforcement that Michael Hari's guns had been stored in a vault at Hari's office, but were later moved to his brother's house in a camouflage bag. *Id*. at ¶ 26. He admitted to his participation in the attempted bombing of the Women's Health Practice, the bombing of the Dar Al Farooq Islamic Center, a home invasion, and the planting of materials at the J.O. residence. *Id*. at ¶¶ 27-30.

(3) EJ Mack told law he participated in a home invasion and a Wal-Mart robbery with Mr. Hari and others.

(4) Michael McWhorter's brother reported that Mr. Hari and Mr. Morris had arrived at his residence a few days before February 27, 2018 and dropped off a camouflage bag of shotguns and assault rifles. *See* Exhibit A, ¶¶ 18-19. He had

seen the firearms before, at the office, where Mr. Hari and Mr. Morris were
cleaning them. *Id*. at ¶ 22. He explained that Mr. Hari didn't want to be in
possession of the guns when law enforcement came to talk to him.

It is clear, from the other paragraphs in the Affidavits that any firearms once in the vault
in Mr. Hari's office were in law enforcement's possession at the time the search warrants
were sought. What is not clear, is what law enforcement was hoping to find in (1) the
home of Mr. Hari's parents, 1** North 1900E Rd., Paxton, Illinois on March 13, 2018,
(2) Mr. Hari's business office, 1** S. Main Rd., Clarence, Illinois, or (3) Mr. Hari's
home, 2** West First Street North, Clarence, Illinois.

Once the omitted information is added and the misstated information is corrected,
the search warrant affidavits lack probable cause to search Mr. Hari's parents' home, his
office and his home. There is no nexus between the information provided by CS2, Mr.
McWhorter, EJ Mack, or Mr. McWhorter's brother and the places to be searched. None
of the informants or cooperators talk about the addresses to be searched or indicate what,
if any, information or evidence will be found at any of the addresses. This is especially
true of the home of Mr. Hari's parents – which is searched primarily because of the
information and pictures provided by J.H., CS1.

This argument however is better left for briefing following a *Franks* hearing to
determine if the omissions or misstatements should be included in the probable cause
analysis or if all of the information from CS1 should be excluded.

## V.        The Later Search Warrants Omit Learned Information

Pursuant to one of the warrants issued, the home of Mr. Hari's parents was searched on March 13, 2018. Nevertheless, law enforcement failed to find the items photographed by J.H. (CS1) and included in the search warrant affidavit. *See* Exhibit A, ¶ 6. Still, this same information and the same ten photographs were used in later search warrants as though the information were still reliable. *See e.g.* Exhibit C. Thus, counsel reserves the right to challenge the search of his business office and the second search his parents' home as the Affiant failed to disclose that the previous items sought – were not found where J.H. reported them to be.

In fact, the items photographed by J.H. were not recovered until November 14, 2018, over eight months later, when "CHS S-00086648 called and requested the Sheriff's Department to come and remove the items that were discovered on CHS' property."[15] The questionable and sudden discovery of these items eight months later further undercuts the reliability of CS1 and his photographs.

## VI.     *Leon* and the Good Faith Exception

The government may argue that the search warrants are saved by the good faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984). However, this argument must fail. *Leon* does not excuse *Franks* violations. *See, e.g.*, *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993)(citing *Leon*, 468 U.S. at 914 & n. 12, 923). As the *Leon* Court held, "[s]uppression . . . remains an appropriate remedy if the

---

[15] FBI Report, Case ID# 266S-SI-2476026, Joel C. Smith, November 15, 2018. (BATES 19862).

magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Leon*, 468 U.S. at 923.

## VII.   Conclusion

Based on the above-stated arguments, Mr. Hari makes the necessary showing pursuant to *Franks v. Delaware* and respectfully requests that the Court schedule a *Franks* hearing after the parties have had an opportunity to be heard at the motions hearing currently scheduled for August 8, 2019.

Dated:  July 18, 2019                           Respectfully submitted,

*s/ Shannon Elkins*
_____
SHANNON ELKINS
Attorney ID No. 332161
Attorney for Defendant
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415


*s/ Reynaldo A. Aligada, Jr.*
_____
REYNALDO A. ALIGADA, Jr.
Attorney ID No. 319776
Attorney for Defendant
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415