US v Michael Hari
CR 18-150(1) (DWF/HB)

# Exhibit E

JD:hcs
AO 106 (Rev. 04/10) Application for a Search Warrant                                         2017R00341

# UNITED STATES DISTRICT COURT
for the
District of Minnesota

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: CELLULAR TELEPHONE CALL NUMBERS 952-▇▇▇▇6 AND 952-▇▇▇▇1 | **FILED UNDER SEAL PURSUANT TO ORDER**<br><br>Case No. 15-MJ-619 HB |

## APPLICATION FOR A SEARCH WARRANT

I, Harry Samit, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**See Attachment A**

located in the State and District of Minnesota, there is now concealed:

**See Attachment B**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- X   evidence of a crime;
- X   contraband, fruits of crime, or other items illegally possessed;
- X   property designed for use, intended for use, or used in committing a crime;
- ___ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 26 United States Code, Section 5861(i) | Possession of an Unregistered Destructive Device |
| Title 26 United States Code, Section 5861(j) | Possession of an Unregistered Destructive Device |
| Title 26 United States Code, Section 5871 | Possession of an Unregistered Destructive Device |

The application is based on these facts:

**See attached Affidavit**

- X   Continued on the attached sheet.

- X   Delayed notice until September 20, 2017 is requested under 18 U.S.C. § 3103a, the basis of which is set forth in the Affidavit.

*Applicant's Signature*

Sworn to before me and signed in my presence.

Harry Samit, Special Agent
Federal Bureau of Investigation
*Printed Name and Title*

Date: Aug 6, 2017

*Judge's Signature*

City and State: Minneapolis, MN

The Honorable Hildy Bowbeer,
United States Magistrate Judge
*Printed Name and Title*

2017R00341

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CASE NO. 17-MJ-619 HB

| | |
|---|---|
| IN THE MATTER OF THE SEARCH )<br>OF THE CELLULAR TELEPHONE )<br>ASSIGNED CALL NUMBERS )<br>952-▓▓▓6 AND 952-▓▓▓1 )<br>) | **FILED UNDER SEAL PURSUANT<br>TO ORDER** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Harry Samit, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephones assigned call numbers 952-▓▓▓6 and 952-▓▓▓1 (the "Target Cell Phones"), whose service provider is T-Mobile, a wireless telephone service provider headquartered in Parsippany, New Jersey. The Target Cell Phones are described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I am a Special Agent of the Federal Bureau of Investigation (FBI), United States Department of Justice, and have been since 1999. My entire career with the FBI, I have been assigned to the investigation of terrorism cases. I have been extensively trained by the FBI in terrorism investigations, and have also had extensive experience in using different investigative techniques on terrorism cases.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that a violation of Title 26, United States Code, Sections 5861 and 5871, possession of an unregistered destructive device, was committed on or about 5:05 a.m. on Saturday, August 5, 2017, at the Dar al-Farooq Islamic Center in Bloomington, in the State and District of Minnesota, by T█████ █████ M█████. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

5. On Saturday, August 5, 2017, at approximately 5:05 in the morning, an explosion occurred at Dar Al Farooq Islamic Center (hereinafter "DAFIC"), located at 8201 Park Avenue South, Bloomington, Minnesota 55420. According to an eye witness, the sound of a window breaking was followed by a man running away from the exterior of DAFIC. The witness said that the man ran to a full-sized, dark-colored truck, and then drove out of DAFIC's parking lot at high speed. The Federal Bureau of Investigation (FBI) and the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) have determined that the explosion was caused by an improvised explosive device, or "IED."

00000410

The IED started a fire in the DAFIQ imam's office; the building's fire suppression system activated promptly and put the fire out.

6. Law enforcement was able to obtain video surveillance footage from local businesses. The time stamps on these videos vary slightly, however, all the videos show, a few minutes after the explosion, a dark-colored, full-sized truck driving through the intersection of Portland Avenue and American Boulevard, the intersection immediately northwest of DAFIC. Law enforcement then obtained further video surveillance, showing the truck as it continued traveling. A full-sized, dark truck, similar in appearance to the truck seen near DAFIC's parking lot, was seen on video traveling over the Interstate 494 overpass near Portland Avenue and then entering I-494 from Portland Avenue, traveling west. A similar-appearing truck then was seen on video exiting 35W South onto the 82nd Avenue South exit ramp. The timing of the truck's appearance on these later videos coincides with the time it would take to travel from DAFIC to the point of observation. The conclusion that the truck seen in all of the videos is the same truck, over and above the similar appearance of the truck in all of the video footage, is also buttressed by the fact that the events recorded on the videos took place very early on a Saturday morning, when there was almost no traffic on the roads. In reviewing video footage of the 82nd Avenue South exit ramp from Interstate 35W, for example, law enforcement reviewed 40 minutes' worth of video footage, and in all that footage saw only one other vehicle (besides the dark, full-sized truck) use that exit ramp.

7. Numerous federal and local law enforcement officers responded to DAFIQ to investigate the explosion. At approximately noon, an FBI Task Force Officer (a non-

3

CASE 0:18-cr-00150-DWF-HB   Document 97-5   Filed 07/18/19   Page 6 of 17

FBI law enforcement officer who is assigned to work with the FBI on, in this case, the Joint Terrorism Task Force) saw a Caucasian male sitting in a full-sized, black truck parked on Park Avenue South, which is the street immediately west of DAFIC. The Task Force Officer saw that the man in the full-sized, black truck was video-taping the Bloomington Police Department Bomb Squad vehicle and was also video-taping a news conference by religious leaders that was then taking place. The black, full-sized truck in which the man was sitting appeared similar in appearance to the truck that was in the video footage taken earlier in the morning. When the Task Force Officer approached the vehicle and asked the man what he was doing, the man laughed and said it wasn't every day you see "your" mosque being bombed. The man confirmed he attended the mosque.

