UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 18-150(1) (DWF/HB) |
| | ) | |
| v.            Plaintiff, | ) | **DEFENDANT'S REPLY** |
| | ) | **MEMORANDUM IN SUPPORT** |
| MICHAEL HARI, | ) | **OF MOTION TO DISMISS** |
| | ) | |
| Defendant. | ) | |

## I.    Introduction

Defendant Michael Hari submits this reply memorandum in support of his motion to dismiss, (ECF 94), and in response to the government's opposition memorandum, (ECF 115). To recap the substance of the original motion, Mr. Hari presented the following theses:

*(a).    Commerce Clause—Ultra Vires:* The principal statute at issue here—18 U.S.C. § 247(a)—is a facially invalid *ultra vires* law, as its enactment exceeded the authority conferred upon the federal legislature under the Commerce Clause of the United States Constitution.

*(b).    Inadequate Certification:* Under § 247 the government is required to make a pre-prosecution certification demonstrating that a federal (as opposed to state or local) prosecution is especially "in the public interest and necessary to secure substantial justice." § 247(e). But the certification here fails to meet this statutory and jurisdictional standard.

*(c).    Due Process/Void for Vagueness:* The indictment charges the compound offense of carrying and using a destructive device in relation to a "crime of violence." 18 U.S.C. § 924(c). The government avers the § 924(c) predicate "crime[s] of violence" are the aforementioned § 247(a) counts. But a § 247(a) violation can only qualify under the § 924(c) "residual clause," which the Supreme Court has recently deemed unconstitutional under the Due Process Clause void-for-vagueness doctrine. Accordingly, the § 924(c) count is legally infirm.

1

(d).   *Double Jeopardy/Multiplicity:* The indictment charges two violations of § 247(a) (different subdivisions, § 247(a)(1) & § 247(a)(2)) based upon the very same set of alleged acts. But the elements of the charged statutes are identical or lesser-included subsets in the essentials. Hence, the indictment effectively charges the same crime in two separate counts—a situation known as "multiplicity" which violates the Double Jeopardy Clause of the United States Constitution.

(ECF 94 at 1).

For its opposition, (ECF 115), the government disputes each of these arguments to varying degrees. In this reply, Mr. Hari will re-order and re-frame the above topics based upon the government's opposition arguments, as follows—

A.   *Due Process/Void for Vagueness:* Using the categorical approach, does § 247(a) qualify as a valid predicate offense under the § 924(c)(3)(A) force clause?

B.   *Commerce Clause—Ultra Vires:* Using the *Lopez-Morrison* test, was § 247(a) enacted in excess of enactment authority under the "substantial affects" prong of the Commerce Clause?

C.   *Inadequate Certification:* Does the structure and history of § 247(e) indicate substantive judicial review of the federal-jurisdiction certification?

D.   *Double Jeopardy/Multiplicity:* Are the elements of § 247(a)(1) and § 247(a)(2) subsets of one another?

## II.     Argument in reply

**A.     *Due Process/Void for Vagueness:* Using the categorical approach, § 247(a) fails to qualify as a valid predicate offense under the § 924(c)(3)(A) force clause.**

Count 4 of the Indictment alleges a violation of 18 U.S.C. § 924(c). (ECF 14). This statute seeks to penalize anyone who, "during and in relation to any ***crime of violence***," simultaneously "uses or carries a firearm."[1] § 924(c)(1)(A) (emphasis added). To summarize Mr. Hari's argument regarding the definition of "crime of violence":

(i).     the definition found in § 924(c)(3) includes both a "force clause" prong and a "residual clause" prong;

(ii).    a purely legal "categorical approach" determines whether the charged predicate offense falls within one of the § 924(c)(3) definitional prongs; and

(iii).   under this test, § 247(a) cannot fit under the § 924(c) force clause definition of crime of violence which necessarily means that it must fall under the now-unconstitutional residual clause.

(ECF 94 at 22-32).

For its part, the government seems to agree with all of this, except item (iii) above, where Mr. Hari has demonstrated that the charged predicate offenses—*i.e.,* § 247(a)(1) &

---

[1] As explained in Mr. Hari's principal memorandum, it is more precise to say the government charges Mr. Hari with carrying and use of "destructive device" allegedly in violation of § 924(c)(1)(A) & (B)(ii). (ECF 94 at 22 n.6). But the distinction makes no difference with respect to the question at issue here, *i.e.,* whether the charged § 274(a) predicate qualifies as a "crime of violence" within the meaning of § 924(c).

