# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>v.<br><br>Michael Hari (01),<br><br>                    Defendant. | Case No. 18-cr-0150(01) (DWF/HB)<br><br><br>**REPORT AND<br>RECOMMENDATION** |

Reynaldo A. Aligada, Jr.,[1] and Shannon R. Elkins, Office of the Federal Defender, 300 South Fourth Street, Suite 107, Minneapolis, Minnesota 55415, for Defendant Michael Hari

John Docherty and Julie E. Allyn, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415; and Timothy Visser, Department of Justice, Civil Rights Division, 950 Pennsylvania Avenue Northwest, Washington, DC 20530; for the United States of America

HILDY BOWBEER, United States Magistrate Judge

This case is before the undersigned United States Magistrate Judge on Defendant Michael Hari's Motion to Dismiss [Doc. No. 94]. The motion was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and District of Minnesota Local Rule 72.1. The Court held a hearing on the motion on August 19, 2019, and took the motion under advisement on that date. For the reasons set forth below, the Court recommends that the motion be denied.

---

[1] Mr. Aligada's representation was terminated on August 28, 2019, and Assistant Federal Defender James S. Becker was added as an attorney for Defendant Michael Hari.

## I.     Background

### A.     Offenses Charged in the Indictment

On June 20, 2018, Defendant Michael Hari was charged by Indictment with four counts: (1) Intentionally Defacing, Damaging, and Destroying Religious Real Property Because of the Religious Character of that Property, in violation of 18 U.S.C. § 247(a)(1) and 18 U.S.C. § 2 ("Count 1"); (2) Intentionally Obstructing, and Attempting to Obstruct, by Force and the Threat of Force, the Free Exercise of Religious Beliefs, in violation of 18 U.S.C. § 247(a)(2) and 18 U.S.C. § 2 ("Count 2"); (3) Conspiracy to Commit Federal Felonies by Means of Fire and Explosives, in violation of 18 U.S.C. § 247(a)(2) ("Count 3"); (4) Carrying and Using a Destructive Device During and in Relation to Crimes of Violence, in violation of 18 U.S.C. § 924(c)(1)(B)(2) and 18 U.S.C. § 2 ("Count 4"); and (5) Possession of an Unregistered Destructive Device, in violation of 26 U.S.C. §§ 5845(a) and 5861(d), and 18 U.S.C. § 2 ("Count 5").  (*See* Indictment [Doc. No. 14].)

Count 1 of the Indictment alleges that on August 5, 2017, Hari and two other individuals, Michael McWhorter and Joe Morris, intentionally defaced, damaged, and destroyed the Dar al Farooq Islamic Center in Bloomington, Minnesota, because of the religious character of that property.  (Indictment ¶ 1.)  Count 1 further alleges that the offense occurred in and affected interstate commerce and involved the use of a dangerous weapon, fire, and explosives.  (*Id.*)

Count 2 of the Indictment alleges that Hari, McWhorter, and Morris intentionally used force to obstruct the free exercise of religious beliefs by individuals at the Dar al Farooq Islamic Center.  (*Id.* ¶ 2.)  Count 2 further alleges that the offense occurred in and

2

affected interstate commerce and involved the use of a dangerous weapon, fire, and explosives.  (*Id.*)

Count 3 of the Indictment alleges that Hari, McWhorter, and Morris conspired to knowingly use fire and explosives to commit the felonies charged in Counts 1 and 2 of the Indictment.  (*Id.* ¶ 3.)  The purpose of the alleged conspiracy was to deface, damage, and destroy the Dar al Farooq Islamic Center for the purpose of frightening and intimidating Muslims and interfering with their free exercise of religious liberty.  (*Id.* ¶ 4.)  The Indictment alleges that, as part of the conspiracy, Hari constructed a pipe bomb, rented a pickup truck in Illinois, and drove with McWhorter and Morris on August 4 and 5, 2017, from Illinois to Minnesota.  (*Id.* ¶¶ 5–7.)  Along the way, the three men allegedly purchased diesel fuel and gasoline, which they mixed together in a plastic container.  (*Id.* ¶ 8.)  On August 5, 2017, Morris allegedly broke a window of the Dar al Farooq Islamic Center with a hammer and threw the plastic container through the window.  (*Id.* ¶¶ 9, 20.)  McWhorter allegedly lit the fuse on the pipe bomb and threw it through the broken window immediately afterward.  (*Id.* ¶ 10.)  The pipe bomb exploded and ignited the plastic container, which caused blast, fire, and smoke damage to the Dar al Farooq Islamic Center.  (*Id.* ¶ 11.)  Hari allegedly waited in the rented truck, to which McWhorter and Morris immediately returned, and Hari drove out of the parking lot at a high rate of speed and returned to Illinois.  (*Id.* ¶ 12.)

