UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| United States of America, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | Case No. 18-cr-150(1) (DWF/HB) |
| | ) | |
| vs. | ) | **DEFENDANT'S OBJECTIONS TO** |
| | ) | **REPORT & RECOMMENDATION** |
| Michael Hari, | ) | |
| Defendant. | ) | |

## I. Introduction

Defendant Michael Hari submits these Objections to the Magistrate Judge's Report and Recommendation (R&R), (ECF 131), which suggests that the Court deny his motion to dismiss, (ECF 94).

## II. Background

The factual background relevant to motion at hand may be found in Mr. Hari's memorandum of law, (ECF 94), as well the R&R itself, (ECF 131 at 2-4). The salient allegations may be summarized as follows—

The charging document claims that Mr. Hari committed a number of acts along with co-defendants Michael McWhorter and Joe Morris. (ECF 14). The most important of these involve the assertion that in 2017, the defendants purchased diesel fuel and gasoline, which was then placed inside a plastic container to fashion a "pipe bomb." (ECF 14 at 4). It is alleged that on August 5, 2017, the defendants brought the device to the Dar al Farooq Islamic Center, which is located in Bloomington, Minnesota. (ECF 14 at 4-6). According to the government, Defendant Morris broke a window and tossed the device into the

1

building after having lit the fuse, causing damage to the building. (ECF 14 at 4-6). The government claims the motive for doing so was "because of the religious character of the Dar al Farooq Islamic Center." (ECF 14 at 1).

Based upon the above allegations, the government has charged Mr. Hari with a number of federal offenses:

| Ct. | Description | Statute(s) |
|---|---|---|
| 1 | Damaging religious real property because of religious character of that property | 18 U.S.C. § 247(a)(1) |
| 2 | Obstructing free exercise of religious beliefs by force or threat | 18 U.S.C. § 247(a)(2) |
| 3 | Conspiracy to commit federal felonies via fire/explosives | 18 U.S.C. § 844(h) & (m) |
| 4 | Carrying or using destructive device in relation to crimes of violence | 18 U.S.C. § 924(c)(1)(B)(ii) |
| 5 | Possession of unregistered destructive device | 26 U.S.C. §§ 5845(a) & 5861(d) |

### III. Motion to Dismiss

Mr. Hari filed a motion to dismiss Counts 1-4 above, offering a number of legal rationales for support. (ECF 94). After the government filed its response, (ECF 115), the legal issues presented (and charged counts implicated) can be summarized as:

| Legal issue presented | Ct. |
|---|---|
| A. *Categorical Analysis:* Using the categorical approach, does § 247(a) qualify as a valid predicate offense under the § 924(c)(3)(A) force clause? | 4 |
| B. *Commerce Clause—Ultra Vires:* Using the *Lopez-Morrison* test, was § 247(a) validly enacted under the "substantial affects" prong of the Commerce Clause? | 1-4 |
| C. *Inadequate Certification:* Does the structure and history of § 247(e) indicate substantive judicial review of the federal-jurisdiction certification? | 1-4 |
| D. *Double Jeopardy/Multiplicity:* Are the elements of § 247(a)(1) and § 247(a)(2) subsets of one another? | 1-2 |

(ECF 121 at 2).[1] The R&R answers each of the foregoing questions in a manner that would preserve the indictment. (ECF 131 at 4-24). But the R&R is incorrect in a number of respects, and Mr. Hari now presents these Objections:

## IV. Objections

Mr. Hari's objections are presented as in the above table:

### A. *Categorical Analysis:* **Are § 247(a)(1) & (a)(2) properly categorized as valid predicates under the § 924(c)(3)(A) force clause?**

In his Motion to Dismiss, Mr. Hari pointed out:

- Count 4 charges the offense of "carrying or using a destructive device during and in relation to crimes of violence," under § 924(c)(1). (ECF 14 at 6-7).

- For the requisite predicate "crimes of violence" defined under § 924(c)(3), both § 247(a)(1) and § 247(a)(2) (Counts 1 & 2 above) are charged. (ECF 14 at 6-7).

