UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br>MICHAEL HARI,<br><br>Defendant. | Criminal No. 18-150(1) (DWF/HB)<br><br>**DEFENDANT'S MOTION FOR CONTINUANCE OF TRIAL** |

Michael Hari, by and through his attorneys, Shannon Elkins and James Becker, hereby respectfully moves the Court for a continuance of trial in this case.

The grounds for the requested continuance are multiple:

**I.   Anticipated pre-trial litigation regarding attorney-client communications**

On December 26, 2019, counsel for the government informed Attorney Elkins that there was an unintentional government intrusion into her communications with Michael Hari. The Livingston County Jail in Illinois recorded Ms. Elkins' phone calls with Mr. Hari and provided the recordings to the FBI in Minnesota. The FBI then summarized Ms. Elkins' attorney/client privileged phone calls with Mr. Hari and provided a report to Assistant United States Attorneys Julie Allyn and John Docherty. The report was discovered by AUSA Allyn, who then informed others. A final report on the depth and breadth of this violation was received from the government on January 9, 2020.

The defense is presently investigating this significant disclosure and anticipates that it will file with the Court a pre-trial motion concerning this intrusion. The outcome of this impending litigation may have a bearing on trial, and thus additional time is being

requested to permit the defense to complete its investigation and to permit a thorough review by the Court of any related motions to be filed.

## II.    Consequences of the Recent Ruling regarding Mr. Hari's Motion to Transfer

In the interim, on January 6, 2020, Michael Hari's counsel in the Central District of Illinois filed a motion to transfer the Illinois Indictment to Minnesota for trial. *See* ECF 18-CR-20014 (MMM/EIL), Doc. 77. The government was given until January 24, 2020 to respond to the motion and a hearing was not held until today, February 4, 2020, approximately one month after the motion was filed.

The parties have been notified informally that the Central District of Illinois has denied this motion. The defense anticipates that as a result of this decision the Court here will schedule a status conference in the near future to discuss how trial here will proceed. This status conference will undoubtedly have consequences for a variety of potential motions *in limine*, jury instructions, and for trial itself. Given the gravity and import of these potential consequences, additional time is being requested to conduct that status conference and to incorporate the Court's position into this array of pre-trial filings, all in the interests of Mr. Hari's right to present a vigorous defense against these very serious allegations brought by the government.

## III.   Discovery Issues

Federal charges were first brought by complaint against Mr. Hari on March 13, 2018 (Docket No. 1); disclosures were first ordered to be delivered to Mr. Hari on February 21, 2019 (Docket No. 63).

Since December 27, 2019, over the course of the past month, the government has provided thousands of additional pages of discovery. It is evident that at least some of the newly provided discovery, all of which falls within the meaning of Federal Rule of Criminal Procedure 16 discovery, has been in the possession of the government since 2018. Other important disclosures have been in the government's possession since at least mid-2019.

The best examples of the governments' disclosures are laid out in the recently disclosed "expert notice" and the corresponding index. *See attached* Exhibit 1.

1) The government intends to present DNA evidence through Forensic DNA Biologist Amanda N. Bakker. Her testing was completed and her reports were written on August 8, 2019 and August 9, 2019, but they were not provided to the Office of the Federal Defender until December 27, 2019. This newly received discovery consists of approximately 540 pages including results of DNA analysis, electropheragram comparisons, and probabilistic genotyping performed on each item tested and the likelihood ratio corresponding to each DNA sample from Joe Morris and Michael Hari.

2) The government intends to present latent fingerprint evidence through Forensic Examiner Jacqueline Slebrch. Ms. Slebrch's report was completed on August 20, 2019. It was not disclosed to the Office of the Federal Defender until December 27, 2019.

3) The government intends to present the testimony of Dr. Jason Barrow, a Hazardous Device Examiner. Dr. Barrow's reports were completed on October

17, 2019 and October 22, 2019. Yet, these reports were not disclosed to the Office of the Federal Defender until January 15, 2020 and January 23, 2020.

4) The government intends to present the testimony of Forensic Chemist Raleigh W. Parrott II regarding his Explosives Chemistry reports. Two of Mr. Parrott's reports were completed on January 5, 2018 and September 5, 2018, but were not provided to the Office of the Federal Defender until December 27, 2019. The first report was provided approximately two years after it was written, the second report was provided fifteen months after it was written.

It is unknown to the defense why these materials are only being disclosed on, effectively, the eve of trial.

Additionally, in the last month, the Office of the Federal Defender has received the following:

| Disclosure Date | # of PDFs | # of Pages |
| --- | --- | --- |
| 12/27/2019 | 418 | 2,848 |
| 01/15/2020 | 143 | 690 |
| 01/17/2020 | 86 | 2,205 |
| 01/23/2020 | 338 | 4,624 |
| 01/28/2020 | 245 | 3,038 |
| 01/31/2020 | 175 | 555 |
| TOTAL | 1,405 | 13,960 |

In each of the above-listed disclosures, the government has simply provided a list of the Bates stamped numbers with no indication of what each PDF document contains and on January 17, 2020 they provided nothing at all. *See attached* Exhibit 2.

