UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
District Court File No. 18-150 (DWF/HB)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | **RESPONSE IN** |
| Plaintiff, ) | **OPPOSITION TO** |
| ) | **DEFENDANT'S MOTION** |
| v. ) | **FOR A NINE-WEEK** |
| ) | **CONTINUANCE OF** |
| MICHAEL HARI, ) | **THE TRIAL DATE** |
| ) | |
| Defendant. ) | |

The United States of America, through its attorneys, Erica H. MacDonald, United States Attorney for the District of Minnesota, and Assistant United States Attorneys Julie E. Allyn, John Docherty, and Allison Ethen, responds as follows in opposition to the defendant's eve of trial motion for a nine-week continuance of the trial.  The defense continuance motion was filed with this Court on Tuesday, February 4, 2020, as CM/ECF Document No. 166.

## CHRONOLOGY

A chronology of some key dates in this trial may be helpful to evaluating the defense motion.

On August 5, 2017, the Dar al-Farooq Islamic Center in Bloomington, Minnesota was bombed by the defendant and two co-conspirators, Michael McWhorter and Joe Morris.  Following months of investigation, an anonymous tip to federal law enforcement in Illinois eventually led to the arrest of defendant and several others in the Central District of Illinois.  On April 4, 2018, a federal grand jury in that district indicted the defendant and

1

others for illegal possession of a machine gun. On May 2, 2018, the same grand jury added a charge of attempted arson, charging defendant and others with throwing an incendiary device into the Women's Health Practice, a clinic that offered abortion services, in Champaign, Illinois. The superseding indictment also charged the defendant and others with violating the Hobbs Act, alleging violent interference with commerce by perpetrating armed robberies of Wal-Mart stores in the towns of Watseka and Mount Vernon, Illinois, conducting armed home invasions in Ambia, Indiana, and damaging railway tracks near the Illinois town of Effingham, an act of sabotage that had been followed up with a threat to the railway that unless a ransom was paid, more acts of sabotage would follow; and planting explosives on the property of a resident of Clarence, Illinois.

In Minnesota, a grand jury returned the indictment in this case on June 20, 2018, which charged the defendant, plus Michael McWhorter and Joe Morris, with civil rights and explosives charges related to the Dar al-Farooq bombing. Defendants Morris and McWhorter resolved all the charges against them, in both Illinois and Minnesota, in a single Minnesota proceeding held before this Court on January 24, 2019.

The defendant's trial requests have been constantly changing. A year ago, on February 4, 2019, defendant sought to block his transfer from Illinois to Minnesota, stating he wished to be tried in Illinois first. On June 3, 2019, the defendant responded to the government's request to move the July 15, 2019 trial date in the Illinois case to a date following the Minnesota trial with accusations of governmental bad faith.

On August 1, 2019, the defendant changed his mind and asked that his Minnesota trial take place before his Illinois trial. His request was granted.

On October 7, 2019, this Court ordered trial of the Minnesota case to begin in St. Paul on February 20, 2020.  Trial documents, such as jury instructions and proposed *voir dire* questions, motions *in limine*, exhibit and witness lists, and trial briefs were ordered to be filed no later than 4:30 p.m. on Thursday, February 6, 2020.

On December 26, 2019, the Minnesota prosecutors notified defense counsel that they had discovered that summaries of recorded phone calls, made while defendant was detained in Illinois, between the defendant and his Minnesota counsel, had been inadvertently forwarded to the Minnesota prosecutors.  No member of the Minnesota trial team had been exposed to any of the content of the calls.  The U.S. Attorney's Office appointed a senior prosecutor to investigate and that person provided a detailed letter to the defense by hand delivery on January 9, 2020.  Following an amicable conversation between defense counsel and the prosecutors on December 26, 2019, in which the prosecutors disclosed the issue, nothing further was heard of substance from the defense concerning the attorney-client issue until the February 4, 2020 continuance request.[1]  No motions were filed, no requests for further information were forthcoming, and no substantive questions were asked.

On January 6, 2020, in yet another reversal of position, the defendant filed a motion to change venue of his Illinois case to Minnesota. Had that motion been granted, a continuance of the Minnesota trial might have been required.  At the conclusion of a

---

[1] Defense counsel did ask what the timeline was for receiving the relevant disc of call summaries from the government, but there were no substantive communications about the issue.

hearing on February 4, 2020, however, Senior Judge Michael Mihm in the Central District of Illinois denied the motion from the bench.  Within a few hours, the defense filed the instant motion for a nine week-long continuance.  And, in yet one more change of the defendant's constantly evolving position on which district should try him first, he now wants a Minnesota trial date of April 27, 2020, which is after his currently-scheduled Illinois trial date of March 30, 2020.

