UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Crim. No. 18-150(1) (DWF/HB)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br><br>　vs.<br><br>MICHAEL HARI,<br>　　　　Defendant. | **DEFENDANT'S MOTION**<br>***IN LIMINE* TO EXCLUDE**<br>**IMPEACHMENT EVIDENCE** |

Michael Hari moves to exclude the government's anticipated offer of impeachment evidence at trial. This motion is particularly focused upon cross-examination queries, should Mr. Hari offer testimony in his own defense. The grounds are specified below.

**Background**

1.　This case (Minnesota Case) is interrelated with a pending prosecution in the Central District of Illinois (Illinois Case). Defendant Hari moved to transfer the Illinois Case to this Court for consolidation, partly out of concern the government would seek to import the Illinois Case evidence into the Minnesota Case, without a full and fair opportunity for dispute and rebuttal. But the government resisted the inter-district transfer, and so the cases remain separate.

2.　As anticipated, the government has requested a wholesale import of the Illinois Case evidence into trial of this Minnesota Case, in the form of an expansive proposed Other-Acts Evidence (OAE) presentation to include:

1

| OA# | Government Description |
|---|---|
| **OAE #1** | **November 7, 2017 Attempted Bombing of Women's Health Practice (IL)**<br>The government claims that Michael Hari, McWhorter, and Morris used a rented vehicle for travel to a women's health clinic several months after the Actus Reus above, and therein placed a thermite pipe bomb (not gunpowder bomb with diesel-gasoline accelerant) which failed to detonate. The alleged motive was opposition to abortion. The proposed evidentiary sources include McWhorter and Morris, as well as a claimed expert witness in the field of bombs, photographs, car rental records, and more. This alleged event is charged in the Illinois indictment. The proffered relevance to the case at hand is "signature" (or identity), pattern, and plan. (MN # 181 at 7, 9-14; IL #39 at 4). |
| **OAE #2** | **December 4, 2017 Robbery of Watseka Walmart (IL)**<br>The government claims that Michael Hari, McWhorter, and Morris used a rented vehicle for travel to a Walmart store in Illinois, where the group committed an armed robbery. The alleged motive was the notion that Walmart funds certain groups whose political beliefs the defendants disapproved of, as well as pecuniary gain. The government is unclear as to the proposed evidentiary sources for these claims, but it has said that Walmart employees will not be called, and has generally suggested that McWhorter and Morris will offer testimony on the incident. This alleged event is charged in the Illinois indictment. The proffered relevance is motive, intent, plan, and identity. (MN #181 at 14-16; MN #164 at 2; IL #39 at 3). |
| **OAE #3** | **December 16, 2017 Private Residence Robbery (IN)**<br>The government claims Michael Hari, McWhorter, and Morris traveled to a private residence in Indiana, where they entered the home and robbed the occupants. The government claims the motive for this robbery was opposition to illicit drug commerce, anti-immigrant animus, and pecuniary gain. The government is unclear as to the proposed evidentiary sources for these claims, but it has generally suggested that McWhorter and Morris will offer testimony on the incident. This alleged event is charged in the Illinois indictment. The proffered relevance is the incident "illustrates that it is the defendant who makes the plan, chooses the target, and proffers a justification for criminal acts." (MN #181 at 16-17; MN #164 at 2; IL #39 at 3). |
| **OAE #4** | **December 17, 2017 Attempted Robbery of Mount Vernon Walmart (IL)**<br>The government claims Michael Hari, McWhorter, Morris, and "others" traveled to a Walmart and attempted to rob the store. The government does not supply many details of this alleged incident (e.g., whether it involved a rental vehicle, whether a weapon was used, etc.). And the proffered relevance is opaque as well, though one might infer that the relevance is the similar to OAE #2. The government is also unclear as to the proposed evidentiary sources for these claims, but it has generally suggested that McWhorter and Morris will offer testimony on the incident. This alleged event is charged in the Illinois indictment. (MN #181 at 14-16; MN #164 at 2; IL #39 at 3). |
| **OAE #5** | **January 18, 2018 Attempted Extortion of Canadian National Railway (IL)**<br>The government claims Michael Hari, McWhorter, Morris damaged railroad tracks owned by the Canadian National Railway, and threatened that organization with more such damage unless digital currency were to be released to the defendants. The alleged motive was pecuniary gain. The government is also unclear as to the proposed evidentiary sources for these claims, but it has generally suggested that McWhorter and Morris will offer testimony on the incident. The proffered relevance is plan, motive, and identity. (MN #181 at 17-18; MN #164 at 3; IL #39 at 3-4). |

