UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Crim. No. 18-150(1) (DWF/HB)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **Defendant's Motion in Limine To** |
| | ) | **Exclude Irrelevant and Inflammatory** |
| vs. | ) | **Testimony and Terms** |
| | ) | |
| MICHAEL HARI, | ) | |
| | ) | |
| Defendant. | ) | |

Michael Hari, by and through his attorneys, Shannon Elkins and James Becker, hereby respectfully asks the Court for an order prohibiting the government and its witnesses from referring to, introducing into evidence, attempting to introduce into evidence, or stating for any purpose in the presence of the prospective jury panel or jury, during voir dire, opening statement, the presentation of evidence, or closing argument, any irrelevant, speculative, unduly prejudicial, propensity, bad-character, hearsay, unconstitutional, or otherwise inadmissible testimony and exhibits, as set forth specifically below.

**The Legal Landscape**

It is a bulwark of our criminal justice system that irrelevant, prejudicial evidence shall be excluded from a factfinder's consideration. FRE 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the

evidence." FRE 401. Thus, while evidence may tend to make the existence of a fact more probable or less probable than it would be without the evidence, the evidence is not relevant unless the fact to be proved or disproved is material.

Concomitant with their right to be tried solely on relevant evidence, defendants have the constitutional right not to be tried on unfairly prejudicial evidence. FRE 403. Thus, even where a trial court finds that evidence is logically relevant, the evidence must nevertheless be excluded if its probative value would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FRE 403.

The term "unfair prejudice," "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Evidence is unfairly prejudicial "if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect the jury's attitude toward the defendant wholly apart from its judgment as to guilt or innocence of the crime charged." *United States v. Cerno*, 529 F3. 926, 935 (10th Cir. 2008); *see also* Advisory Committee Notes Fed. R. Evid. 403 ("The case law recognizes that certain circumstances call for the exclusion of evidence [that] risks … inducing [a] decision on a purely emotional basis.")

Moreover, when determining whether the probative value of evidence is outweighed by the danger of unfair prejudice, this Court should consider the government's need for the admission of the evidence in making its case. FRE 403. Where highly prejudicial

evidence merely replicates other admitted evidence, it is within the sound discretion of the trial court to exclude it.

With these guiding principles in mind, the defense respectfully asks the Court to exclude the following inadmissible testimony and claims.

### Inadmissible Testimony and Exhibits

1. **Reference to terrorism, domestic terrorism, the Oklahoma City bombing, radical extremists, right-wing extremists, Eric Rudolph, Dylan Roof or other bombings or similar groups or people.**

Mr. Hari moves to prohibit the government and its witnesses from inflaming the passions of the jurors by calling the defendants terrorists or extremists (or words to that effect), referring to the case as one of "domestic terrorism," or invoking the facts and circumstances of other cases or acts of terrorism.

The government has provided discovery replete with references, labels, or accusations that this was an investigation into "domestic terrorism," has referred to the defendants as "right-wing extremists" or "terrorists," and has referred to Mr. Hari as a "sovereign-citizen type."

This type of inflammatory language and rhetoric was commonly used by the law enforcement agents who participated in the investigation of this case. It is foreseeable that this type of language, labels, and rhetoric will likewise be used during the testimony of government witnesses in this case. This may also include references to other federal cases in which bombs, pipe bombs or destructive devices were actually used and where the defendants were labeled as "right wing," "terrorists" or "domestic terrorists," such as

the bombing of the Alfred P. Murrah federal building in Oklahoma City, Oklahoma by Timothy McVeigh on April 19, 1995 or the bombing at the Centennial Olympic Park in Atlanta, Georgia during the 1996 Summer Olympics by Eric Rudolph.

Here, the Court should exercise its discretion to prevent the government from offering evidence in its case-in-chief or permitting its witnesses to testify that the defendants were terrorists or were engaged in the acts of terrorism or any similar language. Nor should the government witnesses be permitted to invoke the facts and circumstances of other cases or acts of terrorism. Such terms risk biasing the jury against the defendants. Recent scientific research on the concept of implicit bias – that is, biases that are the product of "the plethora of fears, feelings, perceptions and stereotypes that lie deep within our subconscious, without our conscious permission or acknowledgment"[1] highlights the potential for unfair prejudice as a result of the jury's exposure to the repetitive use of prejudicial labels.[2]

This case is about an alleged conspiracy to use a destructive device to infringe upon the religious freedom of others. The words "terrorism," "terrorist," and "domestic terrorism" do not appear in the Indictment. The subject of terrorism or any

---

[1] J. Mark Bennett, *Unraveling the Gordian Know of Implicit Bias in Jury Selection: The Problems of Judge-Dominated Voir Dire, the Failed Promise of Batson and Proposed Solutions*, 4 HARV. L. & POL'Y REV. 149 (2010).

[2] *See, e.g., United States v. Ray*, 803 F.3d 244, 259-60 (6th Cir. 2015) ("[W]e recognize the proven impact of implicit biases on individual's behavior and decision making . . . .") (noting the potential for unfair prejudice by the repeated use of the of the word "felon" when "there is no reason a court could not use alternative language"); *United States v. Odeh*, No. 13-CR-20772, 2014 WL 5473042, at *10 (E.D. Mich. Oct. 27, 2014) (unpublished) (excluding use of "terrorist," "terrorist group," and "terrorist activity" because "[t]hese terms are highly prejudicial and create a danger of improperly influencing the jury").

assertion that the defendants are terrorists offers nothing of substance. But even assuming, *arguendo*, that it did, it would arouse deep-seated fears and evoke the passions of jurors such that any probative value would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, and potential to mislead the jury. FRE 403.

**2. Reference to allegations of racial animus unrelated to the case in an attempt to prejudice the jury**

Mr. Hari moves to prohibit the government and its witnesses from inflaming the passions of the jurors by asking witnesses about irrelevant accusations made by others as to Mr. Hari's unproven racial animus. These accusations have no bearing on the elements of the charged offenses in the Minnesota Indictment wherein Mr. Hari and two co-defendants allegedly threw a destructive device in the window of a mosque to infringe on the religious freedoms of the Muslims who attended the mosque and to destroy the religious property.

Within the massive volumes of discovery, there are allegations by peripheral witnesses who accuse Mr. Hari of

1) having a confederate flag in his cubicle at the Ford County Sheriff's Office,
2) once making a racial slur to an African American while at a U-Haul storage facility, and
3) once having a poster in his gun shop which bore a Nazi swastika (which actually was an anti-Nazi war poster).

These accusations are vehemently denied by Mr. Hari, are unproven, have no relevance to the charges in the Minnesota Indictment, and are unfairly prejudicial. FRE 401, 403. To allow these type of accusations or others like them to slip into evidence through the

various witnesses as either direct testimony or hearsay during the government's case-in-chief, would be to allow the presentation of improper FRE 404 character evidence.

## Conclusion

Since the above-noted terms and accusations are overtly prejudicial and have no bearing on the elements of crimes charged, these terms and allegations would only be offered to outrage the jury and prejudice Mr. Hari. As such, these terms and accusations and others like them must be excluded.

Dated: September 29, 2020                     Respectfully submitted,

*s/Shannon Elkins*

SHANNON ELKINS
Attorney ID No. 332161
Attorney for Mr. Hari
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

*s/James S. Becker*

JAMES S. BECKER
Attorney ID No. 388222
Attorney for Mr. Hari
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415