# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                         Criminal No. 18-150(1) (DWF/HB)

        Plaintiff,

v.                                                                      **ORDER AND MEMORANUDM**

Michael Hari,

        Defendant.

## INTRODUCTION

This matter is before the Court on Defendant Michael Hari's ("Hari") Motion for a New Trial based on suppression of exculpatory evidence within the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.  (Doc. No. 434 ("Motion").)  The United States of America (the "Government") opposes the Motion. (Doc. No. 451 ("Govt. Opp.").)  For the reasons set forth below, the Court respectfully denies Hari's Motion.

## BACKGROUND

On June 20, 2018, a federal grand jury charged Hari in a five-count indictment stemming from his role in the August 5, 2017 bombing of the Dar al-Farooq Islamic Center in Bloomington, Minnesota (the "Dar-Farooq bombing").  (Doc. No. 14 ("Indictment").)  The Indictment charged the following:  (1) Intentionally Defacing, Damaging, and Destroying any Religious Real Property Because of the Religious Character of that Property (in violation of 18 U.S.C. §§ 247(a)(1) and 18 U.S.C. § 2);

(2) Intentionally Obstructing, and Attempting to Obstruct, by Force and the Threat of Force, the Free Exercise of Religious Beliefs (in violation of 18 U.S.C. §§ 247(a)(2) and 18 U.S.C. § 2); (3) Conspiracy to Commit Federal Felonies by Means of Fire and Explosives (in violation of 18 U.S.C. §§ 844(h) and 844(m)); (4) Carrying and Using a Destructive Device During and in Relation to Crimes of Violence (in violation of 18 U.S.C. § 924(c)(1)(B)(2) and 18 U.S.C. § 2); and (5) Possession of an Unregistered Destructive Device (in violation of 26 U.S.C. §§ 5845(a) and 5861(d), and 18 U.S.C. § 2).[1]  (*Id.*)  While the Indictment alleges and focuses on Hari's leadership in planning and directing the August 5, 2017 bombing of the Dar al-Farooq Islamic Center in Bloomington, Minnesota, it also alleges that "[Hari] constructed a destructive device, specifically, a pipe bomb."  (*Id.* at 3.)

On December 9, 2020, a jury convicted Hari of all five counts.  (Doc. No. 323.) During trial, the Government presented the testimony of 25 witnesses and nearly 300 exhibits.  (Doc. Nos. 279, 282, 285-86, 301, 303, 305, 321, 329.)  The Government's case-in-chief included testimony from codefendants Michael McWhorter ("McWhorter") and Joe Morris ("Morris"), who had previously pleaded guilty to charges related to the Dar al-Farooq bombing.  (Doc. Nos. 43, 44.)  The Government presented Hari as a ringleader who took advantage of McWhorter and Morris, who were younger and less sophisticated than him, to adopt his views and to commit crimes in order to further his agenda.  (Doc. No. 357 at 36-37.)

---

[1]     A separate criminal action was filed in the Central District of Illinois (18-CR-20014).

The defense argued that as cooperator-witnesses, McWhorter and Morris had strong incentives to blame Hari and suggested that their testimony was an attempt to collude against him rather than to accurately recall and relate historical events.  (*See* Doc. Nos. 357 at 53-57; 410 at 2168-69, 2172.)  To this end, Hari's defense emphasized inconsistencies in McWhorter's and Morris's testimony—including who constructed the pipe bomb used to damage the Dar al-Farooq Mosque—and suggested that Hari was a scapegoat in their scheme to avoid responsibility for their actions.[2]  (*See* Doc. No. 410 at 2168-71, 75-76.)

