UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 18-150(1) (DWF/HB) |
| | ) | |
| Plaintiff, | ) | **DEFENDANT'S RESPONSE TO** |
| v. | ) | **GOVERNMENT'S POSITION AS TO** |
| | ) | **SENTENCING** |
| MICHAEL HARI | ) | |
| (n/k/a Emily Claire Hari), | ) | |
| | ) | |
| Defendant. | ) | |

Defendant Hari respectfully submits this response to the government's position as to sentencing. (ECF 462).

## 1.      The Diversity of Positions

In these proceedings, the Presentence Investigation Report (PSR) has determined the advisory range recommended by the United States Sentencing Guidelines (Guidelines or USSG) as 108-135 months of imprisonment as to Counts 1-3 & 5, plus a consecutive and statutory 30-year term for the § 924(c) charge contained in Count 4. (PSR at 24, ¶ 130). This would effectively yield a range of 468 – 495 months of imprisonment, 39 – 41 years.

Both parties seek a variance from the Guidelines advisory range. Defendant Hari, currently 50 years of age, has asked the Court to fashion a sentence that imposes the 30-year mandatory term, perhaps adding nothing more or at most a modest quantity on the remaining counts. (ECF 464 at 30). This is the sort of blended sentence authorized by the Supreme Court's decision in *Dean v. United States,* 137 S. Ct. 1170 (2017). As noted in the defense opening paper, the proposed minimum sentence is quite severe, would not

1

permit Ms. Hari's release until after reaching the age of 75, and would result in a sentence that would be greater than necessary to accomplish the various goals of sentencing. (ECF 464 at 30).

The government rejects even a Guidelines advisory sentence (which the defense calculates would keep Ms. Hari imprisoned well into her 80s). (ECF 462 at 25). Instead, the government seeks the highly severe sentence of life without the possibility of parole (hereinafter "life-without-parole"). (ECF 462 at 25). These diverse positions—below-Guidelines, within-Guidelines, and far above Guidelines—present a number of challenges for the Court, which are examined below.

2.      **The Sentencing Challenges**

In terms of sentencing law and philosophy, this case presents something of unique challenge. From one perspective, the Court's decision is consequential, but also constrained. Before the Court is a 50-year-old transgender woman. Based upon the counts of conviction and the Court's prior rulings, the possible outcomes include: (a) a statutory minimum 30-year term of imprisonment, on the low end; and (b) a life term, as the upper end. The former means imprisonment extending far into Ms. Hari's seventies. The latter, a prison deathbed. The remaining possibilities form a continuum spanning those poles. As matters currently stand, then, the Court will impose a severe sentence no matter what. The only open question being a matter of degree.

Viewed another way, though, these sentencing proceedings pose a number of difficult challenges for the Court. A jury returned a guilty verdict on the counts of conviction, authorizing this Court to impose a penalty along the above range. (ECF 324).

But in large measure, the verdict was premised on the words of highly incentivized cooperator-witnesses, each of whom were impeached successfully as to their motives, i.e., during cross-examination at trial. (ECF 434). Those same cooperator-witnesses offered Other Acts Evidence (OAE) concerning additional offenses which they claim Ms. Hari orchestrated. (ECF 434 at 6). These claimed Other Acts form the basis for charges that are now pending in the Central District of Illinois, and which Ms. Hari will soon have the opportunity to challenge via jury trial. *United States v. Hari,* No. 2:18-cr-20014 (C.D. Ill.).

All of this matters in these sentencing proceedings because the government rests its argument for the extreme life-without-parole sentence not only upon the specific acts for which the jury returned a guilty verdict in the present case but also upon purported Other Acts which have yet to be proved in the Illinois court. (ECF 462 at 9-10). And upon Ms. Hari's purported "hateful beliefs" and "ideology." (ECF 462 at 5, 23). The rationales offered by the government, combined with the severity of the sought-after life-without-parole sentence, present Constitutional danger zones which, the defense respectfully submits, ought to be avoided.

