DISTRICT OF MINNESOTA
District Court File No. 18-CR-150 (1) (DWF/HB)

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>                                                        )<br>          Plaintiff,                             )<br>                                                        )<br>          v.                                        )<br>                                                        )<br>(1)   MICHAEL HARI,                    )<br>                                                        )<br>          Defendant.                         ) | **GOVERNMENT'S REPSONSE<br>TO DEFENDANT'S SENTENCING<br>POSITION** |

The United States of America, through its attorneys, W. Anders Folk, Acting United States Attorney for the District of Minnesota and Assistant United States Attorneys Allison K. Ethen and Timothy C. Rank, submits the government's response to the Defendant's position on sentencing.

The Defendant's sentencing memorandum advances a two-pronged approach to attempt to mitigate responsibility – "I didn't commit the crime for which the jury convicted me, but if I did it was someone else's fault." The Defendant denies any participation in the bombing and arson of the Dar al-Farooq mosque (Dkt. 464 at 13), but then blames anti-Muslim news articles found on the Defendant's computer for causing the attack (*id.* at 6-10). Both prongs of this argument are false. First, the evidence at trial overwhelmingly demonstrated that the Defendant orchestrated, directed, and executed the terror attack on Dar al-Farooq – *the Defendant* identified the target of the attack, recruited subordinates to carry out the attack, purchased materials for and built the pipe bomb, filled a container with a mixture of gasoline and diesel fuel to be used in burning the mosque, rented a vehicle

and drove from Illinois to Minnesota, directed Joe Morris and Michael McWhorter to break the window of the Imam's office and throw in the pipe bomb and the gasoline/diesel mixture, congratulated Morris and McWhorter when they got back in the truck for the success of the mission, and then returned to Illinois to commemorate the bombing and fire with a celebratory photo of the Defendant's militia.



2

Second, the Defendant – a well-educated, 50-year-old adult – was not turned into an unthinking automaton by articles on the Internet causing him to engage in a hate-fueled terrorist attack on Dar al-Farooq. The Defendant may have been a consumer of anti-Muslim screeds on social media, but the Defendant has also a been long-time *producer* of this type of propaganda, an evangelist of hate. This is true in the Defendant's books (*see, e.g.,* Michael Hari, *Resurgence: More than Conquerors* (2015) at 179 (describing Islam as an enemy of Christianity, a "devilish religion," and "squarely in the Scriptural category of Anti-Christ"); Michael Hari, *The White Rabbit Handbook* (2017) (stating on the back of the jacket that his militia, the White Rabbits, "use guerilla warfare tactics to fight against enemies of the people")); in the Defendant's speeches (extolling the burning of mosques and the expulsion of Muslims from the United States); and in the indoctrination of militia members into the Defendant's violent anti-Muslim bigotry.

The Defendant also objects to the Presentence Investigation Report's (PSR) application of the Sentencing Guidelines enhancements under § 3A1.1 (Hate Crimes), § 3B1.1 (Leader or Organizer), and § 3C1.1 (Obstruction). There was substantial evidence presented at trial supporting the Hate Crime and Leadership enhancements, and the Court can will rely on the record at trial (which is also summarized in the PSR). As to the Obstruction enhancement, the government moves for an evidentiary hearing pursuant to Local Rule 82.10(f)(1) and will present testimony at the hearing regarding the Defendant's attempted escape from custody in this matter.

Based upon all of the materials submitted in anticipation of sentencing, the government requests that the Court sentence the Defendant to life in prison.

## ARGUMENT

### I.  THE DEFENDANT'S ATTEMPTS TO DEFLECT RESPONSIBILITY

The Defendant continues to deny responsibility for these offenses and shows no remorse for the effects these hate crimes had and continue to have on the victims in this case. Instead, the Defendant attempts to shift blame by claiming (1) that misinformation perpetrated by politicians and the mainstream media was the root cause of the Defendant's radicalization and (2) that a history of undiagnosed gender dysphoria somehow rationalizes the Defendant's heinous crimes. Neither of these claims mitigates the Defendant's criminal actions.