8. The Task Force Officer asked the Bloomington Police Department to run the truck's license plate, Minnesota 1██ ██A. The Bloomington officer who took the request said that an ATF Agent had asked him to run the same plate approximately 30 minutes earlier. The earlier request was based on the dark, full-sized truck's being driven slowly back and forth along Park Avenue South.

9. The license plate on the truck showed the registered owner to be T█████ ██M██████, date of birth ██████████, who lives at ██████████, Bloomington, Minnesota. The truck seen on different videos shortly after five a.m. on Saturday, August 5, 2017 was driving a route from DAFIC to ██████████, Bloomington, Minnesota, although video coverage all the way to ██████████ was not available. The timing of the truck's appearance on the different videos was consistent

4

00000412

with the time it would take to drive from DAFIC to ▇▇▇▇▇▇, Bloomington, Minnesota.

10. Your affiant is aware from his training and experience that it is a known phenomenon that arsonists, in particular, often return to the scene of fires they have set. This phenomenon occurs often enough to be part of law enforcement training in arson investigation.

11. ▇▇▇▇▇▇ Omar, Executive Director of DAFIC, was later shown a photograph of T▇▇▇ ▇▇▇ M▇▇▇▇, the registered owner of Minnesota 1▇▇ ▇▇A. Omar advised he had seen the man at DAFIC in the past a few times, expressing an interest in learning Islam.

12. On August 5, 2017, an open source database check identified three telephone numbers for T▇▇▇ ▇▇▇ M▇▇▇▇, two of which are the following T-Mobile telephone numbers: 952-▇▇▇▇6 and 952-▇▇▇▇1.

13. Because T▇▇▇ ▇▇▇ M▇▇▇▇ has been identified as a person of interest in the DAFIC explosion, the FBI has assigned surveillance teams to watch him. The surveillance teams will note if M▇▇▇▇ disposes of evidence; meets with possible confederates; returns to the scene of the explosion again; and other matters that are of importance in either showing that M▇▇▇▇ committed this crime, or rules him out as a perpetrator of the DAFIC explosion. It is difficult for naked-eye surveillance to remain on a person for any length of time without the subject of surveillance realizing that he is being watched. In order to guard against this, surveillance teams can pull further away from the subject, but in doing so, they risk not being able to make important observations.

00000413

If they close in to see well, however, the subject will likely notice the surveillance. Having location information from the subject's telephone makes surveillance materially safer and more likely to succeed, because it allows the surveillance team to stay a safe distance from the subject. If, for example the surveillance team has seen the subject go into a house, and it is dark outside, the surveillance team may not be able, from a distance, to see if a person leaving the house is the subject or someone else. However, if the phone on which location services have been enabled has left the house, then the surveillance team knows that the person who just left was, indeed, the subject.

14.     In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not

6

necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

15. Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the Target Cell Phones, including by initiating a signal to determine the location of the Target Cell Phones on T-Mobile's network or with such other reference points as may be reasonably available.

16. Based on my training and experience, I know that T-Mobile can also collect cell-site data about the Target Cell Phones.

## AUTHORIZATION REQUEST

17. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

18. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phones would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the

00000415

extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

19. I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Target Cell Phones on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

00000416

I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phones outside of daytime hours.

Respectfully submitted,

_____
HARRY SAMIT
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on August ___6___, 2017

_____
THE HONORABLE HILDY BOWBEER
UNITED STATES MAGISTRATE JUDGE

9

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call numbers 952-▆▆▆▆-6 and 952-▆▆▆▆-1 (the "Target Cell Phones"), whose wireless service provider is T-Mobile, a company headquartered in Parsippany, New Jersey.

2. Information about the location of the Target Cell Phones that is within the possession, custody, or control of T-Mobile including information about the location of the cellular telephones if they are subsequently assigned a different call number

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the Target Cell Phones described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phones" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Target Cell Phones on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

JD:hcs
AO 93 (Rev. 12/09) Search and Seizure Warrant                                                                                           2017R00341

# UNITED STATES DISTRICT COURT
### for the
### District of Minnesota

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE CALL NUMBERS 952▇▇▇6 AND 952▇▇▇1 | **FILED UNDER SEAL PURSUANT TO ORDER** <br> Case No. 17-MJ-619 HB |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the State and District of Minnesota:

**See Attachment A**

The person or property to be searched, described above, is believed to conceal:

**See Attachment B**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before    August 20, 2017
                                                                                                            *(not to exceed 14 days)*

_X_ in the daytime 6:00 a.m. to 10 p.m.        _ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken. The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge Hildy Bowbeer.

_X_     I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

              _X_     until, the facts justifying, the later specific date of September 20, 2017

Date and Time issued: Aug 2, 2017 6:09 pm                           /s/ Hildy Bowbeer
                                                                                                *Judge's Signature*

City and State: Minneapolis, MN                                The Honorable Hildy Bowbeer,
                                                                                    United States Magistrate Judge
                                                                                    *Printed Name and Title*

00000420

AO 93 (Rev. 12/09) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

### Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

Subscribed, sworn to, and returned before this date.

_____
*Printed Name and Title*

_____     _____
U.S. Judge or Magistrate Judge              Date

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call numbers 952▮▮▮▮6 and 952▮▮▮▮1 (the "Target Cell Phones"), whose wireless service provider is T-Mobile, a company headquartered in Parsippany, New Jersey.

2. Information about the location of the Target Cell Phones that is within the possession, custody, or control of T-Mobile including information about the location of the cellular telephones if they are subsequently assigned a different call number

00000422

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the Target Cell Phones described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phones" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Target Cell Phones on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).