(a)(2), or collectively § 247(a)—fail to categorically qualify under the § 924(c)(3)(A) force

clause. That is to say, the government appears to agree with the defense that—

- The question of whether the proffered § 247(a) predicate meets the § 924(c)(3) "crime of violence" definition requires use of the categorical approach. (ECF 115 at 22-23).

- After *United States v. Davis,* 139 S. Ct. 2319 (2019), the residual clause prong of the "crime of violence" definition, § 924(c)(3)(B), is unconstitutional and thus cannot be used to qualify the § 247(a) predicate. (ECF 115 at 22 n.7).

- Thus, if the proffered § 247(a) offense is to qualify as "crime of violence," it must do so under the § 924(c)(3)(A) force clause by way of the aforementioned categorical approach. (*See* ECF 115 at 22-29).

Where the government parts company with the defense is in Mr. Hari's argument

that the § 247(a) predicate cannot qualify under the § 924(c)(3)(A) force clause, because §

247(a) proscribes damaging the actor's own property, as opposed to "physical force against

the person or property of another" as required by the § 924(c)(3)(A) force clause. (ECF 94

at 28-31). This is the point of dispute that will be addressed in this reply.

### 1. *Damage to Property "of Another"*

The first step of predicate-categorical analysis is to closely examine the parameters

of the statutory category at issue. In this case, the government claims that § 247(a) qualifies

as a "crime of violence" under the § 924(c)(3)(A) force clause, which includes any felony

offense which:

has as an element the use, attempted use, or threatened use of physical force against the person or property ***of another***.

§ 924(c)(3)(A) (emphasis added).

Mr. Hari pointed out the "of another" language is crucial to the analysis, in the sense that any proposed predicate offense which permits a conviction owing to physical force against the actor's _own_ property—as opposed to the property "of another"—must be disqualified under the § 924(c)(3)(A) force clause. (ECF 94 at 28-29). The government does not appear to dispute this point, and in fact it would be hard-pressed to do so in light of previously cited authority on the topic. *See, e.g., United States v. Salas,* 889 F.3d 681, 683-84 (10th Cir. 2018) (federal arson statute does not categorically qualify under § 924(c)(3)(A) Force Clause, since statute "does not require, as an element, the use of force against the property 'of another'" as it "may apply to a person who destroys his or her own property"); *United States v. Whaley*, 552 F.3d 904, 907 (8th Cir. 2009) (for ACCA purposes, generic definition of arson offense is "malicious burning of real or personal property *of another*") (emphasis added).

### 2. *Predicate Offense Elements*

The next step of the analysis is to look at the elements of the predicate offense at issue, in this case § 247(a). Or to be more specific, dual alleged predicates of § 247(a)(1) and § 247(a)(2).

The defense laid out the elements of both offenses in its opening memorandum. (ECF 94 at 27). The government suggests that these are divisible statutes and the defense failed to lay out all the elements as charged, *i.e.,* the government claims that it intended to

charge predicate offenses § 247(a)(1) & (d)(3) plus § 247(a)(2) & (d)(3), (ECF 115 at 24), even though the indictment never actually cites 18 U.S.C. § 247(d)(3). (ECF 14).

Putting aside for the moment the propriety of suggesting that the Court should permit a charge when the authorizing statutory provision is not cited in the charging document, § 247(d)(3) provides for an enhanced penalty if "bodily injury results" from the offense action *or* the alleged acts involve the "use, attempted use or threatened use of dangerous weapon, explosives, or fire."

The indictment makes no reference to bodily injury, and the defense is aware of no such theory to be advanced by the government. (ECF 14). The charging document *does* reference alleged "use of a dangerous weapon, explosives, and fire." (ECF 14 at 1 & 2). But if that is the additional element the government refers to, it has nothing whatever to do with the crucial inquiry about whether the proffered § 247(a) predicate requires force against the "of another." Hence, it seems the government's disagreement as to the elements makes no difference with respect to the main issue at hand, *i.e.,* whether § 247(a) proscribes use of force against the actor's own property, as well as against the property "of another."