The offense charged in Count 4 of the Indictment is based on the allegation that Hari, McWhorter, and Morris knowingly possessed a pipe bomb during the felonies charged in Counts 1 and 2.  (*Id.* ¶ 25.)  The offense charged in Count 5 is founded on the

allegation that the pipe bomb was not registered to Hari in the National Firearms

Registration and Transfer Record.  (*Id.* ¶ 26.)

### B.    Hari's Motion to Dismiss

Hari raises four challenges to the offenses with which he is charged.  First, he

moves to dismiss Counts 1, 2, 3, and 4 on the ground that 18 U.S.C. § 247(a) is facially

invalid in that Congress exceeded its authority under the Commerce Clause when it

enacted the statute.  Second, he moves to dismiss Counts 1, 2, 3, and 4 on the ground that

the Government's pre-prosecution certification required by 18 U.S.C. § 247(e) is

inadequate.  Third, Hari submits that the two charged violations of § 247(a)—§ 247(a)(1)

and § 247(a)(2)—are based on the same acts, and thus the Indictment is multiplicitous

and violates the Double Jeopardy Clause.  Fourth, Hari seeks to dismiss Count 4 on the

ground that the offenses set forth in § 247(a)(1) and § 247(a)(2) do not qualify as

predicate "crimes of violence" for purposes of § 924(c).

## II.   Discussion

### A.    Commerce Clause

Hari argues that 18 U.S.C. § 247(a) is facially invalid because Congress exceeded

its authority under the Commerce Clause of the United States Constitution in enacting the

statute.[2]

Title 18 U.S.C. § 247 provides in relevant part:

(a) Whoever, in any of the circumstances referred to in subsection (b) of
this section—

---

[2]  Hari does not bring an as-applied challenge to the statute.

(1) intentionally defaces, damages, or destroys any religious real property, because of the religious character of that property, or attempts to do so; or

(2) intentionally obstructs, by force or threat of force, including by threat of force against religious real property, any person in the enjoyment of that person's free exercise of religious beliefs, or attempts to do so;

shall be punished as provided in subsection (d).

(b) The circumstances referred to in subsection (a) are that the offense is in or affects interstate or foreign commerce.

18 U.S.C. § 247.

"A facial challenge is an attack on a statute itself as opposed to a particular application." *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2449 (2015). Such a challenge "is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see United States v. Morrison*, 529 U.S. 598, 607 (2000) ("Due respect for the decisions of a coordinate branch of Government demands that we invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds."). While the Eighth Circuit has not yet addressed the challenge to § 247 raised here by Hari, the two federal courts that have addressed it at length have determined that Congress did not exceed its Commerce Clause authority when it passed § 247. *See United States v. Ballinger*, 395 F.3d 1218, 1222, 1225–30 (11th Cir. 2005); *United States v. Roof*, 225 F. Supp. 3d 438, 452–55 (D.S.C. 2016).

The Commerce Clause authorizes Congress to pass laws regulating interstate commerce.  U.S. Const. art. I, § 8, cl. 3.  Congress may regulate three broad categories of activity under its Commerce Clause power: (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "activities that substantially affect interstate commerce."  *United States v. Lopez*, 514 U.S. 549, 558–59 (1995).

In *Lopez*, the Supreme Court invalidated a criminal statute, 18 U.S.C. § 922(q), upon finding that the regulated activity did not substantially affect interstate commerce. *Lopez*, 514 U.S. at 567–68.  After *Lopez* was decided, and in response to *Lopez*, Congress amended § 247 specifically to add an interstate commerce requirement: "[t]he circumstances referred to in subsection (a) are that the offense is in or affects interstate or foreign commerce."  H.R. Rep. No. 104-621, at 7 (1996), *reprinted in* 1996 U.S.C.C.A.N. 1082, 1087–88 (quoting 18 U.S.C. § 247(b)).  The phrase "in commerce" is a linguistic tool often used by Congress to invoke its Commerce Clause authority under *Lopez*'s first two categories, whereas the phrase "affects commerce" invokes the third *Lopez* category. *Ballinger*, 395 F.3d at 1231; *see Roof*, 225 F. Supp. 3d at 453 (stating "if a prohibited act is 'in' interstate commerce, then Congress has authority to prohibit it"); *see also United States v. Mosby*, 60 F.3d 454, 456 (8th Cir. 1995) (acknowledging, after *Lopez* was decided, that "[t]he phrase 'in or affecting commerce' is a term of art that indicates a congressional intent to invoke the full extent of its commerce power").