- The § 924(c)(3) "crime of violence" definition includes both a force clause and a residual clause. But recently the latter has been declared unconstitutional by the Supreme Court in *United States v. Davis,* 139 S. Ct. 2319 (2019). Hence, the charged § 247(a)(1) and (a)(2) predicates must necessarily depend upon the force clause found in § 924(c)(3)(A). That portion of the statute requires that the predicate contain element of "use, attempted use, or threatened use of physical force against the person or property <u>of another</u>." (Emphasis added).

Mr. Hari further submits that whether a charged predicate qualifies under the § 924(c)(3)(A) force clause calls for "categorical" analysis, *i.e.,* examining the elements of the predicate offense to determine whether such offenses *always necessarily* fit within the definitional category. (ECF 94 at 26). And the § 247(a)(1) and (a)(2) elements are:

---

[1] In the original motion to dismiss, the issues were stated more broadly and in a different order. (ECF 94). In light of the government's narrowing response, the issues were presented as above in defendant's reply memorandum. (ECF 121 at 2). The defense believes the above recitation presents the issues in the clearest terms, and hence presents the issues as above for purposes of these objections to the R&R.

| § 247(a)(1) | § 247(a)(2) |
|---|---|
| (1). The defendant intentionally damaged religious property, as alleged in the indictment.<br><br>(2). The defendant did so because of the religious character of the property.<br><br>(3). The crime was in or affecting interstate commerce. | (1). The defendant intentionally obstructed a person in the enjoyment of free exercise of religious beliefs.<br><br>(2). The defendant did so intentionally, by force or threat of force, including by threat of force against religious property.<br><br>(3). The crime was in or affecting interstate commerce. |

(ECF 94 at 27 & 34).

Of particular note here, the above elements are very similar to those in the arson/explosives offense defined under 18 U.S.C. § 844(i):

> (1). The defendant maliciously damaged or destroyed a particular building, vehicle, or real or personal property.
>
> (2). The defendant did so by means of fire or explosives.
>
> (3). At the time of the fire or explosion, the building, vehicle, or property was used in an activity affecting interstate commerce.

(ECF 121 at 7). This is significant because the courts have held that § 844(i) fails to qualify as a valid predicate offense under the § 924(c)(3)(A) force clause due to the "of another" proviso. *United States v. Salas,* 889 F.3d 681, 683-84 (10th Cir. 2018) (§ 844(i) does not categorically qualify under § 924(c)(3)(A) Force Clause, since statute "does not require, as an element, the use of force against the property 'of another'" as it "may apply to a person who destroys his or her own property"); *see also United States v. Anderson,* 783 F.3d 727,

733-37 & 750 (8th Cir. 2015) (upholding § 844(i) conviction of business owner who arranged to burn down his own restaurant).

Logically, then, the § 247(a)(1) and (a)(2) predicates must also fail to qualify under the § 924(c)(3)(A) force clause, due to the similar absence of an elemental showing that the offense be committed against the property "of another."

The R&R, however, suggests the opposite conclusion, relying upon the concept that a predicate challenger must establish "a realistic probability, not a theoretical possibility" that the statute at issue falls outside the relevant definition. (ECF 131 at 22-23) (citing *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). According to the R&R, this requires the challenger to identify a specific case in which the statute was applied in the manner posited. (R&R at 22-23). And the R&R says that Mr. Hari failed to do so.

The R&R errs in its application of categorical approach, including the "realistic probability" concept as stated in *Duenas-Alvarez*.

First, as shown above, Mr. Hari *has* identified analogous federal statute § 844(i)— containing the same operative elements as § 247(a) at issue here. And he has shown that these elements have been construed to proscribe situations in which the defendant damages or destroys his own property, thus extending beyond the "of another" proviso found in the § 924(c)(3)(A) force clause. *See Salas,* 889 F.3d at 683-84.