The Department of Justice and Administrative Office of the U.S. Courts created the Joint Working Group on Electronic Technology in the Criminal Justice System (JETWG) in 1998 to address the best practices for the efficient and cost-effective management of post-indictment ESI discovery between the Government and defendants charged in criminal cases.[1]

In February 2012, JETWG issued a report (hereinafter "Report") describing the best practices that should be employed for managing electronically stored information (ESI). The recommendations of the Report aim to create greater efficiency and cost savings for the entire criminal justice system, noting, "which is especially important for the representation of indigent defendants."[2]

In its recommendations, the Report explains that the producing party should provide a table of contents so the parties may know what has been produced and where it can be located.

> If the producing party has not created a table of contents prior to commencing ECI discovery production, it should consider creating one describing the general categories of information available as ESI discovery. In complex discovery cases, a table of contents to the available discovery

---

[1] U.S. DEP'T OF JUSTICE AND ADMIN. OFFICE OF THE U.S. COURTS JOINT WORKING GROUP ON ELECTRONIC TECHNOLOGY IN THE CRIMINAL JUSTICE SYSTEM, RECOMMENDATIONS FOR ELECTRONICALLY STORED INFORMATION (ESI) DISCOVERY PRODUCTION IN FEDERAL CRIMINAL CASES (2012), *available at* https://www.justice.gov/archives/dag/page/file/913236/download (last accessed January 26, 2020).

[2] *Id*. at Introduction, pg. 1.

materials can help expedite the opposing party's review of discovery, promote early settlement, and avoid discovery disputes, unnecessary expense, and undue delay.[3] Because no single table of contents is appropriate for every case, the producing party may devise a table of contents that is suited to the materials it provides in discovery, its resources, and other considerations.[4]

In the case at hand, the Federal Defender's Office has now received approximately 35,000 BATES stamped pages in discovery. Some PDF disclosures only involve a few documents while other PDFs involve hundreds of pages. In both, the documents have only been referred to by the BATES numbers and no indices were provided. The Bates numbers have not been provided in chronological order.

On January 27, 2020, Counsel for Mr. Hari asked the government for any table of contents, index or key in their possession. Counsel cited the above-noted Report and raised their concern that they did not know what discovery they had received and what they had not received. The government has responded that no such table of contents, index or key exists.

As is apparent from the above descriptions, the issues with the discovery are multiple: its sheer volume, its disorganized nature, and its substantive content (e.g., expert testimony). Thus, this request for additional time is being made in order to permit

---

[3] *See*, *e.g.*, *U.S. v. Skilling*, 554 F.3d 529, 577 (5th Cir. 2009)(no *Brady* violation where government disclosed several hundred million page database with searchable files and produced set of hot documents and indices).

[4] U.S. DEP'T OF JUSTICE AND ADMIN. OFFICE OF THE U.S. COURTS JOINT WORKING GROUP ON ELECTRONIC TECHNOLOGY IN THE CRIMINAL JUSTICE SYSTEM, *supra* note 1, at 2 ("A table of contents is intended to be a general, high-level guide to the categories of ESI discovery. Because a table of contents may not be detailed, complete, or free of errors, the parties still have the responsibility to review the ESI discovery produced. With ESI, particular content usually can be located using available electronic search tools. There are many ways to construct a general table of contents.").

sufficient time for Mr. Hari to review this material (a project that by itself will consume significant time, in part due to the Protective Order already in place by motion of the government) and to permit defense counsel at least a minimal opportunity to conduct appropriate investigation including the possible use of its own experts following its own review of these voluminous materials.

**IV.   This Motion is plainly within the Interest of Justice and Mr. Hari's Right to a Fair Trial**

The charges levied against Mr. Hari are among the most serious that can be alleged by the government. Not only are the charges of the most serious order, the potential penalties are just as weighty as could be, short of a capital prosecution. This is a highly complex and relatively unusual prosecution involving considerable yet unorganized discovery that continues to be disclosed on an almost-daily basis. Under these circumstances, Mr. Hari's rights to a fair trial and to present an effective defense are hampered to such a degree that the only apparent remedy would be a brief continuance to accommodate how the government has chosen to bring its case against Mr. Hari.

**V.   Conclusion**

For all the above reasons, Mr. Hari respectfully requests a nine-week continuance of trial to April 27, 2020, so he and his counsel may review the recently provided discovery, consult with any necessary experts, and prepare for trial accordingly.

A Statement of Facts, signed by Mr. Hari, will promptly follow this motion and will move to exclude nine weeks from the Speedy Trial Act computations pursuant to 18 U.S.C. § 3161(h)(7)(A).

This Motion is based on all files, records, and proceedings herein.

Dated: February 4, 2020                 Respectfully submitted,

*s/Shannon Elkins*

SHANNON ELKINS
Attorney ID No. 332161
Attorney for Mr. Hari
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

*s/James S. Becker*

JAMES S. BECKER
Attorney ID No. 388222
Attorney for Mr. Hari
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415