## DEFENDANT'S CLAIMS ABOUT DISCOVERY ARE INACCURATE

Defendant's discovery statistics are inaccurate.  Upon receipt of the defense motion, the U.S. Attorney's Office reviewed the volume of disclosures made over the time period covered by the statistics set out in defendant's motion.  Defendant's statistics are nearly double those of the prosecution.  It would have been preferable had defendant consulted with the prosecution, because this discrepancy might have been resolvable. Over the entire course of this litigation, whenever the defense has approached the U.S. Attorney's Office with requests about where in the disclosures to find certain items, the U.S. Attorney's Office has responded, usually with specific Bates numbers.  Two examples of this are attached in a sealed appendix to this response.  Many more requests have been answered less formally, by email.

In addition, the defense complains that certain laboratory reports were received only recently.  In some cases they are correct.  All but one of the expert disclosures identified in the defense motion were made during the last week of December 2019, about six weeks ago, and are only now being identified by the defense as a problem.  The defense also omits from their motion that a number of expert reports were disclosed to them a year ago, and

then were re-disclosed in a consolidated format in the last week of December 2019. The defense has also identified as late-received laboratory reports the work of FBI forensic scientists Raleigh Parrott and Jason Barrow. These two scientists will testify only as to Rule 404(b) evidence. The work of FBI fingerprint examiner Jacqueline Slebrch is also called out specifically in the defense motion. Ms. Slebrch's report indicates that no fingerprint identifications were effected. When Ms. Slebrch testifies, it will be only to give the jury a short primer on the general principles of fingerprint identification, and to the inherent difficulty of attempting to perform fingerprint identification on fragments of an exploded bomb. In sum, of the four forensic reports specifically identified in the defendant's motion, two are 404(b) witnesses, and one is a negative results witness. The remaining report, of Amanda Bakker, was disclosed at the end of December.

It should also be noted that when the FBI Laboratory provides disclosure materials to federal prosecutors, they include a substantial amount of extraneous material, such as standard operating procedures of the laboratory. The government disclosed those extraneous materials when it turned laboratory documents over to the defense in this case. The documents that truly matter to this trial – the scientist's report, the scientist's lab notes, and the scientist's curriculum vitae – are only a part of the disclosures in this case.

The government acknowledges that the discovery in this case is substantial. It is not, however, nearly as substantial as the discovery typically associated with a cybercrime or fraud case, which can run to many times the volume of discovery in this case. This is, at bottom, a violent crimes conspiracy case, with the volume of discovery that is expected for such a case.

### GRANTING THIS EVE OF TRIAL CONTINUANCE MOTION WILL RESULT IN SUBSTANTIAL HARDSHIP, AND PARTICULARLY HARD HIT WILL BE THE MEMBERS OF THE DAR AL FAROOQ MOSQUE

This case has been pending for a year and a half, and the defendant has been in Minnesota pending trial for one year.  The issue of inadvertent disclosure of summaries of calls between the defendant and his counsel came up six weeks ago, and there had been no motion filed by the defense until yesterday, February 4, 2020 – and even then, what the defense filed was a motion for a continuance that contained within it a statement that motions about the inadvertent disclosure might be filed in the future.  The defense claims about laboratory discovery are matters that have been known to the defense for six weeks.  It was only upon getting a negative result in the Central District of Illinois on their motion for change of venue that the defense filed a continuance motion in this Court.

The prosecutors have recently been conducting their last pretrial interviews with witnesses.  (Reports of those interviews are being written and will be disclosed.)  The interviews with Dar al-Farooq congregants have been particularly poignant.  The impact of this crime on people who were in the mosque when it was bombed, and on members of the larger Dar al-Farooq community, run very deep and are still having a serious impact on people's lives.  Several of these community members expressed the hope that this trial would soon be behind them, and that having the trial concluded would help them move on.  The effect of a nine week continuance on them should be a factor in the Court's decision.

### CONCLUSION

The United States has been willing to work with the defense in the past to assist with questions about our disclosures, and we will continue to do so.  The motion for a

continuance was only filed after a change of venue motion in Illinois was denied. It comes only two weeks before trial but is premised, in large part, on events that occurred six weeks ago. A continuance would work a hardship on members of the Dar al-Farooq community, and it comes in the context of a long history of the defendant trying to manipulate the scheduling of his trial. The motion should be denied.

Date: February 5, 2020                              Respectfully Submitted,

ERICA H. MacDONALD
United States Attorney

*s/ John Docherty*

BY:   JOHN DOCHERTY
Assistant United States Attorney
Atty. Reg. No. 017516X

JULIE E. ALYNN
Assistant United States Attorney
Atty. Reg. No. 256511

ALLISON ETHEN
Assistant United States Attorney
Atty. Reg. No. 0395353