| | |
|---|---|
| **OAE #6** | **February 18, 2018 Attempted Frame-up of Neighbor (IL)**<br>The government asserts that Michael Hari directed a false tip to the FBI, claiming that his neighbor had bomb-making materials stored on his property. According to the government, FBI agents did find bomb-making materials on the property but determined that the neighbor had no knowledge or role with respect to those items. The government claims the FBI learned that Mr. Hari had an acrimonious relationship with the neighbor. The government is unclear as to the evidentiary sources for this evidence, though it does mention a copy of the tip recovered from Mr. Hari's computer. This alleged event is charged in the Illinois indictment. (MN #181 at 18-21; IL #39 at 4). |
| **OAE #7** | **February 27, 2018 (and prior) Movement and Possession of Firearms (IL)**<br>The government asserts that Michael Hari and others possessed firearms—some modified to fire in "fully automatic" mode—in the course of the Actus Reus and Other-Acts-Evidence, above. Further, the government claims that on February 27, 2018, Mr. Hari relocated firearms to the home of the Herbert McWhorter, brother of cooperator Michael McWhorter. This alleged event is charged in the Illinois indictment. (MN #181 at 25-26; IL #39 at 4-5). |
| **OAE #8** | **Feb. 27 to Mar. 10, 2018 Flight to Countryside (IL)**<br>The government asserts that Michael Hari fled to the Illinois countryside, along with cooperator-witnesses McWhorter, Morris, and Ellis Mack. It is claimed the impetus for the flight was law enforcement investigative activity in Clarence, Illinois. It is claimed that, during the alleged exile, the above persons made a video recording to be posted online, complaining of a law enforcement takeover, and requesting assistance from others. The four eventually returned to Clarence, at which point they were arrested by law enforcement officials. (MN #181 at 21-22, 24-25). |
| **OAE #9** | **February 13, 2019 Attempted Escape from Custody (OK)**<br>The government asserts that Michael Hari attempted to escape from official custody while being transported in connection with the multi-district proceedings at issue here. (MN #181 at 23). |

3. Michael Hari has filed a memorandum in opposition to the government's proposal for introduction of the above Other-Acts Evidence. By its opposition memorandum, Mr. Hari has provided an Other-Acts breakdown for each of the proposed Acts, showing (1) why each item is of marginal probative value to the issues for trial in the Minnesota Case (the alleged Actus Reus and charged offenses), and (2) why any limited probative value is outweighed by the dangers listed in FRE 403. Mr. Hari submits that most, if not all, of the proposed Other-Act-Evidence should be excluded from trial.

## Discussion

In this motion, Michael Hari moves for an order excluding the above Other-Act-Evidence as impeachment evidence, in addition to substantive evidence for the government's case-in-chief. Courts are permitted to exclude anticipated impeachment evidence via pretrial motion. *See Luce v. United States,* 469 U.S. 38, 39-43 (1984).

Preliminarily, it should be observed that at this stage, it is not possible to predict whether Mr. Hari will offer his own testimony at trial, or even whether any defense case will be presented at all. The matter depends entirely upon a contingency, *i.e.,* the strength or weakness of the government's case-in-chief. But assuming Mr. Hari *does* offer his own testimony as part of a defense case, the government should be precluded from offering the above Other-Acts—or similar topics—as impeachment evidence. This is so whether in the course of cross-examination, any rebuttal case, or other phase of trial.