In preparation for McWhorter's and Morris's testimony, the Government provided discovery to Hari which included reports from the Sherburne County Jail, where both codefendants were held prior to trial, summarizing what they believed to be all of McWhorter's and Morris's disciplinary actions.  (Govt. Opp. at 2.)  On January 27, 2021, the Government received a copy of McWhorter's preliminary presentence investigation report (Doc. No. 343 ("PSR"))) which contained an account of additional disciplinary violations that McWhorter received while at the Sherburne County Jail.  (*Id.*)  Specifically, the PSR explained that on two separate occasions, the Sherburne County corrections officers had located "battery packs containing nails and pencil lead which had

---

[2]      McWhorter testified that at Hari's direction, he and Morris broke a window and threw a pipe bomb into the Dar al-Farooq Mosque while Hari remained in the vehicle as a getaway driver.  (*Id.* at 633-641.)  McWhorter specifically denied having constructed the bomb.  (*Id.* at 648.)  He stated that Hari constructed the bomb.  (*Id.*)

Morris offered a similar account with respect to Dar al-Farooq bombing (Doc. No. 360 at 903-26) but testified that Hari and McWhorter constructed the bomb together. (Doc. No. 408 at 1044-45.)

wires protruding from the battery packs," in McWhorter's cell.[3]  (PSR ¶ 6 ("Battery Pack Incidents").)  The Government followed up with the Federal Bureau of Investigation and learned that the Bureau had not forwarded several jail incident reports, including the Battery Pack Incidents.[4]  (Doc. No. 435 ("Follow-Up") at 1.)  On March 22, 2021, the Government notified Hari that it had failed to disclose the reports prior to trial.  (*Id.*)

Hari now moves for a new trial on the grounds that the Battery Pack Incidents were favorable, material evidence, that the Government wrongfully suppressed.  (Motion at 15-24; *see also* Reply at 3-8.)

## DISCUSSION

### I.    Legal Standard

Federal Rules of Criminal Procedure 33(a) provides that a Court may grant a new trial "if the interests of justice so requires."  Fed. R. Crim. P. 33(a).  This is a discretionary decision that rests with the Court.  *United States v. Dodd*, 391 F.3d 930, 934 (8th Cir. 2004).  "A district court may grant a new trial under Rule 33 only if the evidence weighs so heavily against the verdict that a miscarriage of justice may have occurred."  *United States v. McClellon*, 578 F.3d 846, 857 (8th Cir. 2009) (citation

---

[3]    According to David Isais, Jr., the Major of the Sherburne County Jail, "inmates utilize the radio wires, battery packs and pencil lead to create heat in order to light cigarettes, smoke K2, create tattoos, or use inside their radios."  (Doc. No. 452 ("Isais Statement") at 1.)  He also indicated that use of the device was not perceived as a threat to the safety or security of the facility.  (*Id.*)

[4]    The Follow-Up investigation revealed that the Battery Pack Incidents occurred on December 19, 2019 and January 21, 2020.  (Follow-Up at 2-5.)  For each incident, McWhorter received minor violations accompanied by loss of privileges such as use of the television and the library.  (*Id.*)

omitted).  "When faced with a motion for new trial . . . a district court is permitted to weigh the evidence and judge witness credibility for itself in determining if there may have been a miscarriage of justice such that a new trial is required."  *United States v. Samuels*, 543 F.3d 1013, 1019 (8th Cir. 2008).  Although the Court has broad discretion in deciding a motion for new trial, it "must exercise the Rule 33 authority sparingly and with caution."  *McClellon*, 578 F.3d at 857 (quotation marks and citation omitted).

Hari timely filed the Motion within the three years allotted for claims grounded in newly discovered evidence.  Fed. R. Crim. P. 33(b)(1).  Typically, to obtain a new trial based on newly discovered evidence, the Court must find that:  (1) the evidence was first discovered after trial; (2) the failure to find the evidence before trial was not due to lack of diligence; (3) the evidence is material; (4) it is more than cumulative or impeaching; and (5) the evidence is likely to produce an acquittal if the court grants a new trial. *United States v. Delgrosso*, 852 F.3d 821, 826 (8th Cir. 2017).  When, as here, a Rule 33 Motion is based upon suppression of exculpatory evidence, the Court assesses whether there is a violation of what is commonly known as the *Brady* rule.  *See, e.g.*, *United States v. Carman*, 314 F.3d 321, 324 (8th Cir. 2002).

"Under *Brady*, the State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment."  *Smith v. Cain*, 565 U.S. 73, 75 (2012).  "This duty extends not only to evidence of which a prosecutor is aware, but also to material 'favorable evidence known to the others acting on the government's behalf in the case, including the police.'"