### 3.      The Gravity of Life Without Parole

A life-without-parole sentence is an extreme and grave penalty, second in severity only to capital punishment. *Graham v. Florida,* 560 U.S. 48, 69 (2010). When imposed, life-without-parole sentencing condemns a human being to a life and death behind the prison gates, rendering good behavior and character development meaningless. *Id.* at 69-70. It is the "denial of hope." *Id.* at 70. For these and many other reasons, such an extreme sentence is rarely imposed within the federal system, either in the form of an officially

labeled "life" term, or a term so lengthy as to be a functional equivalent. USSC, *Life Sentences in the Federal System* (Feb. 2015).[1] Even rarer, according to the literature, are life-without-parole sentences imposed not due to statutory mandate or Guidelines advice, but rather via the sentencing court's choice to impose an upward variance, as the government seeks here. *Id.*

The proliferation of life-without-parole sentences imposed by state and federal courts has received significant criticism in recent years, coming not just from commentators, but jurists as well. *See, e.g., United States v. Angelos,* 345 F.Supp.2d 1227 (D. Utah 2004) & Ashley Nellis, *Throwing Away the Key: The Expansion of Life Without Parole Sentences in the United States,* 23 Fed. Sent. Rep. 27 (Oct. 2010). Others are less concerned about imposition of the penalty as a general matter, but it seems virtually everyone agrees that it is a severe punishment that ought not be lightly imposed. *See, e.g., Graham v. Florida,* 560 U.S. 48, 69-79 (2010).

Hence, before imposing a life sentence, a court must be fully satisfied that nothing short of that extreme step will achieve the goals federal sentencing. 18 U.S.C. § 3553(a). That the judicial sentencing inquiry is reliable and accurate. *See, e.g., United States v. Tucker,* 404 U.S. 443, 447 (1972). And that no unlawful considerations enter into the decision-making process. The government's rationale(s) for seeking life-without-parole are flawed in all of these ways.

---

[1] *Available at* https://www.ussc.gov/research/research-publications/life-sentences-federal-criminal-justice-system

**4.      The First Amendment Problem**

The Supreme Court has long held that the First Amendment generally prohibits the government from imposing criminal penalties "because of disapproval of the ideas expressed." *R.A.V. v. City of St. Paul,* 505 U.S. 377, 382 (1992). Hence, "nonverbal expressive activity can be banned because of the action it entails, but not because of the ideas it expresses." *Id.* at 385.

In its sentencing memorandum, the government crosses the line at times, advocating for the highly severe life-without-parole sentence based upon the Ms. Hari's perceived "beliefs," "ideology," and "writings." (ECF 462 at 5, 6, 23). The First Amendment forbids the government from prosecuting or punishing on such grounds. *R.A.V.,* 505 U.S. at 382. Ms. Hari respectfully requests that the Court explicitly reject and disregard any such rationale(s) in this sentencing process.

**5.      The Other Acts**

Longstanding tradition and federal statutes have generally permitted courts to conduct a broad inquiry when determining an appropriate and individualized sentence. *Pepper v. United States,* 562 U.S. 476, 487-93 (2011). This discretion even extends to consideration of criminally charged conduct which resulted in acquittal, so long as supported by a sufficient standard of proof which in most cases will be a preponderance of the evidence. *United States v. Watts,* 519 U.S. 148, 156-57 (1997). Though there remains the possibility that a higher standard is required for consideration of such conduct that would "dramatically increase the sentence." *Id.*; *accord, e.g., United States v. Tyndall,* 521 F.3d 877, 883-84 (8th Cir. 2008).

Here, in support of its proposed sentence, the government relies heavily upon Other Acts which are subject to pending charges in the Illinois federal court. (ECF 462 at 9-10, 23-25). The government assumes it is a foregone conclusion, Ms. Hari must be guilty because her co-conspirators have said so. But Ms. Hari is presumed innocent of the Other Acts and will only be found guilty of the Other Acts if the government is able to prove, beyond a reasonable doubt, that she committed such acts.