#### A.  Purported Influence of Social Media

The Defendant asserts that "Misinformation has become the demise of our community." (Dkt. 464 at 6). While there may be truth in that sentiment, it certainly does not apply in this case. The evidence at trial unequivocally showed that the Defendant was not swayed by misinformation, but rather the Defendant was the person creating misinformation and feeding it to the Defendant's less sophisticated co-conspirators. The Defendant is neither foolish nor unaware of the world. Growing up, the Defendant lived abroad in Germany and England before moving to the United States. (PSR ¶ 96). As an adult, the Defendant continued to travel the world, living in Belize and Mexico. (PSR ¶¶ 101, 103).

The Defendant's parents, a middle school teacher and an administrator at the University of Illinois, were educated people. (PSR ¶ 95). The Defendant is also well educated, with an undergraduate degree in psychology and post-graduate work in criminal

justice. (PSR ¶ 110). The Defendant eventually authored and published multiple books, (PSR ¶ 112) including *The White Rabbit Handbook*. Moreover, the Defendant's background shows that the Defendant was not just politically aware, but politically active. The Defendant chaired an election committee on behalf of a United States Senator before running for local office as county sheriff and a city council member in Paxton, Illinois. (PSR ¶¶ 97-98).

The Defendant's history and life experience demonstrate that the Defendant was surely capable of separating legitimate news stories from "fake news." The Defendant expressly chose to seek and disseminate information that fit the Defendant's own Islamophobic agenda. The search history outlined in the Defendant's sentencing position further underscores this point. The Defendant purposefully sought out articles demonizing Islam and painting Muslim people as terrorists. The Court should decline the Defendant's attempts to recast this search history as anything other than a confirmation of his bigotry.

Moreover, the Defendant went further than merely fostering personal hateful beliefs. The Defendant purposefully indoctrinated others with this rhetoric. As McWhorter and Morris testified at trial, the Defendant hated Islam and believed the religion was fundamentally at odds with the Defendant's idea of a white Christian American nation. The Defendant not only expressed these ideas to his codefendants, but also wrote them in books like *The White Rabbit Handbook*, as well as in speeches found on the Defendant's laptop. The Defendant was not a passive media consumer. On the contrary, the Defendant's history shows that he was a creator and disseminator of misinformation and bigotry.

### B. Gender Dysphoria

The Defendant's attempt to shift blame for these crimes to a history of untreated gender dysphoria is unacceptable and only serves to further emphasize the Defendant's failure to accept responsibility. Whether the Defendant is or is not transgender is irrelevant to this case and the Defendant's attempted use of the complex issues surrounding gender dysphoria to deflect guilt is offensive. Gender dysphoria did not cause the Defendant to engage in, and in no way mitigates the Defendant's responsibility for, the violence and terror inflicted on the Dar al-Farooq community. Nor can it explain or excuse his other crimes – the attempted arson of the Women's Health Practice, armed robberies of Walmart stores, armed home invasions and assaults, or the thermite attack and extorsion of the Canadian Pacific Railway. The Defendant's hatred – of Muslims, of immigrants, of feminists, of abortion providers, of George Soros, of public schools, of health inspectors, of the Illinois Department of Children and Family Services – cannot, and should not, be blamed on gender dysphoria.

## II. THE SENTENCING GUIDELINES ENHANCEMENTS

### A. Hate Crime Motivation § 3A1.1

The bombing of Dar al-Farooq was a hate crime, and the enhancement for Hate Crime Motivation applies in this case. Pursuant to Sentencing Guideline § 3A1.1:

> If the finder of fact at trial…determines beyond a reasonable doubt that the defendant intentionally selected any victim or any property as the object of the offense of conviction because of the actual or perceived race, color, religion, national origin, ethnicity, gender, gender identity, disability, or sexual orientation of any person, increase by 3 levels.

At trial, the jury explicitly concluded beyond a reasonable doubt that the Defendant targeted Dar al-Farooq due to the religious nature of the property. The third element of Count 1 requires the jury to find: "The defendant [bombed] Dar al-Farooq because of the religious character of the property." Tr. X at 2219. 2. The Court further instructed the jury:

> The third element requires the prosecution to prove that the defendant defaced, damaged, or destroyed the religious property in question because of the religious character of that property. You need not find that the defendant acted solely because of the religious character of that property. People often have many reasons for acting in a particular way. The prosecution must prove, however, that the religious character of the property played a determinative role in the defendant's decision to deface, damage, or destroy the property. In other words, even if you find that the religious nature of the property had only a partial role in the defendant's decision, you must find that the defendant would not have defaced, damaged, or destroyed the Dar al-Farooq Islamic Center but for the religious character of the Dar al-Farooq Islamic Center.