Therefore, the purported § 247(d)(3) constructive amendment makes no difference to the problem at hand, and the analysis can proceed on the elements of § 247(a) stated in the original memorandum—

| § 247(a)(1) | § 247(a)(2) |
|---|---|
| (1). The defendant intentionally damaged religious property; | (1). The defendant intentionally obstructed a person in the enjoyment of that person's free exercise of religious beliefs. |
| (2). The defendant did so because of the religious character of the property; | (2). The defendant did so intentionally, by force or threat of force, including by threat |

| | of force against religious property as alleged in the indictment. |
|---|---|
| (3). The crime was in or affecting interstate commerce. | (3). The crime was in or affecting interstate commerce. |
| **(ECF 94 at 27)** | |

### 3.    *Juxtaposing Defined Category with Offense Elements*

Last, the categorical approach calls for a comparison of the statutory category at issue (in this case the § 924(c)(3)(A) force clause), with the elements of the criminal statute in question (in this case § 247(a)(1) and § 247(a)(2)). The core of the government's argument is the assertion that § 247(a) cannot possibly proscribe the act of destroying one's own property. But the government's reasoning in support of this claim is unconvincing.

To begin, Mr. Hari first observed that there already exists a analogous federal statute, 18 U.S.C. § 844(i), which seeks to punish anyone who "maliciously damages or destroys . . any building, vehicle, or other real or personal property" by "means of fire or explosive." The elements of this offense are:

(1).    The defendant maliciously damaged or destroyed a particular building, vehicle, or real or personal property.

(2).    The defendant did so by means of fire or explosives.

(3).    At the time of the fire or explosion, the building, vehicle, or property was used in an activity affecting interstate commerce.

*Eighth Circuit Manual of Model Criminal Jury Instructions* § 6.18.844 (Westlaw 2018) (using select language which is bracketed in the original source).

There are many similarities between these § 844(i) elements, and those of § 247(a) above. A § 844(i) violation will lie with a showing the defendant damaged or destroyed

some property, with no restriction as to ownership status of that property (*i.e.,* no exclusion as to situation wherein the actor damages his own property, as opposed to property "of another). Similarly, a § 247(a)(1) violation will lie with a showing that the actor "defaces, damages, or destroys any religious real property," with no restriction as to the ownership status of that property. And a § 247(a)(2) violation will lie with any "force or threat of force" against property—to include but not be limited to "threat of force against religious real property"—again without restriction as to ownership status of the property at issue. The statutory text and elements alone demonstrate that—like § 844(i)—§ 247(a) is not restricted to force against property "of another," and hence falls outside the § 924(c)(3)(A) force clause under the categorical approach.

The government does not suggest that § 844(i) meets the "of another" aspect of the § 924(c)(3)(A) force clause, likely because it is not possible to do so given all the cases in which an actor was successfully convicted for damaging or destroying his own property. *See United States v. Anderson,* 783 F.3d 727, 733-37 & 750 (8th Cir. 2015) (upholding § 844(i) conviction of business owner who arranged to burn down his own restaurant) & *United States v. Salas,* 889 F.3d 681, 683-84 (10th Cir. 2018) (holding § 844(i) does not categorically qualify under § 924(c)(3)(A) force clause, since statute "does not require, as an element, the use of force against the property of another" as it "may apply to a person who destroys his or her own property"). Instead, the government claims that it is inconceivable that § 247(a) could possibly reach a scenario wherein the actor does damage to his own "religious real property . . . because of the religious character of that property." § 247(a)(1). And that it is impossible for § 247(a) to proscribe an actor's obstruction of a "person's free exercise of

religious beliefs" by using force or threats against the actor's own property. But the government's inconceivability thesis must fail.

The government suggests that the § 844(i) analogy is inapt because it reaches only those cases where the actor burns his own property to collect insurance proceeds. (ECF 115 at 28). In this regard, the government's initial premise is incorrect, as § 844(i) has been used to punish actors who destroy their own property for any number of reasons—even entirely non-economic reasons. *See, e.g., United States v. Menzer*, 29 F.3d 1223, 1225 & 1230 & 1233-34 (7th Cir. 1994) (§ 844(i) conviction for burning own residence; government's theory was that defendant committed act to prevent wife and children from reporting actor's sexual abuse). So it is not accurate to say that § 844(i) prosecutions involving the actor's own property are limited to insurance fraud cases. In reality, motives run the gamut. And a § 844(i) conviction will lie regardless of whether the motive is insurance payout, silencing a witness, personal revenge, or what have you.