### 1.     The Channels and Instrumentalities of Interstate Commerce

A statute with the "in commerce" language covers "'only persons or activities

within the flow of interstate commerce.'"  *Ballinger*, 395 F.3d at 1232 (quoting *Allied-*

*Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995)).  The phrase includes "the

channels within which people and goods move through the flow of commerce, as well as

the instrumentalities used to facilitate that movement."  *Id.*  By employing the phrase

"in . . . commerce," Congress clearly invoked the first and second *Lopez* categories and

exercised "its power to regulate the use of the channels and instrumentalities of interstate

commerce."  *Ballinger*, 395 F.3d at 1235.

The defendant in *Ballinger* did not argue, as Hari does here, that it was impossible

to give effect to the "in commerce" phrase.  *See id.* at 1237.  Indeed, Ballinger offered the

examples of sending a bomb to a church through the mail and using a cellular phone to

detonate a bomb, as acts that would be "in commerce."  *Id.*  The *Ballinger* court extended

those examples to acts of intentionally driving a car across a state border to deliver a

bomb and using a cellular phone to contact someone in another state and instructing that

person to detonate the bomb.  *Id.*  The *Roof* court agreed that one could "use the channels

or instrumentalities of interstate commerce to attack a house of worship—for example, by

mailing a bomb to a church."  225 F. Supp. 3d at 453.[3]  That court thus concluded the

---

[3]  The acts described in *Ballinger* and *Roof* are consistent with the legislative history of
the 1996 amendment to § 247: "the [Judiciary] Committee intends that where in
committing, planning, or preparing to commit the offense, the defendant either travels in
interstate or foreign commerce, or uses the mail or any facility or instrumentality of
interstate or foreign commerce, the statute will be satisfied."  H.R. Rep. No. 104-621, at 7
(1996), *reprinted in* 1996 U.S.C.C.A.N. 1082, 1088.

defendant could not meet the "impossible burden" of establishing there were no circumstances under which an attack on a church could be in interstate commerce. *Id.*

Consistent with *Ballinger* and *Roof*, this Court concludes that § 247 is a valid exercise of Congress's authority under the first two *Lopez* categories. By adding the phrase "in . . . commerce" to the statute, Congress clearly invoked its authority to regulate the channels and instrumentalities of interstate commerce. Hari has not established there is no set of circumstances under which § 247 would be a valid exercise of this authority. To the contrary, acts such as mailing a bomb to a church, using a cellular phone to detonate a bomb, intentionally driving a car across state lines to transport a bomb, and using a cellular phone to instruct someone in another state to detonate a bomb would implicate the channels and instrumentalities used in interstate commerce.

### 2.     Activities that Substantially Affect Interstate Commerce

The Court likewise concludes that § 247 is a valid exercise of Congress's authority under the third *Lopez* category. Under *Lopez*, the effect of an activity on interstate commerce is determined by four factors:

> (1) whether the regulated activity is economic in nature; (2) whether the statute contains an express jurisdictional element linking its scope in some way to interstate commerce; (3) whether Congress made express findings regarding the effects of the regulated activity on interstate commerce; and (4) the attenuation of the link between regulated activity and interstate commerce.

*United States v. Anderson*, 771 F.3d 1064, 1067–68 (8th Cir. 2014) (citing *United States v. Morrison*, 529 U.S. 598, 607 (2000)). The Court need determine only that Congress

had a rational basis to conclude that the regulated activity substantially affected interstate commerce. *See Monson v. Drug Enf't Admin.*, 589 F.3d 952, 964 (8th Cir. 2009). The Court's task "is a modest one." *Gonzales v. Raich*, 545 U.S. 1, 22 (2005).

Beginning with the first two factors, the Government concedes that the activity regulated by § 247 is not "inherently commercial" but argues that the statute's express jurisdictional language is adequate to establish the requisite connection between the activity and commerce. The Court agrees that "attacks on churches are not a type of economic activity." *See Roof*, 225 F. Supp. 3d at 453. However, as the Government contends, the jurisdictional element of § 247 restricts the statute's reach to conduct that is sufficiently related to interstate commerce. *See Roof*, 225 F. Supp. 3d at 453. It is well-established that "[s]tatutes prohibiting noncommercial conduct that include such jurisdictional elements are universally upheld as within Congress's Commerce Clause powers." *Id.* (citing cases from the First, Fourth, Sixth, and Eighth Circuit Courts of Appeal).