True, the defense has not uncovered a § 247(a) case involving that specific scenario. But this is to be expected, because § 247(a) is a rarely charged offense. By contrast, § 844(i) is charged far more often if the published case law is any indication. *See, e.g.,* 2 *Modern Federal Jury Instructions—Criminal* § 30.01 (Lexis ed. 2019). The R&R suggests the lack

5

of a specific case involving the defendant's own property under rarely invoked § 247(a) is fatal. But this is an incorrect conclusion.

Consider a situation where Congress tweaks § 844(i) in some way—say, by proscribing damage to property by means of contamination as well as fire/explosives—thereby making it a new criminal statute with no prosecutions thereunder. Would we then conclude that § 844(i) is now a valid § 924(c)(3)(A) predicate, for lack of a "realistic probability" showing? Plainly not, as the relevant elements of the statute would remain. The prior-statute case law demonstrates that these elements permit a prosecution for damage to the defendant's own property which is outside the "of another" proviso of the force clause.

The same concept applies to § 247(a) here. As shown above, the elements are on all fours with § 844(i). Hence, the statutes are to be construed *in pari materia. See, e.g., Pasquantino v. United States,* 544 U.S. 349, 355 n.2 (2005). And so it must be concluded that § 247(a) applies to situations in which the defendant damages his own property, thereby placing it outside the "of another" ambit of the § 924(c)(3)(A) force clause. The "realistic probability" test thus has been met, demonstrating that § 247(a) falls outside the § 924(c)(3)(A) force clause under the categorical approach.

Second, the R&R strays from the categorical approach and "realistic probability" test entirely. That is, the R&R makes the bold prediction that a defendant damaging his own property "because of the religious character of that property" could never occur in reality, saying that such a scenario is not "reasonable or logical." (R&R at 23). This is an unsound mode of legal analysis, and finds no support under the categorical approach. For

the categorical approach does not call for courts to predict the unpredictable, *i.e.,* a hypothetical future defendant's acts or motivations. Rather, the categorical approach calls for an examination of offense elements and a comparison to a definitional category, to see whether the former are broader than the latter. (ECF 94 at 24-26). As already shown, in this case the correctly-formulated test demonstrates that the § 247(a) elements fall outside the "of another" proviso of the § 924(c)(3)(A) force clause.

Third, the R&R errs in attempting to forecast that a person would never damage his own property due to its religious character, and is incorrect in its factual-impossibility thesis based upon what is "reasonable or logical." But in prior unprecedented events, documented in published judicial decisions, individuals have committed all manner of strange and/or violent acts due to a (oftentimes fringe and idiosyncratic) religious-based motivation. For example, one judicial decision observed that the Branch Davidian religious sect—and in particular its leader David Koresh—employed "religious teaching" that placed emphasis on "paramilitary training" and espousing a religious-based philosophy that: "You can't die for God if you can't kill for God." *Andrade v. Chojnacki*, 65 F.Supp.2d 431, 441 (W.D. Tex. 1999). The sect built a "fort-style" compound, a reflection of Koresh's "apocalyptic mentality and preaching," which included characterizing government law enforcements agents as "the Beast." *Id.* at 442. And motivated by such religious teachings among other factors, these property owners did indeed burn their own religious property to the ground. 116 F.Supp.2d 778, 785 (W.D. Tex. 2000).

Other judicial decisions have also recognized that religious-motivated violence is often directed at one's own followers. *United States v. Mullett,* 868 F.Supp.2d 618, 624

7

(N.D. Ohio 2012). This is oftentimes committed by a religious leader, whose aim is to "shame and humiliate" those who refuse to comply with the leader's directives. *Id.* at 621. In one example, by forcibly shaving the facial hair of sect members. *See id.* To the eyes of most observers, none of this is especially "reasonable or logical." Nor predictable. And yet, it occurs.

For these reasons, it is ill-advised for the R&R to predict what certain events falling within § 247(a) will or will not occur in the future. The enterprise is not achievable, and in any event is not part of the categorical approach.