### A.   Proper Scope of Cross-Examination

Under the Federal Rules of Evidence (FRE), trial courts exercise control over the presentation of evidence and examination of witnesses, in the interests of truth-determination and economy. FRE 611(a). This includes confining the scope of impeachment and cross-examination to its proper function, which is testing the witness's substantive testimony and credibility. FRE 611(b). To this end, an opponent seeking to impeach a witness is not permitted to prove Other-Acts via extrinsic evidence, but may inquire about Other-Acts on cross-examination to the extent the Other-Act is probative of truthfulness. FRE 608(b).

Here, assuming that Mr. Hari offers testimony at trial, it is fair to assume the

government will offer and/or attempt to elicit impeachment evidence via cross-examination. Further, the defense expects the government will offer and/or inquire into some or all of the above Other-Acts, whether or not the Other-Acts are excluded from the government's case-in-chief.

However, the defense expects that any direct testimony offered by Mr. Hari will be confined to the Actus Reus at issue here, *i.e.,* whether or not he participated in the August 5, 2017 bombing of the Dar al-Farooq Islamic Center. The above-alleged Other-Acts would be beyond the scope of that sort of purely factual testimony. *See, e.g., United States v. Crenshaw*, 359 F.3d 977, 1002-03 (8th Cir. 2004) (introduction of Other-Acts beyond the scope of permissible cross-examination as to alibi witness).

Moreover, any given impeachment-evidence item is subject to FRE 403 balancing, *i.e.,* weighing its probative value against its case-specific dangers. *United States v. Kenyon*, 481 F.3d 1054, 1063 (8th Cir. 2007). The impeachment evidence must be excluded where the item's "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FRE 403.

Here, as discussed in defendant's opposition to Other-Acts Evidence, the proffered Other-Acts: have (at best) marginal probative value with respect to the Actus Reus at issue for trial; have marginal relevance to Mr. Hari's credibility; are offered as self-corroboration of the government witnesses; and all postdate the offense at issue. And the FRE 403 dangers of the Other-Acts are stark: waste of time on complicated collateral matters; confusion of the issues for trial; unfair prejudice to the defendant from the intimation that

defendant is a dangerous person who must be locked away for the sake of public safety, regardless of the evidence presented on the charged offenses.

For the above reasons, Mr. Hari requests a pretrial order, precluding the government from offering the above Other-Acts as impeachment evidence during cross-examination, should he testify on his own behalf at trial.

### B. Self-incrimination

The Fifth Amendment provides that that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const., Am. V. The self-incrimination privilege extends to impeachment via cross-examination, concerning Other-Acts involving pending criminal charges. *See, e.g., United States v. Burch,* 490 F.2d 1300, 1303 (8th Cir. 1974). A criminal defendant who testifies in his own defense waives the self-incrimination privilege with respect to that testimony; but the privilege is *not* waived with respect to Other-Acts that fall "outside the scope of relevant cross-examination." *United States v. Musk,* 719 F.3d 962, 965 (8th Cir. 2013).

As shown above, the government's proffered Other-Acts will fall "outside the scope of relevant cross-examination." And many, if not all, of the Other-Acts are subject to pending criminal charges in the Illinois indictment. Hence, any attempts by the government to impeach Mr. Hari's testimony via cross-examination as to the above Other-Acts would constitute a violation of the Fifth Amendment self-incrimination privilege. For this additional reason, the anticipated impeachment evidence is prohibited under the law, and the Court should order that it be excluded from trial.

Dated:  March 20, 2020 	Respectfully submitted,

*s/ Shannon Elkins*

SHANNON ELKINS
Attorney ID No. 332161


*s/ James S. Becker*

JAMES S. BECKER
Attorney ID No. 388222

Attorneys for Mr. Hari
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415