*United States v. Robinson*, 809 F.3d 991, 996 (8th Cir. 2016) (quoting *Kyles v. Whitley,* 514 U.S. 419, 437 (1995)).

"To establish a claim under *Brady*, [Hari] must establish that (1) the government suppressed evidence; (2) the evidence was favorable to him; and (3) the evidence was material to the outcome of the trial." *United States v. Garrett*, 898 F.3d 811, 816 (8th Cir. 2018). "Evidence favorable to the defendant includes not only exculpatory evidence, but also evidence that tends to impeach government witnesses." *United States v. Baez*, 983 F.3d 1029, 1044 (8th Cir. 2020). Exculpatory evidence includes that which tends to raise doubt about the defendant's guilt. *California v. Trombetta*, 467 U.S. 479, 485 (1984).

Evidence is material only if there is a "reasonable probability that, had it been disclosed, the result of the proceeding would have been different." *Garrett*, 898 F.3d at 816 (citing *Robinson*, 809 F.3d at 996). "A reasonable probability is a probability sufficient to undermine the reviewing court's confidence in the outcome of the proceeding." *United States v. Tate*, 633 F.3d 624, 630 (8th Cir. 2011) (internal quotation marks and citation omitted). "[I]f the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." *United States v. Agurs*, 427 U.S. 97, 112-13 (1976).

The Government does not contest that it inadvertently suppressed the Battery Pack Incidents evidence.  (Govt. Opp. at 11.)  The Court therefore turns to whether the suppressed evidence was favorable to Hari and material to the outcome of his trial.

## A.    Favorability

Hari argues that the Battery Pack Incidents evidence was favorable to him because "it could have and would have been offered by the defense to show that McWhorter was the sole bomb-maker, which in turn undermines the government's theory of the case and presents a cascade of defendant-favorable inferences."  (Motion at 18; *see also* Reply at 4-5.)  Hari further argues that the suppressed evidence would have impeached McWhorter's statements, including that he did not create the bomb used in the Dar al-Farooq bombing.  (*Id.* at 19; Reply at 6.)  Finally, Hari contends that the Government's failure to disclose the Battery Pack Incidents deprived him of opportunities to investigate McWhorter's history and background with respect to munitions, and in turn deprived him of additional lines of defense.  (*Id.* at 19-20.)

The Government argues that McWhorter's possession of modified batteries in his jail cell over two years after the Dar al-Farooq bombing has no exculpatory value because the battery packs were not "incendiary devices," and therefore could not support a theory that McWhorter constructed the bomb used to damage the Dar al-Farooq Mosque.[5]

---

[5]    The Government relies on the definition of "incendiary device" in 18 U.S.C. § 232(5) to argue that the Battery Pack Incidents involved "common jailhouse contraband," and that "there is no evidence in the record, or even outside the record, to support the notion that the item was an explosive, that McWhorter was planning to blow up the jail with it, or even that it was capable of being used as a fire bomb."  (Govt. Opp. at 6.)

(Govt. Opp. at 5-6.)  The Government further argues that even if the battery packs were incendiary devices, the Battery Pack Incidents are not exculpatory because "the codefendants' knowledge of bombs, firearms, or other incendiary devices does not negate [Hari's] presence and involvement in the offenses for which [Hari] was convicted."[6]  (*Id.* at 7-8.)

The Government also contends that the Battery Pack Incidents evidence is not impeaching because Hari "has not shown that the jail reports are impeachment evidence"

---

Under 18 U.S.C. § 232(5), an "incendiary device" is defined as:  (A) dynamite and all other forms of high explosives, (B) any explosive bomb, grenade, missile, or similar device, and (C) any incendiary bomb or grenade, fire bomb, or similar device, including any device which (i) consists of or includes a breakable container including a flammable liquid or compound, and a wick composed of any material which, when ignited, is capable of igniting such flammable liquid or compound, and (ii) can be carried or thrown by one individual acting alone.  18 U.S.C. § 232(5).