The defense would urge the Court to disregard the alleged conduct underlying the charges pending in Illinois. The government is seeking an extreme life-without-parole sentence, which constitutes the sort of "dramatic[] increase" from the Guidelines advisory range that may require a higher standard of proof than is typical—a standard that mere pending charges and cooperator testimony may not meet. Moreover, it is wholly unnecessary and imprudent to consider the pending charges in this case, as there will soon be a trial to fully and fairly consider the truth or falsity of those accusations.

It is possible the Illinois trial will result in a guilty verdict, at which point the Illinois court will be fully empowered to craft a sentence based upon the entire package of relevant factors, including the conduct of conviction in the case at hand, and sentence which will be imposed by this Court in the case at hand. Or alternatively, the Illinois trial may result in acquittal, which would suggest that the Other Acts arguments the government now advances in support of a severe life-without-parole sentence are much weaker than advertised and should not have been relied upon during the Minnesota sentencing.

At this point in time, it is impossible to know the strength or weakness of the Other Acts which make up the pending charges in Illinois.  This Court simply does not have all

the relevant evidence before it. Thus, it would be imprudent to consider the alleged conduct at sentencing here, particularly in making the determination as to a "dramatic" upward variance to life-without-parole. It is unnecessary to do so, as the matter is poised for resolution in the Illinois court. Ms. Hari respectfully asks that the Court disregard this basis of the government's sentencing argument as well.

### 6.      Trial Evidence and Jury Verdict

Though the above considerations are either unlawful or imprudent, the Court is certainly on solid footing in examining the evidence presented at trial in its sentencing process, as well as the jury's verdict. It is true that Ms. Hari disputes the accuracy of the verdict; but mere disagreement is not the same as disrespect. The evidence has been presented and the jury has spoken. The Court is entitled to use that information in its sentencing calculus, and in fact, the defense submits that the Court should confine its field of inquiry largely to the trial evidence and verdict. The government seeks an extraordinary sentence via an upward variance and has chosen to support the request with rationales that are unconstitutional in one instance and unreliable and imprudent in the other. If the Court confines its inquiry to trial evidence and jury verdict, then there will be no question as to whether an improper consideration has tainted the sentencing inquiry.

Viewed in this light, the Court can view the sentencing case objectively, through the lens of the § 3553(a) factors and accounting for any aggravating and mitigating factors. In this case, giving the trial evidence and verdict full credit, we have a defendant who participated in placing an explosive device at the Dar al Farooq building, which detonated

and caused damage to the facility. The government says the event has and continues to frighten persons affiliated with the association and the defense has no reason to doubt it.

However, the government does not wish to acknowledge any mitigating factors, instead choosing to dwell on unconstitutional considerations such as the defendant's viewpoints and writings. But the truth is, even giving full credit to the government's (incentivized and impeached) witnesses and jury verdict, there are mitigating circumstances here. No one was injured in the blast. The device was placed in an area and at a time so that no one would be injured. Ms. Hari did not place the device in the building, but rather the government's cooperator-witnesses did so. Ms. Hari is 50 years of age and, by the government's own concession, has a relatively scant criminal history.

Again assuming the accuracy of the government's trial evidence and jury verdict for the sake of argument, the offense conduct is culpable. But equal in culpability to homicides or other offenses resulting in grievous physical harm to the person of another? Equal to a major violent offense committed by one with a long criminal record of similar offenses?

The government's proposed life-without-parole sentence and the advisory Guidelines simply fail to account for the specific facts of this case and would result in a sentence that far exceeds the statutory mandate that a sentence imposed not be greater than necessary to address specifically denoted factors and secure a just outcome. The minimum 30-year sentence is a severe sentence. It the fairest and most scrupulous sentence among the options available. Ms. Hari asks that the statutory minimum 30-year term be imposed.

Dated: August 30, 2021                         Respectfully submitted,

                                               *s/ Shannon Elkins*

                                               SHANNON ELKINS
                                               Attorney ID No. 332161
                                               Attorney for Emily Hari
                                               107 U.S. Courthouse
                                               300 South Fourth Street
                                               Minneapolis, MN 55415

9