*Id.* at 2220-21, *see also* Dkt. 327 at 16. The jury found the Defendant guilty as to Count 1. Therefore, the jury clearly found, based on the evidence admitted at trial, including the Defendant's extensive anti-Muslim writings and statements, that the Defendant targeted Dar al-Farooq based on its religious nature. A three-point enhancement applies, and the government respectfully requests the Court apply it in calculating the Defendant's sentence.

### B. Organizer, Leader, Supervisor, Manager § 3B1.1(c)

The Defendant does not accept responsibility for this offense, and argues, therefore, that an enhancement for organizing the crime does not apply. The evidence admitted at

7

trial showed overwhelmingly that the Defendant was the organizer, leader, supervisor, and manager of not only Joe Morris and Michael McWhorter, but of the entire White Rabbit militia.[1] The government will not attempt to exhaustively restate all of the evidence of the Defendant's leadership as it relates to this crime. However, notable facts demonstrating the Defendant's leadership include:

- Testimony from both codefendants that the Defendant chose the target, planned the attack against Dar al-Farooq, recruited Morris and McWhorter to assist with the attack, and introduced the codefendants to one another on the way to the mosque;

- Financial records showing that the Defendant made purchases including a rental car, firearms parts, ballistic vests, Faraday bags, a signal jammer, and a radio scanner, in preparation for the bombing;

- Evidence from the Defendant's laptop computer showing that the Defendant conducted extensive scouting and internet research of Dar al-Farooq; and

- Evidence from the Defendant's cell phone showing that the Defendant travelled to Indiana in the days leading up to the bombing to purchase black powder for the pipe bomb.

Because there was ample evidence of the Defendant's leadership role presented throughout the trial, the government respectfully requests the Court apply two points for the leadership enhancement.

### C. Escape Attempt § 3C1.1

Based on the Defendant's objection to this enhancement the government believes an evidentiary hearing on the issue is necessary. On February 13, 2019, the Defendant was

---

[1] The White Rabbit militia eventually grew to include at least five participants, but at the time of the Dar al-Farooq bombing, the group included only Morris, McWhorter, and the Defendant.

8

in the custody of the United States Marshals Service for transport from Illinois to Minnesota. During transit through Oklahoma City, the Defendant was housed temporarily at the Grady County Law Enforcement Center in Chickasha, Oklahoma. During transport by detention center staff, the Defendant attempted to escape by jumping from the jail van as it was parked to load more passengers. The Defendant's attempt was not successful and detention center officers were able to quickly regain control of the Defendant. The Court previously ruled that the Defendant's attempt to escape was admissible at trial pursuant to Rule of Evidence 404(b), (Dkt. 209), although the government chose not to present such evidence during trial.

Pursuant to Local Rule 83.10(f), the government requests an evidentiary hearing to present testimony and other evidence regarding the Defendant's attempt to escape from custody on February 13, 2019. The government would intend to call one witness, Grady County Detention Officer Margaret Maples, to testify on the issue. The government previously provided the Defendant with discovery on the Defendant's escape attempt pretrial.

### III. Motion to Dismiss Based on § 924(c)

The Defendant seeks to renew an objection made pretrial in a motion to dismiss Count 4 based on a constitutionality challenge to the validity of 18 U.S.C. § 924(c). (Dkt. 464 at 16). The parties fully litigated this issue. The Defendant submitted a memorandum in support of the motion. (Dkt. 94). The government responded. (Dkt. 115). Magistrate Judge Hildy Bowbeer considered the Defendant's motion and authored a thorough Report and Recommendation to the Court recommending denial. (Dkt. 131). The Court adopted

the Report and Recommendation (Dkt. 152) over the Defendant's objection. (Dkt. 139). A review of applicable caselaw reveals that there have been no additional decisions issued which would change the circumstances under which this issue was originally decided. The government therefore rests on its original response (Dkt. 115) and the Court's Order. (Dkt. 152).

## **CONCLUSION**

The Government respectfully requests that the Court sentence the Defendant to a term of life imprisonment.

Dated: August 30, 2021                                       Respectfully Submitted,

                                                                                  W. ANDERS FOLK
                                                                                  Acting United States Attorney

                                                                                  *s/ Allison K. Ethen*

                                                                                  BY: ALLISON K. ETHEN
                                                                                  TIMOTHY C. RANK
                                                                                 Assistant United States Attorneys