The government is correct that § 247(a)(1) requires a somewhat more specific motive, *i.e.,* damage to religious real property "because of the religious character of that property." But it then goes on to suggest that that such a scenario could never actually occur in the real world, saying the very idea is "fanciful." (ECF 115 at 28-29). With due respect, in the preceding paragraph there is a case in which a man set ablaze his own home for the purpose of preventing his wife and children from reporting sexual abuse. And in the well-known case of the Branch Davidians discussed in the original memorandum and below, the sect leaders set fire to their own compound. No one could have anticipated these or countless other strange events in human history. How, then, can the government so confidently claim that a religious sect leader would never set fire to his own religious-use property, for religious reasons. The government's

claim of factual impossibility must be entirely discounted, particularly in light of numerous well-known cases of religious sect leaders engaging in destructive acts directed at his own flock.

In any event, the question is not whether some specific and unforeseen event might occur in the future. Rather, for the purposes of the categorical approach, the applicable question is what conduct the elements of an offense *are capable of reaching*. And in light of the § 247(a)(1) statutory language and elements—read in light of the § 844(i) analogous case law— § 247(a)(1) *does* reach a situation wherein the actor damages his own religious real property due to the religious nature of that property.

Moreover, the government did not limit its proffered § 924(c) predicates to § 247(a)(1), but included § 247(a)(2) as well. And as shown earlier, § 247(a)(2) requires no religious-based motivation all. Indeed, the government makes a special point of this in its own papers. (ECF 115 at 31). Rather, as the government points out, a § 247(a)(2) violation requires the proof that the actor "obstructed a person's free exercise of religious beliefs." (ECF 115 at 31). In this regard, the government's dismissal of the demonstrably real-world Branch Davidian example must be questioned. In that case, according to the finder-of-fact, a number of sect leaders set fire to their own compound and did not permit certain sect members to leave, resulting in deaths of the latter. *Andrade v. United States,* 116 F.Supp.2d 778, 784-85 (W.D. Tex. 2000). In that scenario, the actors *did* destroy their own property. And the actors *did* obstruct the religious practices of another, *i.e.,* by killing other sect members via collective-destructive actions. And if one of the alleged fire-setters had been prosecuted under § 247(a)(2), there is little doubt that a federal court would refuse to dismiss the obstruction-of-religious-exercise

charge, likely paired with a § 247(d)(1) penalty charge which is applicable where "death results from acts committed."

In sum, then, the government fails to make a convincing case that § 247(a) *always necessarily* requires that the actor use force directed at the property "of another." Rather, it is apparent that the plain terms of § 247(a) reach situations in which the actor damages or destroys his own property. Hence, § 247(a) fails to categorically qualify as a "crime of violence" under the § 924(c)(3)(A) force clause. And since the government concedes that the § 924(c)(3)(B) residual clause is constitutionally void and unavailable, no valid § 924(c) predicate offense has been alleged. The § 924(c) charge of Count 4 is thus legally infirm, and must be dismissed.

**B.    *Commerce Clause—Ultra Vires:* Using the *Lopez-Morrison* test, § 247(a) was enacted in excess of enactment authority under the "substantial affects" prong of the Commerce Clause.**

In the original memorandum, Mr. Hari argued that the current version of § 247(a) was enacted *ultra vires* in excess of congressional authority under the Commerce Clause. (ECF 94 at 4-19). Mr. Hari made clear that this was a valid-rule/facial challenge to the statute, meaning that the relevant inquiry is the legislative process which generated the statute, and not the facts of the case at hand. Mr. Hari showed that the statute was enacted under authority of the "substantially affects" prong of the Commerce Clause, and the applicable four-factor test that accompanies that invocation shows the statute to exceed congressional enactment authority.

In response, the government makes a number of analytical arguments, some of which address the applicable inquiry but many of which seem to distract from it.