Hari acknowledges the Eighth Circuit authority holding that the inclusion of a jurisdictional element in a criminal statute is a sufficient basis on which to uphold the statute's validity under the Commerce Clause. (Def.'s Mot. Dismiss at 13 [Doc. No. 94].) *See United States v. House*, 825 F.3d 381, 386 (8th Cir. 2016) (where a statute included "an express nexus requiring the charged criminal conduct to affect interstate commerce," finding that Congress did not exceed its Commerce Clause authority in enacting the statute); *United States v. Baker*, 82 F.3d 273, 275 (8th Cir. 1996) (finding that the phrase "facility in interstate or foreign commerce" established a sufficient nexus

between the prohibited activity and interstate commerce).  However, the Eighth Circuit

has also held that while Congress's inclusion of a jurisdictional element in § 247 "lends

support to the facial constitutionality of a statute," it does not "*per se* demonstrate[] that a

statute meets the substantial effects test."  *United States v. Crenshaw*, 359 F.3d 977, 985

(8th Cir. 2004).  The Court therefore proceeds to the third and fourth factors.

In determining whether Congress made specific findings about the effects of the

proscribed activity on interstate commerce, the Court may consider legislative findings,

congressional committee findings, and even informal findings.  *See Lopez*, 514 U.S. at

562–63; *Groome Res. Ltd., L.L.C. v. Parish of Jefferson*, 234 F.3d 192, 213 (5th Cir.

2000); *Gibbs v. Babbitt*, 214 F.3d 483, 493 n.3 (4th Cir. 2000).

Congress made several explicit findings when it passed § 247, including, *inter

alia*:

> (4) Although local jurisdictions have attempted to respond to the challenges
> posed by such acts of destruction or damage to religious property, the
> problem is sufficiently serious, widespread, and interstate in scope to
> warrant Federal intervention to assist State and local jurisdictions.

> (5) Congress has authority, pursuant to the Commerce Clause of the
> Constitution, to make acts of destruction or damage to religious property a
> violation of Federal law.

Church Arson Prevention Act of 1996, Pub. L. No. 104-155, § 2, 110 Stat. 1392 (1996).

These two findings, read together, reflect Congress's concern with acts of destruction and

damage to religious property that are significant and "interstate in scope," such that

invoking Congress's authority under the Commerce Clause to prohibit such activity was

warranted.

In addition, Senator Edward Kennedy, one of the amending legislation's co-sponsors, made the following statement to the Senate when the bill was introduced:

> Congress also has authority under the commerce clause to enact this legislation.  As the record makes clear, the churches, synagogues, and mosques that have been the targets of arson and vandalism, serve many purposes.  On Saturdays or Sundays, they are places of worship.  During the rest of the week, they are centers of activity.  A wide array of social services, such as inoculations, day care, aid to the homeless, are performed at these places of worship.  People often register to vote, and vote at the neighborhood church or synagogue.  Activities that attract people from a regional, interstate area often take place at these places of worship.  There is ample evidence to establish that Congress is regulating an activity that has a "substantial effect" upon interstate commerce.

142 Cong. Rec. S6517-04, S6522 (June 19, 1996) (statement of Sen. Kennedy).  After the Senate and House of Representatives passed the bill, a Joint Statement of Floor Managers was presented by Senator Duncan Faircloth "[i]n lieu of a conference report" to "be made part of the legislative history" of the bill.  142 Cong. Rec. S7908-04, S7908 (July 16, 1996) (statement of Sen. Faircloth).  The Joint Statement conveyed the intent that the interstate commerce requirement be "satisfied, for example, where in committing, planning, or preparing to commit the offense, the defendant either travels in interstate or foreign commerce, or uses the mail or any facility or instrumentality of interstate commerce."  *Id.* at S7909.  In addition, the interstate commerce requirement would be met "if the real property that is damaged or destroyed is used in activity that is in or affects interstate commerce."  *Id.*  The Joint Statement noted that places of religious worship serve other, civic purposes such as child care and social services.  *Id.*  Finally, the Joint Statement specifically distinguished the interstate commerce provision added to § 247 from the provision struck down in *Lopez*: "Subsection (b), unlike the provision at

11

issue in Lopez, requires the prosecution to prove an interstate commerce nexus in order to establish a criminal violation." 142 Cong. Rec. at S7909. The Court finds that the above findings weigh strongly in favor of the third factor.