Rather, what matters is the elements of § 247(a). And as shown in prior papers and above, those elements clearly proscribe religious-motivated damage to one's own property, in addition to the property "of another." This places § 247(a) outside the "of another" proviso of the § 924(c)(3)(A) force clause. Hence, the § 924(c) charge of Count 4 lacks a valid predicate, requiring dismissal. Mr. Hari thus requests that the Court grant this objection, overrule the R&R, and dismiss Count 4.

**B.** *Commerce Clause:* **Is § 247(a) an *ultra vires* enactment under the *Lopez-Morrison* test?**

In the Motion to Dismiss, Mr. Hari issued a facial *ultra vires* challenge to § 247(a) (implicated in Counts 1-4 above) under the Commerce Clause, as demonstrated in *United States v. Lopez*, 514 U.S. 549 (1995) and *United States v. Morrison,* 529 U.S. 598 (2000). (ECF 94 at 4-18). The salient points were:

- Under a valid-rule/facial challenge of this sort, the focus of inquiry is not upon alleged facts in the case at bar nor hypothetical scenarios that might fit under challenged statute, but rather the *legislative process* by which § 247 was enacted.

- If the legislative process is deemed wanting under the *Lopez-Morrison* framework, then § 247 is "no law at all," and hence there exists "no set of circumstances" under which the statute may be validly used to support a conviction.

- The legislative history of § 247 shows that it was originally limited to situations involving channels or instrumentalities of commerce, but was broadened to cover situations that "substantially affect" commerce.

- The "substantially affects" invocation implicates the multi-factor test of *Lopez-Morrison*, and in particular *Morrison*, which invalidated a federal statute involving "gender-motivated crimes of violence."

(ECF 94 at 4-18). Thus, § 247 purports to invoke the "substantially affects" commerce authority under the Commerce Clause to legislate religious-motivated violence, much like the Supreme Court' invalidation of a different statute in *Morrison*- that attempted to reach gender-motivated violence – and § 247 must fail the test as well. (ECF 94 at 4-18).

The R&R suggests a contrary conclusion for a number of reasons, none of which withstand scrutiny.

First, the R&R discusses the facial validity of § 247 under the prior version of the statute, which relied upon the "channels" and "instrumentalities" prongs of the Commerce Clause authorization. (R&R at 7-8). But as noted above, the current version of § 247 purports to reach acts that are "in" *or* that "affect" interstate commerce. § 247(b). As the R&R points out, the term "in" refers channels/instrumentalities authorization, whereas "affect" refers to the "substantially affects" prong at issue in *Lopez-Morrison*. (ECF 131 at 7-9). And the charging document here alleges the "offense was in and affected" interstate commerce. (ECF 14 at 1-2). Hence, under both the charged statute and theory of the case,

9

the "substantially affects" prong of the Commerce Clause is necessarily implicated. Thus, the discussion regarding the channels/instrumentalities prong is unnecessary.

Second, the R&R suggests that prior courts that have encountered similar questions were right to generate hypothetical scenarios to see whether there exists "no set of circumstances" under which § 247 might meet the commerce clause. As explained in the main memorandum, (ECF 94 at 5-7), this is not how valid-rule/facial analysis is done. Instead, as noted above and in prior papers, the focus is upon the legislative process to see whether § 247 was validly enacted *ab initio*. If not, then § 247 is "no law at all," cannot be validly used against any defendant, and hence meets the "no set of circumstances" test.

Third, with respect to the "substantially affects" prong the R&R correctly states the *Lopez-Morrison* factors:

    (a) whether the regulated activity constitutes true "economic activity";

    (b) whether the statute is accompanied by express congressional findings concerning effects upon interstate commerce;

    (c) whether the link between proscribe activity and interstate commerce is direct or "attenuated"; and

    (d) whether the statute contains an "express jurisdictional element."

However, the R&R misapplies the factors, as described herein.

The R&R correctly observes that the activity regulated by § 247 is not "inherently commercial" under factor (a) above, which cuts against facial validity under the above test. (ECF 131 at 9). But the R&R goes on to say that Factors (b), (c), and (d) cut in favor of facial validity under *Lopez-Morrison*. (ECF 131 at 9-13).