Hari relies on the common definition that an "incendiary device" is something "causing or designed to cause fires" and asks the Court to construe the statutory language expansively to conclude that the battery pack devices are "incendiary devices" within the meaning of 18 U.S.C. § 232(5)(C) which allows for "similar devices" to any incendiary bomb, grenade, or fire bomb.  (Reply at 2.)

Upon review of the record, including the Isais Statement that the battery pack devices are common jail contraband and not perceived as a threat to the safety or security of the jail, the Court declines to construe the statutory language expansively and finds that the battery pack devices do not fall within the meaning of "incendiary device" under 18 U.S.C. § 232(5).

[6]    The Government argues that because the charges for which Hari was convicted hinged on his possession and use of the pipe bomb used in the Dar al-Farooq bombing, it does not matter who built the bomb or how Hari came to possess it.  (Govt. Opp. at 7-8.)

and there is no mechanism under the Federal Rules of Evidence through which his

conduct in jail would have been admissible.[7]  (Govt. Opp. at 8-10.)

The Court finds that the Battery Pack Incidents evidence is not favorable to Hari

because it is neither exculpatory nor impeaching.  As discussed above, the Court finds

that the battery pack devices do not fall within the definition an incendiary device.[8]

Therefore, the Court finds that McWhorter's possession of the battery pack devices does

not raise doubt about Hari's guilt or impeach McWhorter's testimony in any way.

## B.    Materiality

Even assuming the battery packs were incendiary devices, the Court finds that

Hari's Motion fails because he has not shown material prejudice from suppression of the

Battery Pack Incidents.  Specifically, the Court cannot conclude that within the context of

the existing or potential evidentiary record that "the government's evidentiary

suppression undermines confidence in the outcome of the trial."  *Kyles*, 514 U.S. at 434.

Hari argues vehemently that the Battery Pack Incidents implicate McWhorter as

the true bomb-maker, and that if McWhorter made the bomb alone, it casts doubt upon

McWhorter's entire testimony and lends credence to the defense theory that he and

---

[7]     The Government contends that the Battery Pack Incidents are not admissible under
Federal Rules of Evidence 404(b), 608, 609, and 613 because, respectively, they stray
into impermissible propensity evidence, contain no allegations that McWhorter was
deceitful or dishonest, jail discipline records are not criminal convictions, and
McWhorter's possession of the battery packs is an instant of conduct that is not
inconsistent with his trial testimony.  (*Id.* at 9-10.)

[8]     Because the Court finds that the battery packs are not incendiary devices, it need
not address the arguments related to admissibility under the Federal Rules of Evidence.

Morris colluded to frame Hari.  (Motion at 20-25; Reply at 4-5.)  The Government contends that Hari's "conclusory allegations that the entire foundation of the investigation of his crime has been undermined by McWhorter's possession of jail contraband more than two years [after the Dar al-Farooq bombing] ignore the context of the rest of the evidence at trial."  (Govt. Opp. at 12.)

Based upon the Court's evaluation of the cumulative evidence introduced a trial, the Court agrees.  The overwhelming trial evidence, including other witness accounts, business documents, cellular records analysis, forensic computer analysis, and Hari's own writings, corroborates McWhorter's testimony and supports Hari's conviction of all counts.  (*See, e.g.*, Doc. No. 329, Exs. 183, 188, 233, 265, 269, 300, 301, 303, 305, 306, 310, 326.)  Therefore, even if the battery packs were incendiary devices, the Court finds that Hari has failed to show a reasonable probability that the outcome of his trial would have been different if the Government had not suppressed the Battery Pack Incidents evidence.  The verdict was fair and just based upon the totality of the evidence. Accordingly, his Motion fails for this reason as well.

## CONCLUSION

For the reasons set forth above, the Court finds that while the Government inadvertently suppressed evidence, the evidence was neither favorable nor material to Hari.  Thus, Hari's Motion for a new trial is respectfully denied.

**ORDER**

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that Defendant Michael Hari's Motion for New Trial (Doc.

No. [434]) is respectfully **DENIED**.


Dated:  July 15, 2020                    s/Donovan W. Frank
                                         DONOVAN W. FRANK
                                         United States District Judge