### (1).   Channels & Instrumentalities vs. "Substantially Affects"

The government suggests that the defense wants to focus on the "substantially affects" prong of the Commerce Clause, and ignore the "channels" and "instrumentalities" prongs. (ECF 115 at 6-11). But the original memorandum discusses all of this at some length. (ECF 94 at 7-10). Of particular note, the original version of § 247(a) was limited to the "channels" and "instrumentalities" prong, while eschewing the "substantially affects" prong. (ECF 94 at 7-10). In 1996, Congress enacted the current version of § 247(a), which explicitly invokes the "substantially affects" prongs. (ECF 94 at 7-10). And as the government concedes, the statute permits a conviction when it is shown that the offense is "in or affecting interstate commerce," meaning that that government need not specify or prove which prong is being relied upon. (ECF 115 at 7-9, 23, 31 n.11). In sum, the government itself concedes that Congress enacted § 247(a) to make full use of the "substantially affects" prong, and so it is necessary and appropriate to use the legal test the Supreme Court has supplied in its *Lopez* and *Morrison* decisions to determine whether § 247(a) exceeds the allowable congressional bounds.

### (2).   Prior Decisions

In the original memorandum, Mr. Hari predicted that the government would rely upon out-of-circuit federal court decisions which have rejected varying Commerce Clause challenges to § 247. (ECF 94 at 17-18). And that is precisely what has come to fruition in the government's opposition memorandum. (ECF 115 at 6-9). But as the defense has pointed out previously, in these cases the proponent either failed to make the valid-

rule/facial challenge that Mr. Hari advances here, or the deciding court misapprehended the correct mode of legal analysis. (ECF 94 at 17-18).

For example, in *United States v. Ballinger,* 395 F.3d 1218 (11th Cir. 2005) the Eleventh Circuit considered what was framed as both an as-applied and facial challenge to § 247. But the court correctly observed that the mode of defendant's argument was fact-driven and hypothetical-driven, effectively making only an as-applied challenge. *See id.* at 1124 n.2 & 1227 & n.4. Hence, *Ballinger* is of no help at all to this valid-rule/facial challenge, which focuses on legislative history and not case-specific facts.

The same is true of *United States v. Roof,* 225 F.Supp.3d 438 (D.S.C. 2016), wherein the court entirely failed to conduct a valid-rule/facial legislative inquiry in the vein of *Lopez* and *Morrison,* and instead trained its focus upon some hypothetical fact pattern that *might possibly* meet the substantially affects test, *i.e.,* asking whether "it is *possible* for an attack on a church to be in or affect interstate commerce." *Id.* at 455. This is definitely the wrong way to frame the valid-rule/facial question, as shown by the *Lopez* and *Morrison* decisions.

Thus, the prior out-of-circuit decisions are not helpful at all, and the Court should conduct its own independent analysis as to whether the current version of § 247(a) was enacted within the power bestowed by the "substantial affects" prong of the Commerce Clause. It was not, as the next and final sub-section will show.

### *(3).     The* **Lopez-Morrison** *Test*

Last, the government does make an attempt to contend with the "substantially affects" multi-factor test of valid-rule/facial propriety as articulated by the Supreme Court in *Lopez-Morrison:*

13

(a).    Whether the statute at issue is accompanied by "express congressional finding regarding the effects upon interstate commerce," such that a court of law can evaluate the legislative judgment that the activity in question substantially affects interstate commerce.

(b).    Whether the activity at issue truly constitutes "commerce" or some sort of "economic enterprise," as opposed to non-economic activity.

(c).    Whether the proffered link between proscribed activity and interstate commerce is direct and straightforward, or alternatively whether the proffered nexus is so "attenuated" as to signify an overbroad invocation

(d).    Whether the statute at issue contains an "express jurisdictional element" which will limit the statute's reach to those activities which have "an explicit connection with or effect on interstate commerce."

*Morrison,* 529 U.S. at 610-13. The defense will not repeat its prior discussion of each factor, but instead will respond to the government's claims briefly.

### (a).    Express congressional findings

The government cites a number of snippets from the congressional record suggesting that places of worship have an effect on interstate commerce, and presents them as "express legislative findings" to justify § 247(a). As an initial matter, the recorded comments of individual members of congress are a far cry from "express legislative findings" of the body as a whole, but are rather are merely debate points uttered by individual members. For express legislative findings, the best place to go would be the Public Law enacted by Congress as a whole, and here that document shows no findings linking religious-bias-motivated vandalism to a substantial effect upon interstate commerce. And while on that point, it must be noted that the government cites commentary suggesting that places of worship often have an effect upon interstate commerce generally. Even assuming that is true, that is not the question at issue. Rather, the question is whether

the conduct to be proscribed—*i.e.,* religious-bias-motivated vandalism—has a substantial effect upon interstate commerce. Contrary to the government's presentation, this factor cuts against validity of § 247(a).