The Court now turns to the connection between the regulated activity and interstate commerce. Hari argues that "there is no demonstrated or even speculated link between the proscribed activity (*i.e.*, religion-motivated property damages and threats) and interstate commerce." (Def.'s Mot. Dismiss at 12.) This argument utterly disregards the legislative history summarized above that describes the link between acts of destruction and damage to religious property and interstate commercial activities such as traveling, using the mail, and providing daycare, medical, civic, and other social services. Moreover, "[i]t is well established that religious organizations can and do engage in and affect interstate commerce." *United States v. Corum*, No. 01-cr-236 (JRT/FLN), 2002 WL 1285078, at *3 (D. Minn. June 5, 2002) (upholding validity of § 247(a)(2) against an as-applied Commerce-Clause challenge) (citations omitted), *aff'd*, 362 F.3d 489 (8th Cir. 2004). Indeed, both the damage to or destruction of religious property under § 247(a)(1) and the obstruction of a person's free exercise of religious beliefs under § 247(a)(2) have been linked to interstate commerce. *Id.*

The Court finds that, on balance, the four factors weigh strongly in favor of finding that § 247 is a valid exercise of Congress's authority under the Commerce Clause. Though the regulated activity is not overtly economic, that factor is outweighed by the express jurisdictional element of § 247, Congress's express findings regarding the effects of the proscribed activities on interstate commerce, and the link between the

proscribed activities and interstate commerce.  Thus, the Court concludes that Congress had a rational basis to believe that the conduct regulated by § 247 substantially affects interstate commerce, and correspondingly recommends that Hari's motion to dismiss on this ground be denied.

### B.    Adequacy of the Pre-Prosecution Certification

Before the United States may prosecute an individual under 18 U.S.C. § 247, the Attorney General must certify in writing "that in his judgment a prosecution by the United States is in the public interest and necessary to secure substantial justice." 18 U.S.C. § 247(e).  Hari argues that the certification in this case fails to meet this standard because it simply mirrors the statutory language without making a substantive showing that the prosecution is in the public interest and necessary to secure substantial justice.  Hari asks the Court to evaluate the certification "for substance."  (Def.'s Mot. Dismiss at 21.)

The § 247(e) certification in this matter reads in full:

I, John M. Gore, hereby certify that prosecution by the United States of Michael Hari, Michael McWhorter, and Joseph Morris for violating Title 18, United States Code, § 247(a)(1) and § 247(a)(2) is in the public interest and necessary to secure substantial justice. This certificate is made pursuant to Title 18, United States Code, § 247(e).

(Gov't Mem. Opp'n Mot. Dismiss Ex. A [Doc. No. 115-1].)

To support his argument that § 247(e) is more than a formality, Hari draws a parallel to another statutory certification requirement, 18 U.S.C. § 5032, which provides:

A juvenile alleged to have committed an act of juvenile delinquency . . . shall not be proceeded against in any court of the United States unless the Attorney General, after investigation, certifies to the appropriate district

court of the United States that (1) the juvenile court or other appropriate court of a State does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, (2) the State does not have available programs and services adequate for the needs of juveniles, or (3) the offense charged is a crime of violence that is a felony or an offense described in [certain drug commerce and firearms statutes] and that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction.

18 U.S.C. § 5032.

In *United States v. Juvenile Male*, the Eighth Circuit considered whether a federal district court had the authority to review a § 5032 certification for compliance and whether the certification was a prerequisite to federal jurisdiction. 923 F.2d 614, 616–17 (8th Cir. 1991). The Eighth Circuit answered both questions in the affirmative. *Id.* at 617. In reviewing the certification for compliance, the court considered whether the crime of violence with which the defendant was charged (conspiracy to commit murder) was a crime of violence as contemplated by § 5032. *Id.* at 618–20. Concluding it was, the court thus determined the certification complied with § 5032. The court did not hold or otherwise indicate that the certification was subject to substantive judicial review; rather, the court reviewed only whether the juvenile proceeding comported with the statutory requirement that only a crime of violence may be prosecuted.

The court in *Juvenile Male* also determined that the government had failed to certify "that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction." *Id.* at 620. The court did not independently consider whether there was a substantial federal interest in the case or offense, or consider whether the government had made a *substantive* showing, but found simply that the face of the

certification did not reflect the statutory language.[4]  *Id.*

If this Court were to review the certification for compliance with § 247(e) in the same manner as the court in *Juvenile Male* did for compliance with § 5032, as Hari urges, the Court would find that the certification complies with the statute.  First, there is no dispute that the offenses covered by the certification are the same offenses defined by Congress in § 247(a)(1) and § 247(a)(2).  Thus, the technical compliance question presented in *Juvenile Male* simply is not present here.