On these last points, the R&R is incorrect. For example, Factor (b) asks whether the

legislative record contains express congressional findings concerning the regulated activity's effects upon interstate commerce. The R&R cites statutory language expressing a desire to "assist State and local jurisdictions," as well as comments by a sponsoring legislator concerning the various charitable functions served by many religious organizations. (R&R at 10-11). Even assuming these citations rise to the level of "express congressional findings," said findings are conclusory and/or do not actually establish the requisite linkage between the proscribed activity and a "substantial affect" upon interstate commerce. *See, e.g., Brzonkala v. Virginia Polytechnic Inst.,* 169 F.3d 820, 850 (4th Cir. 1999), *aff'd sub nom., United States v. Morrison,* 529 U.S. 598 (2000). And under *Lopez-Morrison*, such conclusory findings simply will not suffice. *Morrison,* 529 U.S. at 614 ("Simply because Congress may conclude that a particular activity substantially affects interstate commerce does not necessarily make it so.").

As for Factor (d)—*i.e.,* the jurisdictional element—the R&R concedes that the presence or absence "does not *per se* demonstrate that a statute meets the substantial effects test." (R&R at 10 (citation and punctuation omitted)). Hence, even assuming this factor favors enactment validity here, it cannot stand alone. *E.g., United States v. Ho*, 311 F.3d 589, 600 (5th Cir. 2002).

In truth, it is Factor (c)—*i.e.,* the actual, objective linkage between the proscribed activity and interstate commerce—that is paramount here. And contrary to the R&R, this factor cuts strongly against facial validity of § 247 under the *Lopez-Morrison* test. For as shown above, § 247 proscribes religious-motivated damage to property—an area that is traditionally of state concern. This is highly analogous to gender-motivated violence, which

11

the Supreme Court found lacking with respect to interstate-commerce linkage in *Morrison.* 529 U.S. at 615. In reaching its contrary conclusion, the R&R does nothing more than cite to the above congressional findings and attenuated linkages, (R&R at 12), the R&R fails to make an "independent evaluation" as to the commerce-activity linkage. *See, e.g., Lopez,* 514 U.S. at 562.

Employing such "independent evaluation" is the only way to generate the requisite linkage. To "pile inference upon inference" is an inappropriate way to conjure a statute-commerce linkage that Congress never supplied. *Lopez*, 514 U.S. at 567. The Supreme Court has "reject[ed] the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." *Morrison,* 529 U.S. at 617.

In enacting § 247(a), Congress cited some instances of religious-bias-motivated property crimes, and expressed a desire to "assist" the states in addressing the perceived problem. Pub. L. 104-155, § 2 (1996). But a claimed desire to "assist" is certainly no linkage to interstate commerce. And assumption of a traditional state function at the sole discretion of the federal government is less about assistance and much more about the reach of federal jurisdiction in areas where it cannot be validly imposed.

For example, can Congress enact a national code of family law—regulating marriage, dissolution, spousal-child support, visitation, and the like—which is to apply only in those cases in which the familial transaction at issue somehow "affects" interstate commerce? If so, such a law will cover virtually every citizen of this nation, as familial relationships are lengthy in duration and broad in scope; and thus are bound to "affect"

12

interstate commerce in some way or other. Certainly the relationship will be bound to "affect" commerce at the points most relevant to family law practice—the aforementioned marital dissolution and spousal-child support situations, for example. And yet there can be little doubt that such a law would fail to survive the Supreme Court's facial/valid-rule scrutiny under Commerce Clause. *See Lopez*, 514 U.S. at 564 (expressing incredulity about implications of government's rationale for Commerce Clause authority to enact federal firearm criminal statute, as such reasoning would lead to pervasive federal regulation of family law, criminal enforcement, education, and other spheres "where States historically have been sovereign"). This is because family law is principally a state and local concern, with only a tenuous and transitory linkage to interstate commerce. *See id.* The Commerce Clause requires a <u>*substantial*</u> connection between the regulated activity and interstate commerce; not a mere attenuated connection that is nonetheless bound to touch commerce at one point or another. *See id.*