### (b). *Bona fide* commercial activity

Tellingly, in its analysis the government skips this factor entirely. Presumably, this is because the government is unable to say anything favorable on the point. As stated elsewhere, the legislative history of § 247(a) shows that Congress was trying to regulate threats, vandalism, and property damage motivated by religious bias. And whatever can be said about these proscribed activities, they certainly are not "economic" in nature. *See, e.g., Morrison,* 529 U.S. at 613 ("Gender-motivated crimes of violence are not, in any sense of the phrase, economic activity") & *Lopez,* 514 U.S. at 561 (firearm possession in school "has nothing to do with commerce or any sort of economic enterprise"). This factor cuts strongly against the statute's validity.

### (c). Regulated-activity/interstate-commerce linkage

In its discussion of this factor, the government repeats the above observation that places of worship oftentimes affect interstate commerce in a general way. That is true so far as it goes. But as already discussed, it has nothing to do with whether the *regulated activity* at issue has a substantial effect upon interstate commerce. And in this case the regulated activity is religious-bias-motivated vandalism. As already shown, such acts are traditionally the exclusive purview of the states, and have no substantial linkage with interstate commerce. Congress did not find otherwise, and the government declines to grapple with the topic at all.

### (d).   Jurisdictional element

The government's argument rises and falls upon the jurisdictional element of §
247(a). And the government has little to say about the matter, other than the fact that the
element exists in this case. As Mr. Hari predicted, the government seems to believe this is
dispositive of the entire question of congressional authority under "substantially affects"
prong. But this is not correct. *See United States v. Ho,* 311 F.3d 589, 600 (5th Cir. 2002)
& *United States v. Rodia,* 194 F.3d 465, 472 (3d Cir. 1999) (collecting cases and holding
that mere presence of jurisdictional element does not insulate statute from judicial scrutiny
under Commerce Clause, particularly in light of *Lopez* language suggesting that a valid
jurisdictional element must ensure an adequate and non-attenuated nexus between
regulated activity and interstate commerce).

As the legislative history of § 247(a) suggests, Congress seemed to view the
jurisdictional element as some sort of panacea, inoculating it from the valid-rule/facial
challenge at issue here. But this goes too far, as such reasoning would permit the federal
government into any area of regulation, so long as a jurisdictional element is tied in. This
would permit the federal government to regulate all spheres of American life, including
traditional state areas like family law and land use. In cases like this, where the
jurisdictional element was added as an attempted constitutional inoculation, the conclusion
must be that § 247(a) was enacted in excess of congressional authority under the Commerce
Clause.

C.   *Inadequate Certification:* **The structure and history of § 247(e) indicate substantive judicial review of the federal-jurisdiction certification is intended and required.**

In his original memorandum, Mr. Hari said the § 247(e) certification was inadequate because it merely parrots the statutory language, and fails to make a substantive showing of a particular federal "public interest" that is "necessary to secure substantial justice." (ECF 94 at 19-21). In response, the government cites *United States v. Juvenile Male J.A.J., 134 F.3d 905 (8th Cir. 1998)* involving analogous § 5032, to claim the bare-bones certification at issue here suffices and the entire matter is "substantively unreviewable." (ECF 115 at 15-21).

But in *Juvenile Male J.A.J.,* the court actually announced some principles to determine whether a given executive-branch decision is subject to judicial review or not. The Eighth Circuit said that in making such a determination, a court should "look to the text and structure of the statute" as well as "any additional factors that may illuminate [the statute's] purpose." 134 F.3d at 907.

Applying these concepts to § 247 at issue here, it becomes apparent that the § 247(e) certification is mean to be reviewable. First, consider the text of § 247:

> ***No prosecution of any offense described in this section shall be undertaken*** by the United States except upon the certification in writing of the Attorney General or his designee that in his judgment a prosecution by the United States ***is in the public interest and necessary to secure substantial justice.***

§ 247(e) (emphases added). Note the statute contains a flat prohibition upon a given prosecution, should the prosecutor fail to make the required certification. The language of

prohibition strongly suggests some enforcement mechanism—and the only enforcement mechanism that presents itself in this context is that of judicial review.