Second, the certification states on its face that the prosecution of Hari for violations of § 247(a)(1) and § 247(a)(2) is in the public interest and necessary to secure substantial justice.  That language is what is required by § 247(e), and a recitation of the statutory language in the certification is what the *Juvenile Male* court found lacking. *Juvenile Male* does not stand for the proposition that a court must, or even may, review the sufficiency of the government's determination that a prosecution is in the public interest and necessary to obtain substantial justice.

However, the Eighth Circuit's decision in *United States v. Juvenile Male J.A.J.*, 134 F.3d 905 (8th Cir. 1998), issued seven years after *Juvenile Male*, did foreclose judicial review of the "substantial Federal interest" aspect of the § 5032 certification. That court said unequivocally that the government's "certification of a substantial federal interest . . . is standardless and not explicitly subject to review."  *Juvenile Male J.A.J.*,

---

[4]  The court further found that the government failed to comply with another requirement of § 5032 that did not relate to the certification, *Juvenile Male*, 923 F.3d at 620, which is not applicable here.

134 F.3d at 908.  Congress's choice not to include a standard in § 5032 by which a court could assess a substantial federal interest was "fatal" to reviewability.  *Id.*  Considering the language and structure of the statute, in addition to "separation of powers concerns," the court concluded "the United States Attorney's certification of a substantial federal interest is an unreviewable act of prosecutorial discretion."[5]  *Id.* at 909.

Section 247(e), like § 5032, contains no standard for judicial reviewability of the Attorney General's certification that a prosecution is in the public interest and necessary for substantial justice.  Therefore, that aspect of the certification in this case is not subject to substantive judicial review.  Correspondingly, the Government is not required to show that state officials declined prosecution, why a state prosecution would be unsuccessful, or the particular interests that are implicated by the prosecution, all of which Hari requests.

In Hari's reply memorandum, he suggests that the opening phrase of § 247(e)— "No prosecution of any offense described in this section shall be undertaken"—provides a standard for judicial review.  (Def.'s Reply Mem. at 17–18 [Doc. No. 121].)  The Court disagrees that this language sets forth a standard for substantive judicial review, and

---

[5]  The *Juvenile Male J.A.J.* decision explicitly acknowledges and rejects the Fourth Circuit authority on which Hari relies.  (*See* Def.'s Mot. Dismiss at 21 (citing *Roof*, 225 F. Supp. 3d at 450–51 (citing *United States v. Juvenile Male No. 1*, 86 F.3d 1314, 1321 (4th Cir. 1996))).)  In *Juvenile Male No. 1*, the Fourth Circuit "open[ed] the door to review the Attorney General's certification" for substance.  *Roof*, 225 F. Supp. 3d at 451.  In *Juvenile Male J.A.J.*, the Eighth Circuit declined to follow *Juvenile Male No. 1* and aligned instead with the Third, Fifth, and Eleventh Circuits in holding that a § 5032 certification of a "substantial Federal interest" is not subject to judicial review.  *Juvenile Male J.A.J.*, 134 F.3d at 906, 909.

concludes that limited judicial review of the certification is available to the extent—but only to the extent—permitted under *Juvenile Male*. That is, if the government fails to provide a certification that conforms to the statutory language or fails to provide a certification at all, a court could determine it lacked jurisdiction over the prosecution. *See Juvenile Male*, 923 F.2d at 617. Neither of those circumstances occurred here.

In sum, the Court concludes that the § 247(e) certification is valid to the limited extent it is reviewable under *Juvenile Male*, and that the Attorney General's judgment that the prosecution is in the public interest and necessary for substantial justice is not reviewable. Accordingly, Hari's motion to dismiss on this basis should be denied.

### C.    Multiplicity and Double Jeopardy

Hari argues that the offenses charged in 18 U.S.C. § 247(a)(1) and § 247(a)(2) are multiplicitous and thus violate the Double Jeopardy Clause.

"An indictment is multiplicitous if it charges the same crime in two counts." *United States v. Chipps*, 410 F.3d 438, 447 (8th Cir. 2005). Such an indictment violates a defendant's "right not to be put more than once in jeopardy." *United States v. Herzog*, 644 F.2d 713, 715 (8th Cir. 1981). When determining whether an indictment is multiplicitous, "[t]he applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (finding two offenses were committed with a single act because each offense "require[d] proof of a different element").