So too with § 247(a). There can be little question that religious-bias-motivated damage or threats to property is primarily a matter of local concern to be addressed by state police powers, not interstate economic activity of federal concern. *See, e.g., Morrison*, 529 U.S. at 613 ("Gender-motivated crimes of violence are not, in any sense of the phrase, economic activity."). Thus, should the federal government wish to regulate such activity under the auspices of its Commerce Clause authority, it is incumbent upon Congress to demonstrate a sufficient linkage with interstate commerce. *See id.* The reality is that § 247 at issue here is very similar to the gender-motivated violence statute at issue in *Morrison*. And as in *Morrison,* the linkage between the proscribed activity and an actual, *bona fide*

13

affect upon interstate commerce is too attenuated to be deemed "substantial."

In sum, § 247 fails the *Lopez-Morrison* test of facial/valid-rule validity. Hence, Counts 1-4 must be dismissed.

  C. *Inadequate Certification:* **Do the structure and history of § 247 indicate substantive review of the federal-jurisdiction certification?**

In his original motion papers, Mr. Hari pointed out that § 247 contains a mandatory certification provision, requiring pre-prosecution determination that the case is "in the public interest and necessary to secure substantial justice." § 247(e). Further, the legislative history of § 247 shows these standards were added at the behest of the Justice Department, to "ensure appropriate deference to state or local prosecution in most cases," while limiting federal prosecutions to situations "where state or local officials will not assume jurisdiction or for any reason are unable to secure a conviction." S. Rep. 100-324 at 6 (1988). Also cited was Eighth Circuit case law, suggesting the above factors indicate the requirement of a substantive certification by the government, and meaningful judicial review of same. (ECF 121 at 17-18).

The R&R reaches a contrary conclusion, but in doing so fails to account for the legislative history cited above. When coupled with the statutory language, the best reading is that § 247(e) requires a substantive and reviewable certification, which at a minimum must demonstrate that state or local officials have declined to assume jurisdiction, or otherwise are unable to secure a conviction for some particular reason.

  D. *Double Jeopardy/Multiplicity:* **Are the elements of § 247(a)(1) and § 247(a)(2) subsets of one another?**

With respect to § 247(a)(1) and § 247(a)(2), Mr. Hari previously pointed out the

above-listed elements are—in function if nothing else—subsets of one another. (ECF 121 at 18-20). For example, § 247(a)(1) requires a showing that the defendant damaged religious property. Whereas § 247(a)(2) requires obstruction of religious practice, including by means of force against religious property. Hence, the § 247(a)(1) element is but a specific subset of the § 247(a)(2) element. The same holds true for the religious-motivation element. (ECF 121 at 20). All of this indicates that Congress did not intend for the same act to be criminalized by both statutes; rather, the government should choose one or the other, but not both. (ECF 94 at 35).

The R&R deems the above an insignificant point, suggesting it is nothing more than saying "the same act can violate two different sections of the same statute." (R&R at 19). This is not correct however, and in fact merely restates the multiplicity question, *i.e.,* did Congress *intend* that the same act be punishable by the two statutes in question. *See, e.g., United States v. Bass*, 794 F.2d 1305, 1308-09 (8th Cir. 1986). And in answering this question, it is crucial to inquire whether the offense elements are subsets of one another, and/or lesser-included offenses. *See, e.g., United States v. Mann*, 701 F.3d 274, 285-86 (8th Cir. 2012).

Hence, the fact that the elements are subsets of one another is highly pertinent to the multiplicity question. And here, the elements are subsets. Hence, the totality of circumstances indicate that the same act can violate § 247(a)(1) or § 247(a)(2), but not both at the same time. At the government's option, Count 1 or Count 2 must be dismissed.

## V. Conclusion

For the above reasons, Mr. Hari requests that the Court sustain these objections, and grant his motion to dismiss. (ECF 94).

Dated: October 15, 2019

Respectfully submitted,

*s/ Shannon Elkins*

SHANNON ELKINS
Attorney ID No. 332161
Attorney for Defendant
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415