Also note the explicit standards for the mandatory certification, *i.e.,* "in the public interest" and "necessary to secure substantial justice." § 247(e). The legislative history of § 247 shows that these standards were added at the request of the Justice Department itself, in order to "ensure appropriate deference to state or local prosecution in most cases," while limiting federal prosecutions to situations "where state or local officials will not assume jurisdiction or for any reason are unable to secure a conviction." S. Rep. 100-324 at 6 (1988).

So the structure and history of § 247 (including the incorporated views of the Justice Department from the time of enactment), demonstrates that clear standards exist by which the judiciary can and must review a § 247(e) certification. That is to say, at a minimum the government must investigate and certify that state or local officials are unwilling to bring a prosecution, or are otherwise unable to secure a conviction. Hence, the § 247(e) certification is substantively reviewable on at least these minimal criteria. And here, the government has failed to make the substantive certification. The certification requirement has not been met, and § 247(e) provides that in such cases the prosecution must be dismissed.

### D. *Double Jeopardy/Multiplicity:* **Section 247(a)(1) and (a)(2) are subsets of one another.**

In his original memorandum, Mr. Hari pointed out that the standalone § 247(a)(1) count and standalone § 247(a)(2) count are alleged to have been violated by a single and

unified series of acts. And under longstanding Double Jeopardy principles, this situation can be deemed unconstitutionally "multiplicious" and require dismissal of at least one of the charges. At least insofar as the elements of the offenses are identical or subsets of one another. (ECF 94 at 33-35).

The government responds that the elements of § 247(a)(1) and § 247(a)(2) are different from one another, which is of course true. (ECF 115 at 30-31). As noted earlier, the side-by-side elements are:

| § 247(a)(1) | § 247(a)(2) |
|---|---|
| (1). The defendant intentionally damaged religious property. | (1). The defendant intentionally obstructed a person in the enjoyment of that person's free exercise of religious beliefs. |
| (2). The defendant did so because of the religious character of the property. | (2). The defendant did so intentionally, by force or threat of force, including by threat of force against religious property as alleged in the indictment. |
| (3). The crime was in or affecting interstate commerce. | (3). The crime was in or affecting interstate commerce. |

However, Mr. Hari showed that—when viewed functionally—the sets of elements are essentially subsumed within one another, and thus are effectively lesser-included offenses.

Consider Element (1) of § 247(a)(1) and Element (2) of § 247(a)(2):

| § 247(a)(1) | § 247(a)(2) |
|---|---|
| (1). The defendant intentionally damaged religious property | (2). The defendant did so intentionally, by force or threat of force, including by threat of force against religious property as alleged in the indictment. |

Section 247(a)(2) thus requires a generalized showing of force against person or property, whereas § 247(a)(1) requires a more specific use of force against religious real property. The latter is subsumed entirely within the former.

Next, consider Element (2) of § 247(a)(1) and Element (1) of § 247(a)(2):

| § 247(a)(1) | § 247(a)(2) |
|---|---|
| (2). The defendant did so because of the religious character of the property. | (1). The defendant intentionally obstructed a person in the enjoyment of that person's free exercise of religious beliefs. |

Section 247(a)(2) requires any act which obstructs religious exercise—including damage or threats to religious property. And § 247(a)(1) requires more specific damage to religious property due to the religious character of that property—a more specific subset of the generalized obstructive acts of § 247(a)(2).

Thus, § 247(a)(1) is subsumed within § 247(a)(2), and so the same act cannot be deemed a violation of both statutes without running afoul of the Double Jeopardy Clause. One of these charges must be dismissed.

## III. Conclusion

For all these reasons, Counts 1-4 of the indictment are legally infirm and must be dismissed.

Dated:  August 14, 2019                         Respectfully submitted,

                                                *s/ Reynaldo A. Aligada, Jr.*
                                                _____
                                                REYNALDO A. ALIGADA, Jr.
                                                Attorney ID No. 319776

                                                *s/ Shannon Elkins*
                                                _____
                                                SHANNON ELKINS
                                                Attorney ID No. 332161

                                                Attorneys for Defendant
                                                107 U.S. Courthouse
                                                300 South Fourth Street
                                                Minneapolis, MN 55415