Section § 247(a) provides:

(a) Whoever, in any of the circumstances referred to in subsection (b) of this section—

> (1) intentionally defaces, damages, or destroys any religious real property, because of the religious character of that property, or attempts to do so; or
>
> (2) intentionally obstructs, by force or threat of force, including by threat of force against religious real property, any person in the enjoyment of that person's free exercise of religious beliefs, or attempts to do so;

shall be punished as provided in subsection (d).  18 U.S.C. § 247(a).  The Court will accept Hari's description of the elements of § 247(a)(1) as: (1) intentional damage or destruction of religious real property, (2) because of the religious character of the property, and (3) in or affecting interstate commerce.  (*See* Def.'s Mot. Dismiss at 27 (citing Leonard B. Sand, 1 Modern Fed. Jury Instructions-Criminal § 17-19 (Lexis 2018)).  Correspondingly, the Court will assume, *arguendo*, that the elements of § 247(a)(2) are: (1) intentional obstruction of a person in the enjoyment of his or her free exercise of religious beliefs, (2) by force or threat of force, including by threat of force against religious real property, and (3) in or affecting interstate commerce.  (*See* Def.'s Mot. Dismiss at 27.)

The Court finds that § 247(a)(1) requires proof of an element that § 247(a)(2) does not: that the defendant defaced, damaged, or destroyed religious real property (or attempted to do so) *because of the religious character of the property*.  Proof of that motive is not required by § 247(a)(2).  The Court further finds that § 247(a)(2) requires proof of at least one element that § 247(a)(1) does not: that the defendant *obstructed (or*

18

*attempted to obstruct) the free exercise of religious beliefs*.  Proof of that obstruction or

attempted obstruction is not required by § 247(a)(1).  Thus, each statutory provision

contains at least one element that is not found in the other provision.

Hari acknowledges that § 247(a)(2) requires proof of an element not required by

of § 247(a)(1)—namely, the actual or attempted obstruction of someone's exercise of his

or her religious beliefs.  He argues, however, that "using force against property in order

to obstruct someone's religious beliefs[] [§ 247(a)(2)] is a mere specific subset of the

more general scenario of damaging religious property because of that property's religious

characteristics [§ 247(a)(1)]."  (Def.'s Mot. Dismiss at 34–35.)  The Court disagrees.

Hari's argument does nothing more than make the point that the same act can violate two

different sections of the same statute.  But that alone is not multiplicity and does not

place him in double jeopardy.

Consequently, Count 1 and Count 2 of the Indictment are not multiplicitous, and

the Court recommends that Hari's motion to dismiss on that basis be denied.

### D.     Due Process

Count 4 charges Hari with carrying and using a destructive device during and in

relation to crimes of violence, in violation of 18 U.S.C. § 924(c)(1)(B)(2) and 18 U.S.C.

§ 2.  Hari seeks to dismiss Count 4 on the basis that the offenses set forth in § 247(a)(1)

and (2) do not qualify as predicate "crimes of violence" for purposes of § 924(c).  The

Government disagrees and submits that each of the § 247 violations is a crime of

violence.

The term "crime of violence" is defined by § 924(c)(3) as "an offense that is a

19

felony and":

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Section 924(c)(3)(A) is known as the "force clause," and § 924(c)(3)(B) is known as the "residual clause."  In *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019), the Supreme Court struck down the residual clause as unconstitutionally vague.  The parties agree that, post-*Davis*, the term "crime of violence" must be defined by the force clause, § 924(c)(3)(A).  The parties further agree that the validity of the § 924(c) violation charged in Count 4 depends on whether the § 247 violations charged in Counts 1 and 2 are "crimes of violence" as defined by the force clause, and that the Court should use the "categorical approach" to make this determination.

Under the categorical approach, the Court examines the § 247 violations charged in Counts 1 and 2 to determine whether those offenses necessarily meet the definition of § 924(c)(3)(A).  *See United States v. Williams*, 926 F.3d 966, 969 (8th Cir. 2019).  The Court looks to the elements of the predicate offenses, rather than how a particular defendant could have committed the offenses.  *Id.*  When a statute has multiple alternative elements, it is considered "divisible," and the Court applies a modified categorical approach.  *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016).  Under the modified categorical approach, the Court may look at certain documents such as the indictment to determine the applicable elements.  *Id.*  Hari does not dispute that § 247 is

20

divisible and a modified categorical approach applies.

Hari is charged with violating both § 247(a)(1) and § 247(a)(2).  Section 247(a)(1) applies to intentional defacement, damage, or destruction of "any religious real property, because of the religious character of that property," or an attempt to do so.  Section 247(a)(2) applies to intentional "obstruct[ion], by force or threat of force, including by threat of force against religious real property, any person in the enjoyment of that person's free exercise of religious beliefs," or an attempt to do so.

An express element of § 247(a)(2) is the use of force or threat of force to obstruct "any person" in the exercise of religious beliefs.  Hari argues that the force regulated by § 247(a)(2) could include force against oneself, which would not fit within § 924(c)(3)(A)'s requirement of "force against the person or property *of another*" (emphasis added).  In accordance with well-established principles of statutory construction, the Court must interpret § 247(a)(2) in a reasonable and logical way that would not lead to an absurd result.  Hari's interpretation fails this test.  Under Hari's interpretation, an individual could violate § 247(a)(2) by using force or threatening to use force against himself or herself to obstruct his or her own exercise of religion.[6]  This interpretation is neither reasonable nor logical.  Extending Hari's interpretation to § 247(d), a person could be penalized for causing bodily injury to himself or herself as a result of committing an act ostensibly in violation of § 247(a)(2) against himself or

---

[6]  Section § 247(a)(2)'s requirement of intentional obstruction of the free exercise of religious beliefs distinguishes that statute from 18 U.S.C. § 844(i), which Hari characterizes as analogous, but which contains no comparable provision.

herself.[7]  This interpretation is likewise illogical and would lead to an absurd result.

Turning to § 247(a)(1), this statute proscribes intentionally defacing, damaging, or destroying "any religious real property."  Hari argues that the activity regulated by this statute could include an individual damaging or destroying his or her own real property, which would not fit within § 924(c)(3)(A)'s requirement of "force against the person or property *of another*" (emphasis added).  Hari disregards, however, two key aspects of § 247(a)(1).

First, § 247(f) defines "religious real property" as "any church, synagogue, mosque, religious cemetery, or other religious real property, including fixtures or religious objects contained within a place of religious worship, or real property owned or leased by a nonprofit, religiously affiliated organization."  Hari suggests, as an example, that a religious leader could damage or destroy his or her own church.  But the categorical approach "requires more than the application of legal imagination" to statutory language.  *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).  There must be "a realistic probability, not a theoretical possibility" that the government would prosecute conduct proscribed by § 247 that fell outside the definition of § 924(c)(3)(A).  *Id.*  To demonstrate such a realistic probability, Hari can either show "that the statute was

---

[7]  The penalties for violating § 247(a)(1) and (a)(2) are set forth in § 247(d).  The offenses with which Hari is charged implicate subjection (d)(3), which provides for a maximum term of imprisonment of 20 years "if bodily injury to any person . . . results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire."  18 U.S.C. § 247(d)(3).  The Government submits that § 247(d)(3) is essentially an additional element to the elements explicitly present in § 247(a)(1) and § 247(a)(2).  Hari replies that § 247(d) "makes no difference to the problem at hand."  (Def.'s Reply Mem. at 6.)

so applied in his own case" or identify other cases in which the government applied the statute in the manner he posits. *Id.* Hari makes no such showing here.

Second, even if one assumes, *arguendo,* that a religious leader would own religious real property outright rather than in the name of the religious organization, Hari faces another obstacle: § 247(a)(1) requires motivation that the damage or destruction was "because of the religious character of that property." It would not be reasonable or logical for a person who owned religious real property to be motivated by its religious nature to damage or destroy it.[8] Hari hypothesizes that a religious leader could be motivated to damage or destroy his or her own religious real property by a desire to garner sympathy or unite followers, to falsely accuse or punish a subgroup, or obtain benefits under an insurance policy. But in these situations, the hypothetical leader's motivation is not to damage or destroy the property because of its religious character, but to achieve the goal identified by Hari—to unite followers, blame a subgroup, or obtain an insurance payout. Moreover, there would still have to be a realistic probability that the government would prosecute such conduct under § 247(a)(1). Hari has not made such a showing, and his hypotheticals are therefore inapposite.

Accordingly, the Court concludes that the offenses set forth in § 247(a)(1) and § 247(a)(2) qualify as predicate "crimes of violence" for purposes of § 924(c).

---

[8] This motive element of § 247(a) is not present in 18 U.S.C. § 844, and thus, Hari's reliance on *United States v. Salas*, 889 F.3d 681, 683-84 (10th Cir. 2018), and like cases is unavailing.

23

## III.     Recommendation

Based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Michael Hari's Motion to Dismiss [Doc. No. 94] be **DENIED**.

Dated:  September 17, 2019          _s/ Hildy Bowbeer_____
                                   HILDY BOWBEER
                                   United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under D. Minn. LR 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  D. Minn. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in D. Minn. LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.